THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

JEANETTE PORTILLO, ALICIA COAKLEY, FREDDY BARAJAS, HERIBERTO VALIENTE, DAVID CONCEPCION, DANIEL KASSL, and DANIEL SMITH, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

COSTAR GROUP, INC., a Delaware corporation; STR, INC., a Delaware corporation, HILTON DOMESTIC OPERATING COMPANY, a Delaware corporation, HYATT HOTELS CORPORATION, a Delaware corporation, SIX CONTINENTS HOTELS INC., a Delaware corporation, LOEWS HOTELS HOLDING CORPORATION, a Delaware corporation, MARRIOTT INTERNATIONAL, INC., a Delaware corporation, and ACCOR MANAGEMENT US INC., a Delaware corporation,

Defendants.

Case No. 2:24-cv-00229-JCC

DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT

NOTE ON MOTION CALENDAR: June 14, 2024

ORAL ARGUMENT REQUESTED

23

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

<u>CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 4

       A.    STR's Benchmarking Reports ................................................................. 4

       B.    STR's Customers And The Hotel Defendants ......................................... 7

       C.    The Alleged Conspiracy .......................................................................... 8

III.   ARGUMENT ...................................................................................................... 8

       A.    The Complaint Fails To Satisfy The Ninth Circuit's *Kendall*
             Conspiracy Pleading Standard .............................................................. 10

       B.    The Complaint Fails To Plead An Agreement Among The Hotel
             Defendants ............................................................................................. 13

             1.    Plaintiffs Do Not Allege Direct Evidence Of An Agreement
                   Among The Hotel Defendants .................................................... 13

             2.    Plaintiffs Also Do Not Plausibly Allege Circumstantial
                   Evidence Of An Agreement Among The Hotel Defendants ......... 13

       C.    The Complaint Fails To Plead Any Anticompetitive Effects From
             The Alleged Conspiracy ........................................................................ 18

             1.    The Complaint Fails To Plead Any Direct Evidence Of
                   Anticompetitive Harm ................................................................ 19

             2.    The Complaint Cannot Show That Anticompetitive Effects
                   Are Likely .................................................................................. 21

       D.    Plaintiffs Fail To Allege That They Have Suffered Any "Antitrust
             Injury" As A Result Of The Hotel Defendants' Use Of STR
             Reports ................................................................................................... 28

IV.    CONCLUSION ................................................................................................. 29

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

i

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1

## TABLE OF AUTHORITIES

2

CASES

Page(s)

3
*1-800 Contacts, Inc. v. F.T.C.*,
   1 F.4th 102 (2d Cir. 2021) ........................................................................ 19

4
*Arcell v. Google LLC*,
   2023 WL 5336865 (N.D. Cal. Aug. 18, 2023) ....................................... 11

5

6
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 28

7
*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ................................................................................. 29

8

9
*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
   2017 WL 6059145 (S.D. Cal. Dec. 6, 2017) .......................................... 18

10
*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
   166 F. Supp. 3d 988 (N.D. Cal. 2015) .............................................. 10, 12

11

12
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................... *passim*

13
*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
   691 F. App'x 389 (9th Cir. 2017) ............................................. 10, 12, 13

14

15
*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) ................................................................................. 18

16
*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) ................................................................................. 28

17

18
*United States v. Container Corp. of Am.*,
   393 U.S. 333 (1969) ............................................. 21, 24, 25, 26, 27

19
*Curtin Mar. Corp. v. Santa Catalina Island Co.*,
   786 F. App'x 675 (9th Cir. 2019) ........................................................... 29

20

21
*E.E.O.C. v. Omni Hotel Mgmt. Corp.*,
   516 F. Supp. 2d 678 (N.D. Tex. 2007) ................................................... 26

22
*Five Smiths, Inc. v. Nat'l Football League Players Ass'n*,
   788 F. Supp. 1042 (D. Minn. 1992) .............................. 24, 25, 26, 27

23

24
*Gibson v. Cendyn Grp., LLC*,
   2024 WL 2060260 (D. Nev. May 8, 2024) ................................ 2, 12, 14

25
*Gibson v. MGM Resorts, Int'l*,
   2023 WL 7025996 (D. Nev. Oct. 24, 2023) ............................ 11, 12, 15

26

27
*Hilton Int'l Co. v. Hilton Hotels Corp.*,
   88 F. Supp. 520 (S.D.N.Y. 1995) ........................................................... 26

28

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

ii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1 | *Hobart-Mayfield v. Nat'l Operating Comm. on Standards for Athletic Equip.*,
      48 F.4th 656 (6th Cir. 2022) .................................................................. 16, 17

2

3 | *Honey Bum, LLC v. Fashion Nova, Inc.*,
      63 F.4th 813 (9th Cir. 2023) ......................................................................... 13

4 | *Hyland v. Homeservices of Am., Inc.*,
      771 F.3d 310 (6th Cir. 2014) ........................................................................ 17

5

6 | *In re Amazon.com, Inc. eBook Antitrust Litig.*,
      2022 WL 4581903 (S.D.N.Y. Aug. 3, 2022), *recommendation adopted*, 2022
      WL 4586209 (S.D.N.Y. Sept. 29, 2022)........................................................ 17

7

8 | *In re Baby Food Antitrust Litig.*,
      166 F.3d 112 (3d Cir. 1999).......................................................................... 10

9 | *In re Citric Acid Litig.*,
      191 F.3d 1090 (9th Cir. 1999) .............................................. 13, 16, 18, 22

10

11 | *In re Dynamic Random Access Memory Indirect Purchaser Antitrust Litig.*,
      28 F.4th 42 (9th Cir. 2022) .................................................................*passim*

12 | *In re Graphics Processing Units Antitrust Litig.*,
      527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................. 14, 15

13

14 | *In re ICE LIBOR Antitrust Litig.*,
      2020 WL 1467354 (S.D.N.Y. Mar. 26, 2020) ......................................... 18, 20

15 | *In re Ins. Brokerage Antitrust Litig.*,
      618 F.3d 300 (3d Cir. 2010).................................................................... 16, 17

16

17 | *In re Kinser Grp.*,
      2020 WL 7633854 (Bankr. D. Ariz. Dec. 18, 2020) ...................................... 1, 8

18 | *In re Local TV Advertising Antitrust Litig.*,
      2022 WL 3716202 (N.D. Ill. Aug. 29, 2022) ............................ 9, 21, 22, 23

19

20 | *In re M Waikiki LLC*,
      2012 WL 2062421 (Bankr. D. Haw. June 7, 2012) ......................................... 8

21 | *In re Mexican Gov't Bonds Antitrust Litig.*,
      412 F. Supp. 3d 380 (S.D.N.Y. 2019).......................................................... 20

22

23 | *In re Miami Beach Hotel Investors LLC*,
      304 B.R. 532 (S.D. Fla. Jan. 22, 2004) ......................................................... 1

24 | *In re Musical Instruments & Equip. Antitrust Litig.*,
      798 F.3d 1186 (9th Cir. 2015) ............................................................*passim*

25

26 | *In re Online DVD Rental Antitrust Litig.*,
      2009 WL 4572070 (N.D. Cal. Dec. 1, 2009) ................................................. 29

27 | *In re RealPage, Inc. Rental Software Antitrust Litig.*,
      2023 WL 9004806 (M.D. Tenn. Dec. 28, 2023)......................................... 19, 21

28

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

iii

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

*In re Treasury Sec. Auction Antitrust Litig.*,
 2021 WL 1226670 (S.D.N.Y. Mar. 31, 2021) ....................................................................... 20

*In re Zhejiang Topoint Photovoltaic Co.*,
 2015 WL 2260647 (D.N.J. May 12, 2015) .............................................................................. 26

*Intel Corp. v. Fortress Inv. Grp.*,
 2022 WL 16756365 (9th Cir. Nov. 8, 2022) ..................................................................... 19, 28

*Intel Corp. v. Fortress Inv. Grp.*,
 511 F. Supp. 3d 1006 (N.D. Cal. 2021), *aff'd*, 2022 WL 16756365 (9th Cir.
 Nov. 8, 2022) ...................................................................................................................... 19, 20

*Jien v. Perdue Farms, Inc.*,
 2020 WL 5544183 (D. Md. Sept. 16, 2020) ........................................................................... 24

*Kelsey K. v. NFL Enters., LLC*,
 254 F. Supp. 3d 1140 (N.D. Cal. 2017) .................................................................................. 15

*Kendall v. Visa U.S.A., Inc.*,
 518 F.3d 1042 (9th Cir. 2008) ...................................................................... 9, 10, 11, 12, 13

*Krehl v. Baskin-Robbins Ice Cream Co.*,
 644 F.2d 1348 (9th Cir. 1982) .......................................................................................... 10, 18

*Kubik v. Intrexon, Inc.*,
 2011 WL 13232587 (W.D. Wash. Sept. 22, 2011) ................................................................... 4

*Mader v. Lopez*,
 450 F.3d 445 (9th Cir. 2006) ..................................................................................................... 4

*Maple Flooring Mfrs.' Ass'n v. United States*,
 268 U.S. 563 (1925)........................................................................................................... 16, 23

*McCarn v. HSBC USA, Inc.*,
 2012 WL 7018363 (E.D. Cal. May 29, 2012) ........................................................................ 17

*Midwest Auto Auction, Inc. v. McNeal*,
 2012 WL 3478647 (E.D. Mich. Aug. 14, 2012) ..................................................................... 18

*Milladge v. OTO Dev., LLC*,
 2014 WL 4929508 (E.D. Va. Oct. 1, 2014) .............................................................................. 8

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
 795 F.3d 1124 (9th Cir. 2015) ................................................................................................... 8

*Oliver v. SD-3C LLC*,
 2016 WL 5950345 (N.D. Cal. Sept. 30, 2016) ....................................................................... 20

*Parrino v. FHP, Inc.*,
 146 F.3d 699 (9th Cir. 1998) ..................................................................................................... 4

*Prime Healthcare Servs. v. Serv. Emps. Int'l Union*,
 2013 WL 3873074 (S.D. Cal. July 25, 2013) ........................................................................ 19

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

iv

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

*Prosterman v. Am. Airlines, Inc.*,
   747 F. App'x 458 (9th Cir. 2018) ...................................................................................... 12

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ............................................................................................ 19

*S&W Forest Prods. v. Shake*,
   2019 WL 3716457 (W.D. Wash. Aug. 7, 2019) ............................................................... 10

*Sheahan v. State Farm Gen. Ins. Co.*,
   394 F. Supp. 3d 997 (N.D. Cal. 2019) .............................................................................. 11

*Smart v. Emerald City Recovery*,
   2018 WL 3569873 (W.D. Wash. July 25, 2018) ................................................................. 4

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ..................................................................................... 28, 29

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ...................................................................................... 23, 24

*Top Rank, Inc. v. Haymon*,
   2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) .................................................................. 29

*United States v. U.S. Gypsum*,
   438 U.S. 422 (1978) ............................................................................................. 9, 18, 25

*Wilcox v. First Interstate Bank of Oregon*,
   815 F.2d 522 (9th Cir. 1987) ............................................................................................ 22

**STATUTES**

15 U.S.C. § 15 .......................................................................................................................... 28

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

v

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

This case is about hotel industry benchmarking reports that Smith Travel Research ("STR") has been producing for over thirty-five years.  Plaintiffs' allegations, which in some ways attempt to mimic other recent lawsuits aimed at various forms of "algorithmic pricing," are misdirected at STR reports—which involve neither algorithms nor pricing recommendations.  Instead, STR's reports only provide customers with benchmarks against occupancy and historical revenue data aggregated and averaged from typically at least five, and often many more, other hotels.   In addition to providing benchmarking information, STR's reports are used for numerous additional procompetitive purposes, including hotel valuations and appraisals, hotel employee performance evaluations, hotel management agreements, bankruptcy debtor monitoring, and loan and debt covenant compliance.

The Complaint is premised on the fanciful claim that STR's benchmarking reports are vehicles for improper information exchanges among competitors and "price fixing in its modern form."  Compl. ¶ 1.  But the reality is that STR's reports have been around since the late 1980s, and have been described by courts as "highly regarded and widely used," *In re Miami Beach Hotel Investors LLC*, 304 B.R. 532, 534 (S.D. Fla. Jan. 22, 2004), and "an important publication if one wishes to obtain information about a hotel's performance," *In re Kinser Grp.*, 2020 WL 7633854, at *3 (Bankr. D. Ariz. Dec. 18, 2020).   Rhetoric aside, the Complaint does not allege that Defendants entered into a price-fixing agreement.  Plaintiffs instead claim that Defendants entered into a "conspiracy to exchange competitive information."  Compl. § VII.  But the Complaint does not allege facts sufficient to plausibly show that the Hotel Defendants actually agreed with one another to exchange information through their use of STR reports.  And to Defendants' knowledge, no court has ever found benchmarking activities like those at issue here (which are analyzed under the "rule of reason") to constitute an improper information exchange that violates Section 1 of the Sherman Act.  Such a finding would set new precedent that could upend numerous industries where benchmarking is a common and important market-intelligence tool.

Plaintiffs' claim is implausible and legally deficient and should be dismissed for at least four, independent reasons.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1      ***First***, the Complaint fails at the outset because it does not answer "basic questions"

2  regarding the alleged conspiracy, as required by the Ninth Circuit to plead a Sherman Act Section

3  1 claim.  The Complaint fails to identify "who" entered into the alleged conspiracy, "when" the

4  alleged conspiracy purportedly began, or "what" the Hotel Defendants allegedly agreed to do.[1]

5  Instead, Plaintiffs rely on conclusory allegations of an "agreement," which courts routinely dismiss

6  as insufficient to state a claim.

7      ***Second***, Plaintiffs fail to allege any direct or circumstantial evidence of an agreement

8  among the Hotel Defendants to exchange competitively sensitive information through STR.

9  Plaintiffs do not even attempt to plead direct evidence of such an agreement.  There is not a single

10  alleged communication between any Hotel Defendants, let alone any communication that

11  establishes an agreement between or among them to share competitively sensitive information

12  through STR.  Indeed, a court recently granted a motion to dismiss a complaint that alleged a hub-

13  and-spoke conspiracy among hotel defendants in violation of Section 1 where plaintiffs failed to

14  "plausibly allege the exchange of confidential information from one of the spokes to the other."

15  *Gibson v. Cendyn Grp., LLC*, 2024 WL 2060260, at *9 (D. Nev. May 8, 2024).

16      Plaintiffs similarly fail to plead circumstantial evidence of an agreement among the Hotel

17  Defendants.  Plaintiffs do not plead facts demonstrating that the Hotel Defendants acted in

18  parallel—*i.e.*, that they adopted the same conduct at the same time such that an agreement can be

19  inferred.  Specifically, Plaintiffs do not allege that the Hotel Defendants began subscribing to STR

20  around the same time, that the Hotel Defendants even receive the same STR reports, at the same

21  cadence, or that the Hotel Defendants utilize the benchmarking reports in a similar way.  Nor do

22  Plaintiffs allege that the Hotel Defendants' prices moved in parallel.  Plaintiffs also have not

23  alleged any "plus factors" that make an agreement among the Hotel Defendants plausible.  To the

24  contrary, Plaintiffs allege only facts that are equally consistent with rational, unilateral business

25  behavior by each of the Hotel Defendants.  Providing occupancy and revenue information to STR,

26

27  ───────────────
[1]     The "Hotel Defendants" are Accor Management US Inc ("Accor"), Hilton Domestic
28  Operating Company, Inc. ("Hilton"), Hyatt Hotels Corporation ("Hyatt"), Loews Hotels Holding
    Corporation ("Loews"), Marriott International, Inc. ("Marriott"), and Six Continents Hotels, Inc.
    ("Six Continents").

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    and receiving aggregated and anonymized industry-level or peer-group data in return, is not against

2    any Hotel Defendant's economic self-interest.  And allegations that participating hotels are aware

3    of which other hotels also subscribe to STR are insufficient to infer an agreement among the Hotel

4    Defendants, as are the allegations that STR has hosted industry conferences that some executives

5    from the Hotel Defendants have attended.

6        ***Third,*** Plaintiffs have failed to plead any anticompetitive effects from the alleged

7    conspiracy to exchange competitively sensitive information through STR.  The Complaint presents

8    no direct evidence of supracompetitive prices over the four-year class period.  And the aggregated,

9    anonymized, and historical non-pricing data that STR has provided in its benchmarking reports for

10   decades is the type of data that courts, including the Supreme Court, have recognized can be

11   procompetitive.  Nor have Plaintiffs plausibly alleged that the structure of the "luxury" hotel

12   industry makes it more likely that the exchange of competitively sensitive information would lead

13   to anticompetitive effects.  The industry is not plausibly alleged to be highly concentrated, and

14   common sense dictates that luxury hotel rooms are not "fungible" and are not purchased for only

15   immediate, short-term use.

16       ***Fourth,*** Plaintiffs fail to plead a sufficient causal connection between Plaintiffs' alleged

17   injury—increased prices for luxury hotel rooms—and the alleged conspiracy to exchange

18   competitively sensitive information through STR.  Plaintiffs do not allege that STR is involved in

19   the Hotel Defendants' pricing decisions.  Instead, they claim that the Hotel Defendants use revenue

20   management software that considers "vast" amounts of data (of which STR reports are but one

21   purported input), to recommend or set their own prices.  Thus, even if Plaintiffs paid higher prices

22   (which the facts alleged do not show), it is implausible and entirely speculative to connect those

23   prices to any alleged agreement among the Hotel Defendants to exchange information through

24   STR.  As a result, Plaintiffs have not alleged the causation required to show antitrust injury.[2]

25

26   [2]     Plaintiffs purport to bring this case as a class action.  The Hotel Defendants continue to
     investigate whether and to what extent Plaintiffs' class allegations may be barred by class action
27   waivers the named Plaintiffs made in purchasing these rooms either directly from the Hotel
     Defendants or from third-parties.  Furthermore, no named Plaintiff is alleged to have stayed at a
28   hotel of Defendants Accor, Loews, or Six Continents during the class period.  *See* Compl. ¶¶ 28-
     34.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    In short, Plaintiffs' Complaint is deficient for multiple, independent reasons, and should be

2    dismissed with prejudice.

3    **II.      BACKGROUND**

4        **A.      STR's Benchmarking Reports**

5        STR, which has been owned by CoStar Group, Inc. since 2019, has been providing

6    "industry leading data benchmarking and analytics services" to the hospitality industry since 1987.

7    Compl. ¶¶ 35, 60-61, 65.  Every major hotel chain and many independent owners and operators

8    around the globe—approximately 78,000 hotels in total—receive STR's benchmarking reports.

9    *Id.* ¶ 65.

10       ***STAR Reports.***   STR's "flagship" benchmarking product is called the STAR Report.

11   *Id*. ¶ 68.  Participating hotels provide STR with historical data regarding total rooms available,

12   rooms sold, and room revenue for a specified prior time period.  *Id.* ¶¶ 16, 69.  Rooms available is

13   the total number of rooms at a property multiplied by the days in the period.  *Id*. ¶ 86.  Rooms sold

14   reflects the number of hotel rooms sold during the specified period, excluding complimentary

15   rooms.   *Id.*; Compl. App'x B at "STAR Summary."   And room revenue is the total revenue

16   generated from the rental of all hotel rooms for the time period.  *Id.*  STR keeps the data that hotels

17   provide confidential and does not share it with anyone other than the hotel that provided it.  *See*

18   Ex. 1 at 6, STR, Frequently Asked Questions (describing STR's "renowned standards for data

19   confidentiality");[3] *see also* Compl. ¶ 102.  Hotels receiving STAR reports do ***not*** provide STR

20   with any pricing information.  *See* Compl. ¶ 69.

21       Participating hotels receive a STAR Report that contains aggregated, averaged, and

22

---

23   [3]      The exhibits cited herein are attached to the Declaration of Lawrence Buterman, filed
     concurrently.   The Court may consider STR's "Frequently Asked Questions" as "part of the
24   complaint" because Plaintiffs cite, rely upon, and quote from this document multiple times, *see,
     e.g.*, Compl. ¶¶ 68 n.46, 70 n.50, and thus the Court "may assume that its contents are true for
25   purposes of a motion to dismiss."  *Mader v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also
     Parrino v. FHP, Inc*., 146 F.3d 699, 705–06 (9th Cir. 1998) (a court "may consider documents
26   whose contents are alleged in a complaint and whose authenticity no party questions, but which
     are not physically attached to the pleading") (citation and internal quotation omitted); *Smart v.
27   Emerald City Recovery*, 2018 WL 3569873, at *2 (W.D. Wash. July 25, 2018) (Coughenour, J.)
     (considering a document incorporated by reference into the complaint whose authenticity was not
28   challenged); *Kubik v. Intrexon, Inc*., 2011 WL 13232587, at *1 (W.D. Wash. Sept. 22, 2011)
     (Coughenour, J.).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    anonymized data, which a hotel can use to compare its historical performance to a set of several

2    competitors and the broader industry.  *Id.* ¶¶ 75, 134.  Specifically, STAR Reports provide

3    participating hotels with historical data regarding occupancy rate, average daily rate ("ADR"), and

4    revenue per available room ("RevPAR").  *Id*. ¶ 71.  Occupancy rate is a percentage showing "the

5    number of rooms occupied divided by the total amount of rooms available over a specified period."

6    *Id*. ¶ 72.  Average daily rate is calculated by "dividing room revenue by rooms sold."  *Id.* ¶ 73.

7    This is "the average paid for rooms sold in a given time period."  *Id.*  And revenue per available

8    room is calculated by "dividing room revenue by rooms available" and "signifies the average

9    revenue obtained from each available room of a hotel, whether occupied or vacant."  *Id.* ¶ 74.

10         For those three metrics, a STAR Report permits a hotel to evaluate its own historical

11   performance against various aggregated and averaged groups of hotels, including hotels in a

12   particular geographic area, hotels within a sub-tract (e.g., luxury, upper upscale, economy), and a

13   self-selected "competitive set" of other hotels.  *See* Compl. App'x B at "STAR Summary."  The

14   frequency at which a hotel receives STAR Reports depends on "the cadence at which a

15   participating hotel shares its data" with STR.  Compl. ¶ 3.  The Complaint is silent as to which

16   Hotel Defendants allegedly receive STAR Reports in the alleged geographic markets, and the

17   frequency with which the Hotel Defendants receive those reports.[4]

18        ***Competitive Sets***.  In order to provide a meaningful benchmark, participating hotels may

19   select a "competitive set" or "comp set," which is a group of hotels against which the participating

20   hotel would like to compare its past performance.  *Id.* ¶¶ 4, 20, 79.  There is no maximum number

21   of competing hotels that may be placed in a hotel's comp set but there must be at least three other

22   hotels—i.e., at least four hotels being compared in total—and there are typically over five other

23   hotels in a hotel's comp set.  *See* Ex. 2 at 16, Lodging, Comp Sets Revisited (Oct. 26, 2011) ("The

24   number of hotels in a competitive set depends on the property and supply within the competitive

25   market; although the national average is 5.57 properties per comp set.").[5]  Participating hotels

---

[4]       The Complaint instead vaguely refers to various Hotel Defendants as receiving "STR reports," *see, e.g.*, Compl. ¶¶ 104–07, of which there are various types.

[5]       Plaintiffs rely on and (selectively) quote this article and it is thus incorporated by reference. *See* Compl. ¶ 82 (selectively quoting from this article to omit the above language); *see also supra* note 3 (citing sources).

1  select their own comp sets, and there is no requirement that they be reciprocal.  *See id.* ("only 45

2  percent of U.S. hotels . . . named as primary competitors are named back as a primary competitor

3  by the same properties").  In other words, Hotel A's comp set may include Hotel B, but that does

4  not mean that Hotel B's comp set includes Hotel A.  Compl. ¶ 82.  Plaintiffs do not allege that

5  participating hotels, including the Hotel Defendants, have any way of knowing when they appear

6  in a competitor's comp set, nor is there any allegation that the Hotel Defendants have conspired to

7  coordinate or align their comp sets.

8        The comp set data that a participating hotel receives in its STAR Report reflects averaged

9  and aggregated data from the hotels in the comp set (e.g., the average occupancy rate across all

10  hotels in the comp set).  *Id.* ¶ 75.  Importantly, STR takes many precautions to ensure that data

11  from an individual hotel cannot be identified in any STR report, including through the use of comp

12  sets. Ex. 3 at 19-22, STR, Competitive Set Report Guidelines.[6]  For example, a change to a comp

13  set cannot "be made if data of a single property is isolated in any way," and STR performs

14  "isolation checks" to prevent "individual property data from being isolated from report to report."

15  *Id.* These and other safeguards ensure that data provided through STR reports is anonymized.[7]

16        ***Forward STAR Reports***.  In "certain" unidentified U.S. markets, but not all of them, STR

17  offers Forward STAR Reports.  Compl. ¶ 84.  Hotels receiving Forward STAR Reports provide

18  STR with two types of non-price data: (i) adjusted rooms available, which is the "total number of

19  rooms a property has available in its inventory to be booked;" and (ii) rooms booked, which is

20  "any room which has been subtracted/deducted from the Adjusted Rooms Available due to a

21  booking."  *Id.* ¶ 86.  STR then processes, aggregates, anonymizes, and averages that data and

22  publishes it in a report showing "occupancy on the books for the next 90 days (weekly report) and

23  12 months (monthly report)."  *Id.* ¶ 87.  Plaintiffs, however, do not allege that any of the Hotel

24  Defendants receive Forward STAR Reports.

25

26  [6]    The Court may consider STR's Competitive Set / Trend Report Guidelines because
Plaintiffs cite, link to, and quote from that document, and it is thus incorporated by reference.  *See,*
27  *e.g.*, Compl. ¶¶ 20 n.21, 134 n.134; *see also supra* note 3 (citing sources).
[7]    While Plaintiffs allege that "based on a strategic selection of custom cuts, some hotels
28  *could* deanonymize" STR data by "partner[ing] with another hotel," Compl. ¶ 22 (emphasis
added), there is no allegation that any Hotel Defendant has done so.

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC      6      LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    ***Bandwidth Report and RevPAR Positioning Matrix***.   The Complaint identifies two

2    additional reports that STR offers:  Bandwidth Reports and RevPAR Positioning Matrix Reports.

3    *Id*. ¶ 90.  A Bandwidth Report shows "the range of [occupancy, ADR, and RevPAR] performance

4    among a competitive set indicated by the daily high and low performance of individual

5    competitors," without identifying any competitor's position within that "band."  *Id*.  And the

6    RevPAR Positioning Matrix is an image of four quadrants, with an ADR Index on the vertical axis

7    and an Occupancy Index on the horizontal axis, and it shows anonymized dots indicating where

8    members of a hotel's competitive set fall within the matrix.  *Id*. ¶ 94.  Plaintiffs, again, do not

9    allege that any Hotel Defendant receives either of these reports.

10       **B.     STR's Customers And The Hotel Defendants**

11       Plaintiffs allege that over 78,000 hotels across 2,595 "submarkets" globally receive

12   STR reports.  *Id*. ¶ 65.  Of those tens of thousands of hotels, Plaintiffs name as defendants six hotel

13   companies (the aforementioned "Hotel Defendants").[8]  *Id*. ¶¶ 36-41.  Plaintiffs, however, do not

14   allege (and could not allege) that each of the Hotel Defendants own and/or operate every hotel

15   under their various brands (*e.g*., there is no allegation that Defendant Marriott owns or is

16   responsible for operating—including setting pricing for—all hotels that operate under the

17   JW Marriott, Ritz-Carlton, St. Regis, W Hotels, Westin, Gaylord, Sheraton, or Renaissance

18   brands).  *See id*. ¶ 40.

19       Plaintiffs allege that each of the Hotel Defendants subscribe to STR, but are silent as to

20   which STR reports each receives in any alleged geographic market, the frequency with which they

21   receive those reports, or when in the last nearly forty years each of the Hotel Defendants became

22   an STR customer.  *See id*. ¶¶ 103-109.  Plaintiffs also do not allege how many competing hotels

23   any Hotel Defendants include in their comp sets in any particular geographic market.[9]

24   _____

25   [8]    The Complaint also names as non-defendant "Co-Conspirators" Choice Hotels International, Inc., Great Eagle Holdings Limited, Omni Hotels Management Corporation, and Wyndham Hotels & Resorts, Inc. Compl. ¶¶ 42-45.

26   [9]    In other non-antitrust cases, courts have noted that some of the Hotel Defendants had six,
27   seven, or even ten other hotels in their comp sets.  *See, e.g.*, *In re M Waikiki LLC*, 2012 WL 2062421, at *2 (Bankr. D. Haw. June 7, 2012) (noting "six identified competitive hotels" in Marriott hotel STR report); *Milladge v. OTO Dev., LLC*, 2014 WL 4929508, at *1 (E.D. Va. Oct.
28   1, 2014) (noting ten hotels in a comp set for Hyatt, and seven hotels in a comp set for Sheraton);

### C.   The Alleged Conspiracy

Plaintiffs allege that since "at least February 2020," the Hotel Defendants have agreed to share competitively sensitive information regarding their occupancy and revenue through STR to increase and fix-prices for "luxury" hotel rooms in fifteen metropolitan areas in the United States. *Id.* ¶¶ 1, 193, 209, 211.   While Plaintiffs imply throughout that the Hotel Defendants exchange "pricing" information through STR reports, *see, e.g.*, *id.* ¶¶ 1, 14, 16, Plaintiffs do not allege that, for any STR report, participating hotels provide or receive **any** pricing information.  *See id.* ¶¶ 60-102.  Nor do Plaintiffs allege that STR recommends any prices or pricing strategy.  *See id.* ¶¶ 141-54.   Instead, Plaintiffs allege that some Hotel Defendants use various third-party "revenue management" products to guide their pricing strategy.  *Id.* ¶¶ 11, 12, 105, 141-55, 162-63.[10]

## III.   ARGUMENT

Plaintiffs do not plausibly allege a claim under Section 1 of the Sherman Act.  To state a Section 1 claim, a plaintiff must allege (1) a "contract, combination or conspiracy among two or more persons or distinct business entities," (2) "which is intended to restrain or harm trade," (3) "which actually injures competition," and (4) "harm to the plaintiff from the anticompetitive conduct."  *Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1129 (9th Cir. 2015) (internal quotation omitted).

Under Section 1, agreements that are "made up and down a supply chain, such as between a manufacturer and a retailer," are considered vertical agreements, and agreements that are made among competitors are considered horizontal agreements.  *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015).  Pleading a "hub-and-spoke" conspiracy, as Plaintiffs have attempted to allege, requires pleading (1) "a hub," (2) "spokes, such as competi[tors] . . . that enter into vertical agreements with the hub," and (3) "the rim of the wheel, which consists of horizontal agreements among the spokes." *Id.* at 1192.  In a hub-and-spoke claim,

---

*see also In re Kinser Grp.*, 2020 WL 7633854, at *5 (noting that Holiday Inn hotel included "10 competitive set hotels identified in [STR] reports").

[10]    The Complaint does not allege that all Hotel Defendants use the same revenue management system.  *See, e.g.*, Compl. ¶ 144.

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

the "key agreements" are those among the defendant spokes because the claim "depends on establishing those horizontal agreements" among competitors.  *Id.* at 1193.

Whether proceeding on a hub-and-spoke theory or otherwise, to survive dismissal a Section 1 claim must "contain sufficient factual matter, taken as true, to plausibly suggest that an illegal agreement was made."  *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 46 (9th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Bare conclusions that defendants reached an "agreement" can be disregarded, as can allegations that "are no more consistent with an illegal agreement than with rational and competitive business strategies, independently adopted by firms acting within an interdependent market."  *In re Musical Instruments*, 798 F.3d at 1189.  Mere allegations that defendants engaged in "parallel conduct" are also insufficient to infer an agreement because parallel conduct "could just as well be [lawful] independent action."  *In re DRAM*, 28 F.4th at 47 (quoting *Twombly*, 550 U.S. at 557).

In applying these principles, the Ninth Circuit requires that a plaintiff bringing a Section 1 claim allege "something more . . . that places their allegations of parallel conduct in a context suggesting a preceding agreement."  *Id.* at 45.  To meet this standard, a plaintiff must allege either direct evidence of a conspiracy or rely on circumstantial evidence by alleging parallel conduct combined with "plus factors."  *In re Musical Instruments*, 798 F.3d at 1193.  But regardless of the path that plaintiffs choose, they must "answer the basic questions: who, did what, to whom (or with whom), where, and when?"  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).

Moreover, because agreements to exchange information may very well "increase economic efficiency and render markets more, rather than less competitive," *United States v. U.S. Gypsum*, 438 U.S. 422, 441 n.16 (1978), those agreements are not "per se" illegal.  *See In re Local TV Advertising Antitrust Litig.*, 2022 WL 3716202, at *3 (N.D. Ill. Aug. 29, 2022).  Instead, the complaint must adequately allege that such an agreement is anticompetitive under a "rule of reason" analysis, "which considers a number of factors including most prominently the structure of the industry involved and the nature of the information exchanged."  *Id.* (quotation omitted);

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   *see also In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999) ("[S]uch exchanges of

2   information are evaluated under a rule of reason analysis."); *Krehl v. Baskin-Robbins Ice Cream*

3   *Co.*, 644 F.2d 1348, 1357 (9th Cir. 1982) ("[T]he mere exchange of price information, without

4   more, is not per se illegal . . . .").

5          Plaintiffs do not answer *Kendall's* questions about the particulars of the alleged conspiracy.

6   *Kendall*, 518 F.3d at 1048.  Plaintiffs also do not plausibly allege either through direct or

7   circumstantial evidence any agreement among the Hotel Defendants to exchange competitively

8   sensitive information through STR.  Plaintiffs also fail to plead facts plausibly showing that the

9   alleged exchange of information through STR's reports had or is likely to have any anticompetitive

10  effects.  And, Plaintiffs fail to sufficiently allege they paid higher prices *because of* the alleged

11  conspiracy, as required to show they suffered an "antitrust injury."  The Complaint must be

12  dismissed for any one of those reasons.

13  **A.     The Complaint Fails To Satisfy The Ninth Circuit's *Kendall* Conspiracy**
    **Pleading Standard**
14

15         The Complaint should be dismissed because it fails to answer the basic questions necessary

16  to plead an antitrust conspiracy, including "who, did what, to whom (or with whom), where, and

17  when?"  *Id.*; *see also Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x 389, 390 (9th

18  Cir. 2017) (affirming dismissal where complaint "failed to allege sufficient facts to answer" these

19  "basic questions"); *S&W Forest Prods. v. Shake*, 2019 WL 3716457, at *4-5 (W.D. Wash. Aug.

20  7, 2019) (Pechman, J.) (same).

21         **_Who Agreed With Whom?_**   Plaintiffs do not allege "who" entered into the supposed

22  conspiracy to exchange competitively sensitive information through STR.  While Plaintiffs may

23  not need to identify specific employees, Plaintiffs must—but do not—say more than "Hotel

24  Operators."  *Gibson v. MGM Resorts, Int'l*, 2023 WL 7025996, at *4 (D. Nev. Oct. 24, 2023); *see*

25  *also Kendall*, 518 F.3d at 1048 (rejecting as insufficient allegation that "the Banks" entered into

26  an alleged conspiracy); *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988,

27  995 (N.D. Cal. 2015) ("Defendant Insurers are large organizations, and Plaintiffs' bare allegations

28  of a conspiracy would be essentially impossible to defend against.")  This pleading failure is

1   particularly problematic here because several of the Hotel Defendants own multiple purported

2   "luxury" hotel brands or companies, *see* Compl. ¶¶ 36-41, and Plaintiffs do not allege that the

3   Hotel Defendants are responsible for pricing or the relationship with STR for every individual

4   hotel operating under one of those brands or companies, many of which are owned and/or managed

5   by third parties or franchisees.

6        ***<u>What Have The Hotel Defendants Conspired To Do?</u>***   Plaintiffs also fail to allege "what"

7   the Hotel Defendants did to form an agreement.  Nor do they allege how any supposed agreement

8   would operate.  Plaintiffs' conclusory allegations that the Hotel Defendants entered into an

9   "agreement administered by STR that enables them to exchange competitively sensitive

10  information," *id.* ¶ 2, are implausible because Plaintiffs do not adequately allege that competitively

11  sensitive information is contained in STR's benchmarking reports.  Nor could they, since those

12  reports merely provide aggregated, averaged, anonymized data on occupancy, ADR, and RevPAR.

13  *Id.* ¶¶ 75, 134; *see also Kendall*, 518 F.3d at 1047-48 (affirming dismissal because plaintiffs

14  "pleaded only ultimate facts, such as conspiracy, and legal conclusions"); *Gibson*, 2023 WL

15  7025996, at *4 (allegations of agreement found to be conclusory); *Arcell v. Google LLC*, 2023 WL

16  5336865, at *3 (N.D. Cal. Aug. 18, 2023) (same).

17       Likewise, the allegation that each of the Hotel Defendants entered into an agreement with

18  STR to give data to STR and receive back some unspecified STR report(s), *see* Compl. ¶¶ 104-15,

19  is insufficient to allege an information sharing conspiracy *among the Hotel Defendants*.  The

20  Complaint is silent as to what report(s) any Hotel Defendant receives from STR in the alleged

21  geographic markets, the cadence at which the Hotel Defendants and the hotels operating under

22  their brands receive such reports, and the composition of any hotel's comp set.  In the absence of

23  such allegations, there is no basis to infer any agreement.  *See Gibson*, 2023 WL 7025996, at *3

24  (dismissing complaint where it was "impossible to infer that all Hotel Operators agreed to use the

25  same" product); *see also Sheahan v. State Farm Gen. Ins. Co.*, 394 F. Supp. 3d 997, 1013 (N.D.

26  Cal. 2019) (dismissing antitrust conspiracy claim that rested on conclusory allegations of

27  agreement).

28

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    **_When Was A Conspiracy Formed?_**   Plaintiffs also do not allege *when* the Hotel

2    Defendants allegedly reached any agreement regarding their use of STR, or even when, in the last

3    almost forty years, a single Hotel Defendant or the various hotels operating under its brands began

4    receiving STR reports.  Instead, in a transparent attempt to bring their claim within the four-year

5    statute of limitations, Plaintiffs merely allege that "[s]ince at least February 2020, Defendants and

6    their co-conspirators entered into a continuing agreement to regularly exchange detailed, timely,

7    competitively sensitive and non-public information about their operations."  Compl. ¶ 209.  But a

8    "conclusory allegation of agreement at some unidentified point does not supply facts adequate to

9    show illegality."  *Twombly*, 550 U.S. at 557; *see also SourceAmerica*, 691 F. App'x at 390

10   (affirming dismissal of conspiracy claims where "allegations fail[ed] to explain where and when

11   the alleged collusive activity among the defendants occurred"); *Gibson v. Cendyn Grp., LLC*, 2024

12   WL 2060260, at *3 (D. Nev. May 8, 2024) (dismissing, as implausible, allegations that hotels

13   engaged in illegal agreement when they began using software "at different times over an

14   approximately 10-year period"); *Bay Area Surgical Mgmt.*, 166 F. Supp. 3d at 995-96 (alleging

15   "early 2010 and continuing thereafter" fails to satisfy *Kendall*).

16   **_Where Was The Conspiracy Formed?_**   The Complaint is also silent as to *where* the alleged

17   conspiracy was formed.  There are no allegations of direct communications among the Hotel

18   Defendants about whether to use STR, which STR reports to use, or how to use the information

19   within an STR report.  At most, Plaintiffs allege that industry conferences provided an opportunity

20   for employees of hotel companies to meet.  *See, e.g.*, Compl. ¶¶ 18, 103-11, 116-23.  But there is

21   no allegation or suggestion that any of the Hotel Defendants reached an agreement at those

22   conferences regarding their use of STR.  And the law is clear that "mere participation in trade-

23   organization meetings where information is exchanged and strategies are advocated does not

24   suggest [a conspiracy]."  *In re Musical Instruments*, 798 F.3d at 1196; *see also In re DRAM*, 28

25   F.4th at 52 (alleged attendance at "trade organization meetings several times a year" was

26   inadequate to infer conspiracy); *Prosterman v. Am. Airlines, Inc.*, 747 F. App'x 458, 462 (9th Cir.

27   2018) ("We have long been skeptical that participation in a trade association is suggestive of

28   collusion . . . .").

DEFENDANTS' JOINT MOTION                    12
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   Plaintiffs' alleged conspiracy is implausible because they have failed to answer the "basic

2   questions" required by *Kendall*, and the Court should dismiss the Complaint for this reason alone.

3   **B.     The Complaint Fails To Plead An Agreement Among The Hotel Defendants**

4   The Complaint should be dismissed for the independent reason that it does not allege

5   horizontal agreements among the Hotel Defendants—the "key agreements" in the type of "hub-

6   and-spoke" claim that Plaintiffs attempt to assert.  *In re Musical Instruments*, 798 F.3d at 1191.

7   **1.     Plaintiffs Do Not Allege Direct Evidence Of An Agreement Among The
             Hotel Defendants**

8

9   Plaintiffs do not plead anything that comes close to resembling direct evidence of an

10  agreement among the Hotel Defendants to use STR.  "Direct evidence is smoking-gun evidence

11  that establishes, without requiring any inferences, the existence of a conspiracy."  *Honey Bum,*

12  *LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir. 2023) (citation and internal quotation

13  omitted); *In re Citric Acid Litig.*, 191 F.3d 1090, 1093-94 (9th Cir. 1999).  Here, the Complaint

14  makes no allegation of communications among the Hotel Defendants regarding their use of STR,

15  let alone any "smoking-gun" evidence that establishes, without inference, the existence of an

16  agreement to exchange competitively sensitive information among the Hotel Defendants.

17  **2.     Plaintiffs Also Do Not Plausibly Allege Circumstantial Evidence Of An
             Agreement Among The Hotel Defendants**

18

19  Plaintiffs also fail to plead any circumstantial evidence that could plausibly suggest an

20  agreement among the Hotel Defendants to exchange competitively sensitive information through

21  STR.  To state a conspiracy claim based on circumstantial evidence, a plaintiff must plead facts

22  demonstrating both (1) "parallel conduct," and (2) "plus factors."  *In re Musical Instruments*, 798

23  F.3d at 1193-94.  If a complaint fails to plausibly allege parallel conduct, "plus factors

24  are . . . irrelevant."  *SourceAmerica*, 691 F. App'x at 391.  And even where complainants allege

25  parallel conduct, they must also plead "'some further factual enhancement' that places their

26  allegations of parallel conduct in a context suggesting a preceding agreement."  *In re DRAM*,

27  28 F.4th at 47 (quoting *Twombly*, 550 U.S. at 557).  Plaintiffs have not alleged any parallel conduct

28  or "plus factors."

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1

a.   **The Complaint Fails To Allege Any Parallel Conduct**

2   Plaintiffs have failed to plead any parallel conduct that could plausibly infer an agreement

3   among the Hotel Defendants.  Courts have found that the "slow adoption of similar policies does

4   not raise the specter of collusion."  *In re Musical Instruments*, 798 F.3d at 1195-96 (adopting

5   pricing policies over a period of several years was insufficient to plead parallel conduct); *In re*

6   *Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1022 (N.D. Cal. 2007)

7   (dismissing conspiracy claim because the three months between defendants' product releases fell

8   "short of unusual, lockstep . . . behavior").  Plaintiffs fail to allege even that here.  STR has been

9   providing its reports for nearly forty years, and Plaintiffs do not allege that the Hotel Defendants

10   subscribed to STR "around the same time."  *In re Musical Instruments*, 798 F.3d at 1193.  It is

11   implausible to allege that a hotel that began receiving reports in the 1990s, merely by receiving

12   those reports, must be conspiring with another hotel that began subscribing to STR more than

13   twenty years later. *Id.* at 1195; *Cendyn*, 2024 WL 2060260, at \*3-4 (finding allegations of a "tacit

14   agreement" among hotels was "implausible" where the hotels began licensing software "at

15   different times over an approximately 10-year period").[11]

16   Plaintiffs also do not allege that the Hotel Defendants all receive the same STR reports or

17   are using STR reports in similar ways.  Plaintiffs do not allege which STR reports each Hotel

18   Defendant receives in any of the fifteen alleged geographic markets, or the cadence with which

19   any Hotel Defendant provides and receives data.  Nor are there any allegations that the Hotel

20   Defendants' comp sets are reciprocal or similar in any alleged geographic markets (let alone all of

21   them).  This too precludes a plausible inference of parallel conduct.  *See Gibson*, 2023 WL

22   7025996, at \*3 (no parallel conduct where hotels were not alleged to have adopted the same pricing

23   software).

24   There also are no allegations that the Hotel Defendants' rates for luxury hotel rooms have

25   moved in parallel in any geographic market.  Indeed, Plaintiffs' "preliminary analysis" of listed

26   prices for "premium hotel chains" undermines any suggestion of parallel pricing.  *See*

27

28   ───────────
[11]   The undefined timing and nature of the alleged conspiracy also dooms the allegation that
it led to an increase in prices during the relevant time period.  *See infra* Part III.C.1.

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    Compl. ¶ 140.  Despite Plaintiffs' label of "parallelism," the Complaint shows hotel prices that are

2    hundreds of dollars apart for rooms on the same day, and prices that fluctuate dramatically.[12]  *Id.*;

3    *see also Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1146-47 (N.D. Cal. 2017) (no

4    parallel conduct given substantial price differences); *In re GPU Antitrust Litig.*, 527 F. Supp. 2d

5    at 1022-23 (same).

6            Plaintiffs have thus failed to plead any parallel conduct among the Hotel Defendants from

7    which the Court could plausibly infer an agreement to use STR to exchange competitively sensitive

8    information.

9                    **b.    Plaintiffs Fail To Plead Any "Plus Factors"**

10           Even if Plaintiffs had pled parallel conduct, they have not alleged any "plus factors" that

11   would make the alleged agreement among the Hotel Defendants plausible.  To meet that standard,

12   Plaintiffs must demonstrate that the "parallel behavior . . . would probably not result from chance,

13   coincidence, independent responses to common stimuli, or mere interdependence unaided by an

14   advance understanding among the parties.'"  *Twombly*, 550 U.S. at 556 n.4 (citation and quotation

15   omitted); *In re Musical Instruments*, 798 F.3d at 1198.  "Plus factors" therefore typically include

16   conduct that is against an entity's apparent economic self-interest, unusual interfirm

17   communications, or an abrupt change in a long-standing business practice or pricing structure.  *See*

18   *In re Musical Instruments*, 798 F.3d  at 1194.  Plaintiffs have not plausibly alleged any "plus

19   factors," and that alone is a sufficient basis to dismiss the Complaint.

20                    **(1)    Providing Data To STR Is Not Against Any Hotel**
                              **Defendant's Self-Interest**
21

22           Plaintiffs seemingly allege that an agreement among the Hotel Defendants is plausible

23   because of STR's "give data-to-get data" policy.  *See, e.g.*, Compl. ¶¶ 3, 23, 96-102.  But that

24   practice does not demonstrate that a hotel's "individual action would be so perilous in the absence

25   of advance agreement that no reasonable firm would make the challenged move without such an

26   agreement."  *In re Musical Instruments*, 798 F.3d at 1195.  Businesses rationally make the

---

12       Plaintiffs also do not connect this supposed "parallelism" to STR, noting that the charts
28   reflect a "common pricing strategy and/or a shared data input in determining room fares."  Compl.
     ¶ 140.

1    unilateral decision to submit data because doing so is the only way to create an industry

2    benchmark.  Peer-group averages cannot exist unless participants submit their historical data so

3    that someone can aggregate, average, and distribute it in anonymized form, as STR does.

4    Compl. ¶ 134.  This is not against any hotel's self-interest.  Indeed, courts, including the Supreme

5    Court, have acknowledged the legitimate motivation of businesses to conduct their operations with

6    the benefit of market-level data.  *See, e.g.*, *Maple Flooring Mfrs.' Ass'n v. United States*, 268 U.S.

7    563, 582-83 (1925) (noting that "gathering and dissemination" of market-level data leads to

8    efficiency and transparency); *In re Citric Acid Litig.*, 191 F.3d at 1098 (distribution of "aggregate

9    statistics" "served the legitimate purpose of informing members of worldwide citric acid

10   conditions").

11          Plaintiffs themselves allege many reasons why providing data to STR and receiving STR

12   benchmarking reports is in a hotel's independent economic interest and fosters competition among

13   the Hotel Defendants, including hotels using the reports to track their "competitive performance,"

14   Compl. ¶ 64; evaluate employees, *id*. ¶ 9; "identify ways to grow occupancy" and "increase market

15   share," *id*. ¶ 110 n.106;[13] implement strategies for "boosting occupancy," *id*. ¶ 119; and/or

16   achieving a "competitive advantage," *id*. ¶ 9.  As these allegations make clear, "each [hotel] had

17   an obvious incentive" to contract with STR, irrespective of whether each of the other Hotel

18   Defendants did so as well.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327-28 (3d Cir.

19   2010); *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th

20   656, 666-67 (6th Cir. 2022) (conduct is not a "plus factor" where it is consistent with defendants'

21   "vested interest," and it is "not inconceivable that it would be prudent" absent collusion).  Plaintiffs

22   do not—and could not—allege that providing data to STR and receiving STR's benchmarking

23   reports is against any Hotel Defendant's economic self-interest.

24                      **(2)    Knowledge Of Participating Hotels Is Not
                                 Enough To Infer An Agreement**

25

26          The Complaint also attempts to make much of the allegation that a hotel subscribing to

27   STR receives a list of other subscribing hotels in its geographic area so that it can select hotels to

28   ─────────────
     [13]    Complaint footnote 106 incorporates by reference a LinkedIn profile, which is available as
     Ex. 5 at 31, B. Shih, LinkedIn Profile (last visited May 17, 2024).

include in its comp set. *See, e.g.*, Compl. ¶¶ 20, 95.  But merely knowing that other hotels are STR subscribers does not make them co-conspirators.  Because "neither parallel conduct nor conscious parallelism, taken alone, raise the necessary implications of conspiracy," *Twombly*, 550 U.S. at 561 n.7, courts have identified only narrow circumstances where knowledge of the identities of other participants in an activity might constitute a "plus factor"—for example, where, if "any of the [members] declined to participate, the remaining [members] could not maintain the scheme." *McCarn v. HSBC USA, Inc.*, 2012 WL 7018363, at *5 (E.D. Cal. May 29, 2012) (quoting *Samp v. J.P. Morgan Chase Bank*, 2012 WL 7018363, at *6 (E.D. Cal. May 29, 2012)); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 331 ("[T]he allegations that each insurer knew about the 'competitive protections' purchased by the other insurer-partners manifestly do not 'describe[] . . . a horizontal conspiracy' to unreasonably restrain trade."); *In re Amazon.com, Inc. eBook Antitrust Litig.*, 2022 WL 4581903, at *19 (S.D.N.Y. Aug. 3, 2022) (dismissing "allegations [that] do not give rise to a plausible inference that the [defendants] had to act collectively or otherwise suffer a loss of business or revenue"), *adopted by*, 2022 WL 4586209 (S.D.N.Y. Sept. 29, 2022).  There are no such allegations here.  No single hotel's participation is alleged to be crucial, nor are there any allegations that if any particular hotel or Hotel Defendant ceased its participation, any other hotels would cease subscribing to STR.

### (3)    A Motive To Profit Is Not Proof Of Conspiracy

A motive to maximize profits, which the Complaint cites often, cannot support an inference of conspiracy either, because all businesses have that motive independently.  *See In re DRAM*, 28 F.4th at 49–50 (it is "economically rational" to "focus on profitability" over "market share"); *Hyland v. Homeservices of Am., Inc.*, 771 F.3d 310, 321 (6th Cir. 2014) (affirming ruling that "Defendants' motive to maximize profits cannot support an inference of a conspiracy" because "then all businesses would be subject to anti-trust liability" (citation omitted)); *Hobart-Mayfield*, 48 F.4th at 668 (rejecting "motive" and "strong incentives to collude" plus factors).

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1
2

(4)     **Vague References To Opportunities To Meet Do Not Suffice**

3      The Complaint also describes several STR-hosted conferences focusing on "industry
4   outlook," "forecasts," and "trends" that executives from various Hotel Defendants purportedly
5   attended in recent years.  Compl. ¶¶ 116-23.  But allegations of so-called "opportunities" to collude
6   "are not sufficient" to infer a conspiracy.  *Midwest Auto Auction, Inc. v. McNeal*, 2012 WL
7   3478647, at *10 (E.D. Mich. Aug. 14, 2012); *see also In re Musical Instruments*, 798 F.3d at 1196
8   ("[M]ere participation in trade-organization meetings . . . does not suggest [a conspiracy]."); *In re*
9   *ICE LIBOR Antitrust Litig.*, 2020 WL 1467354, at *4 (S.D.N.Y. Mar. 26, 2020) (opportunities to
10   collude "based wholly in speculation and wishful thinking as to what Defendants might have done"
11   are insufficient to infer a conspiracy).

12      Plaintiffs have thus alleged no "plus factors" that make their alleged conspiracy plausible,
13   and the Complaint should be dismissed.

14
15

C.     **The Complaint Fails To Plead Any Anticompetitive Effects From The Alleged Conspiracy**

16      The Complaint should be dismissed for the independent reason that Plaintiffs have not
17   adequately alleged that any conspiracy based on the receipt of STR reports has caused, or is likely
18   to cause, anticompetitive effects in any market.  Plaintiffs must plausibly allege this essential
19   element because "[t]he exchange of price data and other information among competitors does not
20   invariably have anticompetitive effects; indeed such practices can in certain circumstances
21   increase economic efficiency and render markets more, rather than less, competitive," *U.S.*
22   *Gypsum*, 438 U.S. at 441 n.16, and thus must be judged under the rule of reason.[14]  It is not
23   sufficient to simply state that the alleged conspiracy resulted in "higher prices," "supracompetitive
24   prices," or an "output reduction," as those are all just conclusory labels.  *See Brooke Grp. Ltd. v.*
25   *Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 237 (1993); *Aya Healthcare Servs., Inc. v.*

26   ─────────────────
27   [14]      *See also Baskin-Robbins Ice Cream Co.*, 664 F.2d at 1357 ("[T]he mere exchange of price
    information, without more, is not per se illegal . . . ."); *In re Citric Acid Litig.*, 191 F.3d at 1098-
28   99 (noting that information exchange where group members shared production and sales statistics
    with a central agent, who audited and distributed aggregated market information was a "wholly
    legal" way of learning about historical industry performance).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1  *AMN Healthcare, Inc.*, 2017 WL 6059145, at \*5 (S.D. Cal. Dec. 6, 2017); *Prime Healthcare Servs.*

2  *v. Serv. Emps. Int'l Union*, 2013 WL 3873074, at \*15 (S.D. Cal. July 25, 2013).  Instead, Plaintiffs

3  must plead facts showing a likelihood of anticompetitive effects through either direct or indirect

4  evidence.  *Intel Corp. v. Fortress Inv. Grp.*, 2022 WL 16756365, at \*2 (9th Cir. Nov. 8, 2022).

5  Plaintiffs here have alleged neither.

6

7    **1.    The Complaint Fails To Plead Any Direct Evidence Of Anticompetitive Harm**

8          To prove anticompetitive harm directly, a complaint must put "forth evidence of restricted

9  output and supracompetitive prices."  *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th

10 Cir. 1995).  Plaintiffs' "[p]reliminary economic analysis" purports to show that the alleged

11 agreement to exchange information through "STR leads to higher prices."  Compl. ¶ 137.  But the

12 mere allegation that consumers "paid supracompetitive prices" is conclusory.  *See Intel Corp. v.*

13 *Fortress Inv. Grp.*, 511 F. Supp. 3d 1006, 1027 (N.D. Cal. 2021), *aff'd*, 2022 WL 16756365, at

14 \*2-3 (9th Cir. Nov. 8, 2022).  And the Complaint's attempts to show supposedly higher prices fall

15 far short.

16         To begin with, Plaintiffs' alleged analysis does not show that the Defendant Hotels used

17 STR reports to charge anticompetitive prices because Plaintiffs' analysis is not based on (i) actual

18 prices charged, (ii) the conspiracy period alleged, or even (iii) the geographic areas allegedly

19 affected.  Compl. ¶ 137.  Instead, Plaintiffs' preliminary analysis is based solely on "future listing

20 prices" from four months in 2024, which are combined for fifteen cities.  *Id*.  But "future listing

21 prices" are not evidence of the actual prices that any Hotel Defendant charged during the four-year

22 class period, and the Court need not accept an allegation of direct evidence where the plaintiff "did

23 not conduct an empirical analysis of the Challenged Agreements' effect on the price" of the

24 affected product.[15]  *1-800 Contacts, Inc. v. F.T.C.*, 1 F.4th 102, 118 (2d Cir. 2021).  Even a study

25 of actual prices from a four-month period is "so narrow and so recent that, even taken as true, it

26 does not support the conclusion Plaintiffs claim it does."  *In re RealPage, Inc. Rental Software*

27 ───────────────

28 [15]    The reliance on "future list prices" is inexplicable because Plaintiffs elsewhere in the Complaint purport to present evidence of average prices actually charged.  *See* Compl. ¶ 191 (showing graph of "hotel market prices" dating back to November 2023).

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   *Antitrust Litig.*, 2023 WL 9004806, at \*34 (M.D. Tenn. Dec. 28, 2023).  Similarly, the aggregation

2   of future prices across fifteen cities is improper because the Complaint alleges that "there are

3   specific metropolitan markets for luxury hotels," with different demand conditions in each one.

4   Compl. ¶ 172.  The purported economic analysis presented, however, includes only the *combined*

5   fifteen alleged geographic markets.  *See Oliver v. SD-3C LLC*, 2016 WL 5950345, at \*6 (N.D.

6   Cal. Sept. 30, 2016) (disregarding analysis that "lacks allegations linking the worldwide data to

7   the relevant market").

8           Moreover, the preliminary analysis is flawed because it does not purport to isolate a

9   difference in prices (even future ones) for hotels that use STR versus hotels that do not use STR.

10  The Complaint alleges that "'almost everybody' within the hotel industry in the U.S. was an STR

11  client and received STR reports," Compl. ¶ 6, and even identifies multiple "luxury hotels" that use

12  STR, but are not named as Hotel Defendants, including:  Choice Hotels International, The

13  Langham, Omni Hotels Management Corporation, and Wyndham Hotel & Resorts.  *Id.* ¶¶ 42-45.

14  The economic analysis performed, however, shows only a comparison between some "Defendant"

15  and "Non-Defendant" hotels.  *See id.* ¶¶ 138, 139.  There is no allegation that the Non-Defendant

16  Hotels included in the comparison did not also use STR, which renders the entire comparison

17  meaningless.  *See In re Treasury Sec. Auction Antitrust Litig.*, 2021 WL 1226670, at \*14 (S.D.N.Y.

18  Mar. 31, 2021) (declining to rely on statistical analyses in a motion to dismiss that did "not

19  differentiate the Auction Defendants from each other, or from the rest of the market"); *In re

20  Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 389 (S.D.N.Y. 2019) (rejecting

21  "statistical analyses [that] do not distinguish between Defendants and non-defendant auction

22  participants at all").  And the comparison is even further "immaterial absent some indication that

23  those other [Non-Defendant Hotels] are fair comparators for the [Hotel Defendants] at issue in this

24  case."  *Intel Corp.*, 511 F. Supp. 3d at 1027; *In re ICE LIBOR Antitrust Litig.*, 2020 WL 1467354,

25  at \*6 (S.D.N.Y. Mar. 26, 2020) (rejecting "unreliable and dubious" use of benchmarks that were

26  not apt comparators).

27          Lastly, the "preliminary analysis" reflected in the "Future Listed Prices Across 15 Major

28  US Cities" charts affirmatively disproves Plaintiffs' theory of coordinated or fixed pricing by

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC                              20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

showing the dramatically varied and inconsistent future list prices used by the eight hotel companies, or individual hotel chains within those companies, that Plaintiffs cherry-picked from the more-than-thirty Hotel Defendants' brands. Compl. ¶ 140. For example, these charts show prices ranging from $250 to over $650 per room for the same day in the month of June, and prices ranging from around $200 to around $550 per room for April for the eight hotel companies that Plaintiffs arbitrarily selected. *Id.* There is no clear trend or coordination that can be gleaned from these charts, making them meaningless.[16] *See RealPage*, 2023 WL 9004806, at *14 ("courts do not credit charts and analyses that are 'as consistent with parallel, market-following behavior. . . as they are with participation in a price-fixing scheme'" (citation omitted)). Moreover, Plaintiffs do not allege that these charts only reflect prices for "luxury" hotel rooms—i.e., the alleged product market—nor do the charts include any prices for brands of Defendants Accor or Six Continents, or alleged Co-Conspirators Choice Hotels, Great Eagle Holdings, or Omni.

Thus, for multiple reasons, Plaintiffs have failed to plead any direct evidence that the alleged conspiracy is leading (or has led) to higher prices in any relevant market.

## 2. The Complaint Cannot Show That Anticompetitive Effects Are Likely

To demonstrate that an information exchange is likely to have anticompetitive effects through indirect evidence, Plaintiffs must allege that "a number of factors including most prominently the structure of the industry involved and the nature of the information exchanged," *In re Local TV Advertising Antitrust Litig.*, 2022 WL 3716202, at *3 (N.D. Ill. Aug. 29, 2022), create "inferences [that] are irresistible that the exchange of price information has had an anticompetitive effect in the industry," *United States v. Container Corp. of Am.*, 393 U.S. 333, 337 (1969). Plaintiffs have not show either. When applied to STR reports, the nature of the information exchanged and the industry structure do not create an "irresistible" inference that STR reports are likely to produce anticompetitive effects. *Id.*

---

[16] The only two hotels with future listed prices that seem even remotely similar are Westin and Marriott, Compl. ¶ 140, which are commonly owned by a single Hotel Defendant—Marriott International, Inc., *id.* ¶ 40—and thus Plaintiffs cannot show parallel conduct between multiple Hotel Defendants, let alone among all of them.

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

**a.**      **The Exchange Of Occupancy And Revenue Data In STR Reports Is Not Anticompetitive**

        **(1)**      **STR Reports Show Aggregated And Averaged Non-Price Data**

The "dissemination of aggregated information which avoids transaction specificity (for example, data exchanged in the form of industry averages) is generally favored in the antitrust context." *In re Local TV Advertising Litig.*, 2022 WL 3716202, at *3 (citation omitted). That is what STR provides in its benchmarking reports. Even in its most granular form, the comp set data in any STR report is aggregated to at least three other companies and presented as an average for the group. Participating hotels cannot isolate or identify data about occupancy, revenue, or prices (which do not appear in any STR report) at the hotel level, let alone at the room-transaction level. STR does not even collect (and is not alleged to collect) information at that level of granularity. *See, e.g.*, Compl. ¶¶ 16, 69. Instead, the anonymized, aggregated, and averaged information that STR provides is akin to "aggregate statistics" known to serve "legitimate purpose[s]." *In re Citric Acid Litig.*, 191 F.3d at 1098.

Even the most detailed information that STR provides in its STAR Reports—average daily rate or "ADR"—is a backward-looking revenue figure and not a price. It reflects all room revenue generated by the number of rooms sold, *see* Compl. ¶ 73, and does not reflect any price that any hotel actually charged—much less a price that any hotel plans to charge in the future. In that regard, the ADR data that STR provides is similar to the sharing of commercial loan "prime rates" that the Ninth Circuit found permissible in *Wilcox v. First Interstate Bank of Oregon*, 815 F.2d 522 (9th Cir. 1987). In *Wilcox*, the Court found that "disclosure of the prime rate does not enable competitors to conspire to fix prices and does not necessarily constitute a violation of the antitrust laws," in part because "most loans are negotiated at interest rates either a certain percentage above or below prime." *Id.* at 526-27. So too, with hotel rooms, where the price actually charged can vary for myriad reasons, including time of booking, size of room, furnishings, positioning within the hotel, and amenity access, among other factors. Reporting average revenue disguises all those pricing subtleties. STR then masks any hotel's past room rates further by only presenting the ADR figure as an average of at least three, but usually more than five, other hotels' average ADR. *See*

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

*supra* pp.5-6 (discussing comp sets).  The data that STR provides is thus not the kind of data "that identif[ies] particular parties, transactions, and prices," and that is "seen as potentially anticompetitive." *In re Local TV Advertising Litig.*, 2022 WL 3716202, at *3.

### (2)  STR Provides No Forward-Looking Price Data

The data in the STAR Report is entirely historical.  While Plaintiffs attempt to label this historical information as "current" and "price" information, that label is conclusory because it is clearly neither.  Compl. ¶ 131.  As discussed above, Plaintiffs cannot allege that STR's reports, including the STAR report, include ***any*** pricing information (let alone future pricing information). *See supra* pp.4-7.  And, by definition, the occupancy and revenue information that participating hotels provide to STR for the STAR Report is historical because it reflects data regarding rooms that either were or were not (in the past) booked and the revenue that hotels received from those bookings.  *See* Compl. ¶¶ 16, 69.  The historical, non-price information that the STAR Report provides is not likely to lead to hotels coordinating higher prices in the future—the Complaint's stated concern—because the report contains no preview or insight into any hotel's future pricing strategy.  *See Maple Flooring*, 268 U.S. at 573, 586 (finding no "unlawful restraint on commerce" from distribution of benchmarking information where "[a]ll reports of sales and prices dealt exclusively with past and closed transactions").

Because none of STR's reports contain future pricing information, they do not contain the type of information that courts consider to be "especially anticompetitive."  *Todd v. Exxon Corp.*, 275 F.3d 191, 211 (2d Cir. 2001).  Instead, the occupancy information in a Forward STAR report is akin to the prospective "holding capacity information" found to be competitively nonproblematic in *In re Local TV Advertising Antitrust Litig.*, 2022 WL 3716202, at *6-8.  Moreover, none of the Hotel Defendants are alleged to have received a Forward STAR report in any of the alleged geographic markets.

### (3)  Hotel Prices Are Publicly Available

The Complaint's repeated attempts to mischaracterize STR reports as containing "non-public information about current and forward . . . pricing data" are implausible because that

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   information is not available in any of STR's reports, although it is freely and publicly available to

2   consumers (or competing hotels) through multiple channels.  Compl. ¶ 215.  A prospective guest

3   can easily identify rates and room availability for any date in the future by simply visiting a hotel's

4   website, calling the hotel, or utilizing the "publicly available data" cited throughout the Complaint.

5   *See, e.g.*, *id*. ¶¶ 24, 137, 190.  STR reports, which contain no pricing information at all, are thus

6   far less detailed than what is publicly available, which directly refutes the notion that STR reports

7   could have plausibly harmed competition for "luxury" hotels.  *Cf. Five Smiths, Inc. v. Nat'l*

8   *Football League Players Ass'n*, 788 F. Supp. 1042, 1055 (D. Minn. 1992) (finding that the

9   dissemination of compensation and salary information that football teams were offering to players

10  was not "anticompetitive" and might "benefit competition" because it provided players with the

11  same type of information concerning other players' salaries that football teams already possessed).

### (4)   There Are No Alleged Direct Communications Among The Hotel Defendants

14  Plaintiffs do not allege any direct competitor-to-competitor exchanges, which are typically

15  found in cases where information exchanges have been found to be anticompetitive.  For example,

16  in *Container Corp.*, competitors contacted each other directly to obtain "the current price" being

17  offered to a "specific customer."  393 U.S. at 336.  In *Todd v. Exxon*, oil and gas company

18  executives allegedly "participated in frequent meetings to discuss [employee] salary information,

19  accompanied by assurances that the participants would primarily use the exchanged data in setting

20  their [employee] salaries," and the companies themselves "coordinated" detailed surveys.  275

21  F.3d at 212-13.  And in *Jien v. Perdue Farms, Inc.*, industrial poultry processors allegedly engaged

22  in "specific, secret meetings" in which "extensive poultry processing wage data was exchanged."

23  2020 WL 5544183, at *2, 12-13 (D. Md. Sept. 16, 2020).  Here, in contrast, there are no allegations

24  that any of the Hotel Defendants are directly communicating with each other about STR reports or

25  anything else.

26  In sum, the aggregated, non-price, and primarily historical information that STR provides

27  in its benchmarking reports, and has provided for decades, is not the type of information exchange

28  that is likely to lead to anticompetitive effects.

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1

2

### b.   The Structure Of The Hotel Industry Is Not Susceptible To Anticompetitive Effects

3

4

5

6

7

8

9

10

11

In addition to evaluating the type of information exchanged, courts look to the structure of the industry to determine if it has features likely to give rise to anticompetitive effects.  *See Five Smiths*, 788 F. Supp. at 1053 (citing *Container Corp.*, 393 U.S. at 334-37).  Specifically, courts consider whether there is a "(1) a highly concentrated market dominated by relatively few sellers; (2) a fungible product; (3) competition that is based primarily on price; and (4) inelasticity of demand because buyers tend to order for their immediate short term needs."  *Id.*  While Plaintiffs allege that the "structure of the luxury hotel industry in the U.S. renders it more likely" that an information exchange will harm competition, Compl. ¶ 13, that conclusion is belied by Plaintiffs' allegations which demonstrate that the industry is not so susceptible.

12

13

### (1)   The Luxury Hotel Industry Is Not "Highly Concentrated"

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Complaint does not allege facts demonstrating that the "luxury hotel industry" is "highly concentrated."  Plaintiffs nowhere identify the actual number of Kayak-denominated[17] four- and five-star hotels in each of the fifteen metropolitan areas at issue, or who owns or manages those hotels.  *Id.* ¶ 137.  Instead, Plaintiffs aggregate shares of the six named Hotel Defendants and their thirty-plus brands and companies, *plus* the four alleged "Co-Conspirator Hotels" and their brands, even though many of the hotels operating under those brands are owned and/or operated by third-parties and franchisees.  *See id.* ¶¶ 2, 25, 128 (grouping "Defendants and their co-conspirators" to aggregate market shares).  Even lumping together those more-than-thirty hotel brands amounts to only half of the Kayak-denominated four- and five-star hotels in some areas. *See* Compl. App'x C (Miami, 50% share; New York, 50% share).  Even Plaintiffs' manipulated "market shares" do not suggest that the luxury hotel industry is "highly concentrated."  *Cf. U.S. Gypsum*, 438 U.S. at 426 (finding that the market for gypsum board was "highly concentrated" where the number of producers ranged from 9 to 15, and the "eight largest companies accounted for some 94% of the national sales").

28

---

[17]    Plaintiffs inexplicably rely on star ratings from the website Kayak to define what constitutes a "luxury" hotel.  Compl. ¶ 165 n.154.

1

**(2)    Luxury Hotel Rooms Are Not "Fungible"**

2    Neither common sense, nor the facts alleged, support a finding that "luxury" hotel rooms

3    are "fungible."  "Fungible" refers to "goods which are identical with others of the same nature,

4    such as grain and oil, or common shares of the same company," *In re Zhejiang Topoint*

5    *Photovoltaic Co.*, 2015 WL 2260647, at *7 (D.N.J. May 12, 2015) (quoting Black's Law

6    Dictionary 675 (6th ed. 1990)), or the laminated "wall-board" in *U.S. Gypsum*, 438 U.S. at 426, or

7    the "substantially identical" corrugated containers in *Container Corp.*, 393 U.S. at 336-37.  But

8    four- and five-star hotels are far from substantially identical, as the Complaint readily

9    acknowledges.[18]  Luxury hotels differ in their locations and proximity to attractions, "such as city

10    centers, beachfronts, or scenic countryside settings," Compl. ¶ 167;[19] they offer different

11    amenities, "such as upscale spas, fine dining restaurants, fitness centers, swimming pools,

12    luxurious bedding, and stylish furnishings," *Id*. ¶ 166; some are full-service "resort properties,"

13    while others are not, *id*. ¶ 119; and they have different "brand reputations" and "loyalty programs,"

14    *id*. ¶¶ 147, 168.  The different quality ratings for four- and five-star hotels illustrates that the hotels

15    are not identical, or even substantially so.  *Id*. ¶ 165 n.154.  The Complaint even concedes that it

16    had to "account[] for hotel characteristics, location, and quality" just among five-star hotels to

17    attempt to compare prices across hotels.  *Id*. ¶¶ 24, 138.  Of the alleged information-sharing cases

18    that have survived a motion to dismiss, "[n]one of the cases involve a situation like that in the

19    present case, where the information sharing agreement occurs in a non-concentrated market

20    involving non-fungible products."  *Five Smiths*, 788 F. Supp. at 1053 n.14 ("In the absence of such

21    market concentration, information exchanges are inherently procompetitive.").

22

23

---

24    [18]    An opinion cited and quoted in the Complaint describes that not even hotels with the same
brand banner are alike.  *See E.E.O.C. v. Omni Hotel Mgmt. Corp.*, 516 F. Supp. 2d 678, 686 (N.D.
Tex. 2007) (finding that "[n]o two Omni hotels are alike; each one has its own distinct challenges,"

25    and "[n]ot all Omni hotels are equal in quality, size, revenue, number of rooms, amenities,
profitability, meeting space, or banquet facilities, and the hotels compete in different markets

26    which vary in terms of leisure/resort or corporate business market, available corporate business,
transient business, hotel space, and competitors").

27    [19]    *See, e.g., Hilton Int'l Co. v. Hilton Hotels Corp.*, 88 F. Supp. 520, 531 (S.D.N.Y. 1995)
("[T]he CONRAD in London is an all-suite property located in an area of the city that does not

28    directly compete with the [Hilton International] hotels in London.  They are in different parts of
the city.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

### (3)   There Is Substantial Non-Price Competition For Luxury Hotel Rooms

The Complaint also acknowledges that luxury hotels compete for clientele with "diverse" needs, Compl. ¶ 170, and identifies multiple non-price qualities through which those hotels attempt to attract guests, including "prestigious brand reputations," *id.* ¶ 168, "loyalty programs," *id.* ¶ 147, furnishings and bedding, *id.* ¶ 166, and amenities, such as golf, spas, parking, restaurants, and more, *id.* ¶¶ 119, 166. An article incorporated by reference into the Complaint discussing five-star hotels summarizes this competition by noting that "the desire for unique and memorable stays is prompting hotels to innovate and offer bespoke services, including personalized concierge assistance and culinary delights." Ex. 4 at 25, MarkWide Research, Five Star Hotel Market: Evaluating Luxury Hospitality (cited at Compl. ¶ 168 n.155). Primary competition based on price is "necessary for an information exchange to violate the rule of reason," but is absent here. *Five Smiths*, 788 F. Supp. at 1053.

### (4)   Luxury Hotel Guests Do Not Exclusively Rent For Immediate, Short-Run Needs

The last factor that Plaintiffs contend makes harm from the information exchange plausible is that the market is supposedly characterized by "inelastic demand," as shown by "buyers plac[ing] orders *only* for immediate, short-run needs." *Container Corp.*, 393 U.S. at 336 (emphasis added); *Five Smiths*, 788 F. Supp. at 1053. While Plaintiffs use similar words—in a conclusory fashion, Compl. ¶ 130—the facts alleged do not support that conclusion.

Plaintiffs allege that Forward STAR reports (which Plaintiffs make much of but do not allege that any Hotel Defendants receive) show "rooms booked for the days, weeks and months ahead," including "occupancy on the books for the next 90 days (weekly report) and 12 months (monthly report)." *Id.* ¶¶ 85, 87. The "segmentation summary" attached to the Complaint also describes hotel guests that could not be considered as purchasing "only for immediate" needs, such as "group tours, domestic and international groups, convention and corporate groups," who typically book months if not years in advance, as well as rooms sold "by contracts including airline crews and permanent guests." Compl. App'x B at "Segmentation Summary"; *see also* Compl. ¶

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

27

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

69 n.47 (describing "contract room revenue" as being "derived from a contract with another entity for a consistent block of rooms for an extended period over 30 days").  And even for so-called "transient" guests that pay a rack rate for a room, common sense and experience suggest that travelers booking four- and five-star rooms do engage in forethought or advance planning about their travel destination and lodgings, and do not simply purchase expensive hotel rooms only for their "immediate, short-run needs." *Id.* ¶ 130; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[W]hether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.").

Plaintiffs thus have not plausibly alleged that the luxury hotel industry has structural features that make an information exchange likely to have anticompetitive effects.

### D.     Plaintiffs Fail To Allege That They Have Suffered Any "Antitrust Injury" As A Result Of The Hotel Defendants' Use Of STR Reports

Finally, Plaintiffs' Complaint should also be dismissed because it fails to plausibly allege that they suffered an antitrust injury.  Antitrust injury is a prerequisite in any federal private right of action pursuant to Section 4 of the Clayton Act.  15 U.S.C. § 15.  To plead an antitrust injury, Plaintiffs must allege that their injury "flows from that which makes defendants' acts unlawful." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  When the injury alleged is "supracompetitive pricing," the "plaintiff must allege that a price increase is traceable to a restraint on trade." *Intel Corp.*, 2022 WL 16756365, at *2.

Plaintiffs have not pled any antitrust injury because they do not allege the higher luxury hotel room prices the Hotel Defendants supposedly charged "were the result of" their use of STR. *Id.* at *2.  Instead, Plaintiffs allege that a "widespread" use of revenue management systems is leading to higher prices. *See* Compl. ¶¶ 141-51.  Specifically, Plaintiffs allege that the Hotel Defendants' "revenue management systems are fed with vast amounts of data," including "historic data that resides in a hotel's property management system," "climate and weather data, competitor pricing, booking patterns on other sources, and the presence of music or sports events in the property area." *Id.* ¶¶ 141-44.  Plaintiffs further allege that this data feeds into revenue

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    management systems, but do not allege that the Hotel Defendants all use the same revenue

2    management system, how STR reports are used by those various revenue management systems, or

3    even how the output of any revenue management system is used to set prices at any given hotel.

4    At best, Plaintiffs allege that STR reports are *one of many inputs* into any hotel's revenue

5    management system, including publicly available data.  *Id.* ¶¶ 137, 150.  But that is insufficient to

6    allege that the purported conspiracy to exchange competitively sensitive information through STR

7    is responsible for the allegedly higher prices that Plaintiffs paid for luxury hotel rooms.  *See, e.g.*,

8    *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 542

9    (1983) (no antitrust standing where theory of harm depends upon "independent factors").

10          At bottom, Plaintiffs allege nothing more than that certain hotels receive STR reports,

11   Compl. ¶¶ 103-15, and then set "higher prices," *id.* ¶¶ 11, 141, 145, without pleading facts showing

12   a causal connection between the two.  By Plaintiffs' own description, this is a case about parties

13   allegedly agreeing to exchange one piece of data (STR reports), that *might* be one of many inputs

14   into disparate revenue management systems that some hotels use to assist with pricing.   The

15   connection between the alleged conspiracy and the alleged injury is far too attenuated.  *See Somers*,

16   729 F.3d at 964 (affirming dismissal and finding no causal antitrust injury where plaintiff failed to

17   plausibly allege the purportedly anticompetitive conduct "affected [] prices"); *Curtin Mar. Corp.*

18   *v. Santa Catalina Island Co.*, 786 F. App'x 675, 677 (9th Cir. 2019) (finding no plausible antitrust

19   injury because plaintiff "would have suffered the same injury" regardless of the alleged conduct);

20   *Top Rank, Inc. v. Haymon*, 2015 WL 9948936, at *5 (C.D. Cal. Oct. 16, 2015) (finding no plausible

21   antitrust injury because plaintiff failed to "allege any facts demonstrating" "how it has been injured

22   by the alleged conduct"); *In re Online DVD Rental Antitrust Litig.*, 2009 WL 4572070, at *7-8

23   (N.D. Cal. Dec. 1, 2009) (holding that "plaintiffs' injury is unduly speculative" because it failed

24   to allege any facts suggesting a "direct causal link" between artificially inflated prices purportedly

25   paid by the plaintiffs and the alleged conspiracy).

## IV.    CONCLUSION

27          For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs'

28   Complaint with prejudice.

DEFENDANTS' JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-JCC

29

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1      *I certify that this memorandum contains 11,210 words, in compliance with Court Order,*

2    *ECF No. 89, and the Local Civil Rules.*

3      s/ Heidi Bradley
       Heidi Bradley (WSBA No. 35759)
4      BRADLEY BERNSTEIN SANDS
       2800 First Avenue, Suite 326
5      Seattle, WA 98121

6      Jarrett Arp (*pro hac vice*)
       Mari Grace (*pro hac vice*)
7      DAVIS POLK & WARDWELL LLP
       901 15th Street, NW
8      Washington, DC 20005

9      Neal Potischman (*pro hac vice*)
       DAVIS POLK & WARDWELL LLP
10     1600 El Camino Real
       Menlo Park, CA 94025
11
       Tina Hwa Joe (*pro hac vice*)
12     DAVIS POLK & WARDWELL LLP
       450 Lexington Avenue
13     New York, NY 10017

14     *Counsel for Defendant Hilton Domestic*
       *Operating Company*
15
       s/ Michael Rosenberger
16     Michael Rosenberger (WSBA No. 17730)
       GORDON TILDEN THOMAS & CORDELL LLP
17     600 University Street, Suite 2915
       Seattle, WA 98101
18
       Lindsay C. Harrison (*pro hac vice*)
19     Douglas E. Litvack (*pro hac vice*)
       JENNER & BLOCK LLP
20     1099 New York Avenue, NW, Suite 900
       Washington, DC  20001-4412
21
       *Counsel for Defendant Hyatt Hotels*
22     *Corporation*

23

24

25     s/ Paul R. Taylor
       Paul R. Taylor (WSBA No. 14851)
26     BYRNES KELLER CROMWELL LLP
       1000 Second Avenue, 38th Floor
27     Seattle, Washington 98104

28

s/ Vanessa Soriano Power
Vanessa Soriano Power (WSBA No. 30777)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101

s/ Lawrence E. Buterman
Lawrence E. Buterman (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020

Sarah M. Ray (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Elyse M. Greenwald (*pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067

David L. Johnson (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20001

*Counsel for Defendants CoStar Group, Inc. and*
*STR, LLC*

s/ Robert Maguire
Robert Maguire (WSBA No. 29909)
DAVIS WRIGHT TREMAINE LLP
920 5th Avenue, Suite 3300
Seattle, WA 98104-1610

Katherine B. Forrest (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, NY 10019

*Counsel for Defendant Loews Hotels Holding*
*Corporation*

s/ Jeffrey B. Coopersmith
Jeffrey B. Coopersmith (WSBA No. 30954)
Steven Fogg (WSBA No. 23528)
CORR CRONIN
1015 Second Avenue, Floor 10
Seattle, WA 98104

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    Jeffrey S. Cashdan (*pro hac vice*)                   Kristen C. Limarzi (*pro hac vice*)
     Emily S. Newton (*pro hac vice*)                      Melanie L. Katsur (*pro hac vice*)
2    Lohr A. Beck (*pro hac vice*)                         Sarah Akhtar (*pro hac vice*)
     Caroline Buyak (*pro hac vice*)                       GIBSON, DUNN & CRUTCHER LLP
3    KING & SPALDING LLP                                   1050 Connecticut Avenue, N.W.
     1180 Peachtree Street, NE, Suite 1600                 Washington, D.C. 20036
4    Atlanta, GA 30309-3521
                                                           *Counsel for Defendant Marriott International,*
5    *Counsel for Defendant Six Continents Hotels,*        *Inc.*
     *Inc.*
6                                                          *s/ Robin Wechkin*
                                                           Robin Wechkin (WSBA No. 24746)
7                                                          SIDLEY AUSTIN LLP
                                                           8426 316th Place SE
8                                                          Issaquah, WA 98027
9                                                          Carrie Mahan (*pro hac vice*)
                                                           Benjamin M. Mundel (*pro hac vice*)
10                                                         S. Nicole Booth (*pro hac vice*)
                                                           SIDLEY AUSTIN LLP
11                                                         1501 K Street, N.W.
                                                           Washington, D.C. 20005
12
                                                           Amy P. Lally (*pro hac vice*)
13                                                         SIDLEY AUSTIN LLP
                                                           1999 Avenue of the Stars, 17th Floor
14                                                         Los Angeles, CA 90067
15                                                         *Counsel for Defendant Accor Management US*
                                                           *Inc.*
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200