THE HONORABLE ROBERT S. LASNIK

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10  JEANETTE PORTILLO, ALICIA COAKLEY,
    FREDDY BARAJAS, HERIBERTO
11  VALIENTE, DAVID CONCEPCION, DANIEL
    KASSL, and DANIEL SMITH, individually, and
12  on behalf of all others similarly situated,

13                          Plaintiffs,

14          v.

15  COSTAR GROUP, INC., a Delaware
    corporation; STR LLC, a Delaware corporation,
16  HILTON DOMESTIC OPERATING
    COMPANY, a Delaware corporation, HYATT
17  CORPORATION, a Delaware corporation, SIX
    CONTINENTS HOTELS INC., a Delaware
18  corporation, LOEWS HOTELS HOLDING
    CORPORATION, a Delaware corporation,
19  MARRIOTT INTERNATIONAL, INC., a
    Delaware corporation, and ACCOR
20  MANAGEMENT US INC., a Delaware
    corporation,

21
                            Defendants.
22

23

Case No. 2:24-cv-00229-RSL

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF JOINT MOTION TO
DISMISS COMPLAINT

NOTE ON MOTION CALENDAR:
August 28, 2024

24

25

26

27

28

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-RSL

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ............................................................................................... 1

II.     ARGUMENT ..................................................................................................... 2

        A.      Plaintiffs Have Not Plausibly Alleged An Agreement Among
                Hotel Defendants ................................................................................... 2

                1.      Plaintiffs Have No Answers To *Kendall's* "Basic"
                        Questions..................................................................................... 2

                2.      STR's Terms Are Not Direct Evidence Of An Agreement ....... 4

                3.      There Is No Indirect Evidence Of A Conspiracy...................... 6

        B.      Plaintiffs Fail To Plausibly Allege Any Anticompetitive Effects ...... 11

                1.      Plaintiffs' Preliminary Economic Analysis Is Not Direct
                        Evidence Of Anticompetitive Effects ..................................... 11

                2.      Plaintiffs Fail To Allege Anticompetitive Effects Through
                        Indirect Evidence .................................................................... 12

        C.      Plaintiffs Fail To Plausibly Allege Antitrust Injury............................ 15

III.    CONCLUSION................................................................................................ 16

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT                                    i
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

5 *Am. Column & Lumber Co. v. United States*,
6     257 U.S. 377 (1921)............................................................................................. 10

*Bay Area Surgical Management LLC v. Aetna Life Insurance Co.*,
7     166 F. Supp. 3d 988 (N.D. Cal. 2015) ..................................................................... 3

8 *United States v. Container Corp. of Am.*,
9     393 U.S. 333 (1969)................................................................................................ 4

*Epic Games, Inc. v. Apple, Inc.*,
10    67 F.4th 946 (9th Cir. 2023) .................................................................................... 5

11 *Epicor Software Corp. v. Alternative Tech. Sols., Inc.*,
12    2013 WL 12130024 (C.D. Cal. Dec. 2, 2013) ........................................................ 14

13 *Flextronics Int'l USA, Inc. v. Panasonic Holdings Corp.*,
14    2023 WL 4677017 (9th Cir. July 21, 2023)............................................................ 10

*Gibson v. Cendyn Grp., LLC*,
15    2024 WL 2060260 (D. Nev. May 8, 2024).......................................................... 4, 8, 9

16 *Gibson v. MGM Resorts, Int'l*,
17    2023 WL 7025996 (D. Nev. Oct. 24, 2023) ............................................................. 3

18 *Honey Bum, LLC v. Fashion Nova, Inc.*,
19    63 F.4th 813 (9th Cir. 2023) .................................................................................... 5

*In re Broiler Chicken Antitrust Litig.*,
20    290 F. Supp. 3d 772 (N.D. Ill. 2017) ...................................................................... 10

21 *In re Citric Acid Litig.*,
22    191 F.3d 1090 (9th Cir. 1999) .............................................................................. 2, 9

23 *In re Dynamic Random Access Memory Indirect Purchaser Antitrust Litig.*,
24    28 F.4th 42 (9th Cir. 2022) ...................................................................................... 2

25 *In re German Auto. Mfrs. Antitrust Litig.*,
    392 F. Supp. 3d 1059 (N.D. Cal. 2019) .................................................................. 11

26 *In re Local TV Adver. Antitrust Litig.*,
27    2022 WL 3716202 (N.D. Ill. Aug. 29, 2022) ..................................................... 4, 7, 14

28 *In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ..................................................................... 2, 3, 9, 11

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT                                    ii
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

*In re RealPage, Inc. Rental Software Antitrust Litig. (No. II)*,
    2023 WL 9004806 (M.D. Tenn. Dec. 28, 2023)........................................................ 9, 10, 12

*Interstate Cir. v. United States*,
    306 U.S. 208 (1939)................................................................................................ 7, 8

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ..................................................................................... 2

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
    232 F.3d 979 (9th Cir. 2000) ............................................................................... 15, 16

*Maple Flooring Mfrs.' Ass'n v. United States*,
    268 U.S. 563 (1925)................................................................................................ 2, 9

*Meyer v. Kalanick*,
    174 F. Supp. 3d 817 (S.D.N.Y. 2016)..................................................................... 7, 8

*Moehrl v. National Ass'n of Realtors*,
    492 F. Supp. 3d 768 (N.D. Ill. 2020) ......................................................................... 5

*Olean Wholesale Grocery Coop., Inc. v. Agri Stats, Inc.*,
    2020 WL 6134982 (N.D. Ill. Oct. 19, 2020).............................................................. 6

*Petroleum Products Antitrust Litig.*,
    906 F.2d 432 (9th Cir. 1990) .................................................................................. 4, 5

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015)................................................................................... 7, 8

*United States v. U.S. Gypsum Co.*,
    340 U.S. 76 (1950)...................................................................................................... 5

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................................ 2

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-RSL

iii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

## I.     INTRODUCTION

Plaintiffs' Opposition confirms that Plaintiffs have failed to plead a plausible Section 1 claim for at least three reasons.

***First***, the Opposition shows that Plaintiffs have not alleged any agreement ***among*** the Hotel Defendants.  Plaintiffs argue that STR's terms and conditions are an "express, written," "give-to-get" agreement to exchange "reciprocal" "competitively sensitive information," Opp. at 1, 9, 11, 12,[1] but the actual substance of STR's terms conclusively show otherwise.  STR's terms state that each participating hotel is to provide certain aggregated, non-price data to STR in order to receive STR's aggregated and anonymized benchmarking reports, ***not*** in exchange for any individual hotel's proprietary data.  To infer a plausible conspiracy simply because the Hotel Defendants receive STR's benchmarking reports, as Plaintiffs essentially ask, would transform a multitude of benchmarking services across various industries into walking antitrust conspiracies.

***Second***, Plaintiffs fail to provide any authority holding that aggregated, anonymized, non-pricing data is competitively sensitive.  Plaintiffs concede that STR's reports do not contain any pricing information.  Indeed, despite the suggestion that STR provides "pricing information" or "room prices," Plaintiffs ultimately recognize that they have merely alleged that participating hotels provide STR with "hotel occupancy, rooms sold, and room revenue" data, *id*. at 20, none of which is pricing information.  Plaintiffs also admit that the only prospective information that STR collects is "forward-looking occupancy data, including rooms available and rooms booked," *id.* at 26—not "forward looking price[s]."  *Id*. at 5.  Unable to plead an exchange of competitively sensitive information among the Hotel Defendants, Plaintiffs cannot plausibly allege a conspiracy or any anticompetitive effects.

***Third***, Plaintiffs abandon any argument that their claim relates to "price fixing."  The Complaint recklessly labels STR's benchmarking reports "price fixing in its modern form," Compl. ¶ 1, but the Opposition does not attempt to defend that hyperbole.  This case decidedly does ***not*** involve "price fixing," "pricing algorithms," or even the sharing of pricing information.

---

[1] "Opp." refers to Pls.' Opposition to Defs.' Joint Motion to Dismiss Complaint (Dkt. 103).  "Mot." refers to Defs.' Joint Motion to Dismiss Complaint (Dkt. 91).

1    Instead, this case is about the use of benchmarking reports—a practice that is not *per se* illegal.

2    Indeed, Plaintiffs ignore binding precedent showing that aggregated and anonymized

3    benchmarking reports, like STR's, are procompetitive, do not raise antitrust concerns, and are

4    insufficient to plausibly allege an unlawful conspiracy.  *See* Mot. at 16 (citing *Maple Flooring*

5    *Mfrs.' Ass'n v. United States*, 268 U.S. 563, 582-83 (1925); *In re Citric Acid Litig.*, 191 F.3d 1090,

6    1098 (9th Cir. 1999)).  That Plaintiffs have **no response** to this controlling authority confirms that

7    their Complaint must be dismissed.

8    **II.    ARGUMENT**

9        **A.    Plaintiffs Have Not Plausibly Alleged An Agreement Among Hotel Defendants**

10       Plaintiffs do not dispute that they must adequately allege an agreement **among Hotel**

11   **Defendants** in order to survive dismissal.  *See* Opp. at 8-11.  Their Opposition, however, confirms

12   that Plaintiffs have failed to do so, whether through direct or indirect evidence.

13       **1.    Plaintiffs Have No Answers To *Kendall's* "Basic" Questions**

14       Defendants explained that Plaintiffs failed to "answer the basic questions," *i.e.*, "who, did

15   what, to whom (or with whom), where, and when," as articulated in *Kendall v. Visa U.S.A., Inc.*,

16   518 F.3d 1042, 1048 (9th Cir. 2008), to plausibly allege an antitrust conspiracy.  Mot. at 10-13.

17   Plaintiffs respond that they need not satisfy Federal Rule of Civil Procedure 9(b)'s heightened

18   pleading standard, Opp. at 3, 18-19, but Defendants never claimed *Kendall* imposed such a

19   standard.  Instead, *Kendall* reflects the "basic questions" that plaintiffs should address to plausibly

20   allege an antitrust conspiracy.  518 F.3d at 1048.  And, the Ninth Circuit regularly applies *Kendall*

21   to affirm the dismissal of conclusory antitrust conspiracy claims like Plaintiffs'.  *See In re Musical*

22   *Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015) ( "plaintiffs must

23   plead evidentiary facts: 'who, did what, to whom (or with whom), where and when'") ("*Musical*

24   *Instruments*"); *In re Dynamic Random Access Memory Indirect Purchaser Antitrust Litig.*, 28 F.4th

25   42, 46 (9th Cir. 2022).  Plaintiffs' failure to answer any of *Kendall's* questions confirms that their

26   allegations are conclusory and insufficient to plausibly plead a conspiracy.

27       ***Who agreed with whom?***  Plaintiffs' allegation that "Hotel Operators" entered into the

28   alleged conspiracy is exactly the type of vague allegation that courts have found insufficient.  *See*

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT                                    2
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1   *Gibson v. MGM Resorts, Int'l*, 2023 WL 7025996, at *4 (D. Nev. Oct. 24, 2023) ("Hotel

2   Operators" inadequate); *Bay Area Surgical Management LLC v. Aetna Life Insurance Co.*, 166 F.

3   Supp. 3d 988, 995 (N.D. Cal. 2015) ("Defendant Insurers" too barebones); *see also* Mot. at 10-

4   11.[2]   And, Plaintiffs' argument that they provided "the names of several of the[] [Hotel

5   Defendants'] high-level executives" who supposedly spoke publicly about their "use of data

6   provided by STR" at a conference, Opp. at 20, is also irrelevant because none of those executives

7   is alleged to have entered into any agreement or divulged any competitively sensitive information.

8   *Cf. Musical Instruments*, 798 F.3d at 1196 ("mere participation in a trade-organization meetings

9   where information is exchanged and strategies are advocated does not suggest an illegal

10  agreement").

11        ***To do what?***   Plaintiffs argue that the alleged conspiracy was entered into through, and is

12  reflected in, STR's terms and conditions for its benchmarking services.  Opp. at 20.  But the

13  fundamental problem for Plaintiffs is that they misrepresent those terms.  In reality, STR's terms

14  state that a participating hotel will provide STR with its "Hotel Data"—*i.e.*, certain revenue and

15  occupancy (but not price) data—and that STR will, in turn, provide that participating hotel with

16  "Hotel Benchmarking Deliverables," *i.e.*, reports that compare that hotel's own data "against

17  comparable and ***aggregated data*** provided by other Hotel Benchmarking Participants . . . and/or

18  other comparable market data."  Decl. of Steve W. Berman (Dkt. 104) ("Berman Decl."), Ex. A at

19  3 (emphasis added); *see also* Compl. ¶¶ 3, 99.  STR's terms also make express that "no Hotel

20  Benchmarking Deliverable shall directly or indirectly identify [the hotel] as the owner/provider of

21  any specific data contained within the Hotel Benchmarking Deliverable."  Berman Decl. Ex. A at

22  5-6.  STR's terms thus do not suggest that what any hotel receives is "reciprocal" "competitively

23  sensitive" information from any other hotel, and no hotel receives any other hotel's "Hotel Data."

24  Instead, STR's terms confirm that participating hotels only receive benchmarking reports that

25  aggregate and average anonymized data across the market or subset of other hotels.  *See id.* at 3.

26

27  _____

[2] Plaintiffs attempt to distinguish *Gibson* and *Bay Area Surgical* on the basis that those cases did

28  not involve any "give-to-get information exchange agreement," Opp. at 20 n.86, but as discussed
    above, Plaintiffs have not plausibly alleged any agreement to exchange competitively sensitive
    information, which renders the supposed "give-to-get" irrelevant.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1   STR's terms thus undermine rather than support Plaintiffs' argument regarding the existence of a

2   purported conspiracy.  *See In re Local TV Adver. Antitrust Litig.*, 2022 WL 3716202, at *6-8 (N.D.

3   Ill. Aug. 29, 2022) ("*Local TV Ads*") (refusing to infer unlawful conspiracy from benchmarking

4   reports that included aggregated and anonymous data).

5   　　　**When?**  Plaintiffs also have no answer to "when" the alleged conspiracy was formed other

6   than insisting "each Operator has [allegedly] been participating" in the conspiracy "since at least

7   February 2020."  Opp. at 21.  But that allegation is insufficient.  *See Gibson v. Cendyn Grp., LLC*,

8   2024 WL 2060260, at *3-4 (D. Nev. May 8, 2024) (dismissing, as implausible, allegations that

9   hotels entered into agreement when they began using software "at different times over an

10  approximately 10-year period").

11  　　　Plaintiffs thus have not plausibly alleged any agreement, including because they have not

12  answered *Kendall*'s "basic" questions.

13  　　　　　　**2.　　STR's Terms Are Not Direct Evidence Of An Agreement**

14  　　　Plaintiffs argue that STR's terms and conditions are "direct" evidence of Hotel Defendants'

15  agreement to "provide[] [their] sensitive pricing and supply information ***in exchange for*** receiving

16  that same information from [] competitors."  Opp. at 16 (emphasis in original).  But, as explained

17  above, that is not what STR's terms state, and they cannot plausibly be read to suggest that what

18  any hotel receives in return is competitively sensitive information from its competitors.  *See supra*

19  at 3; *see also* Berman Decl. Ex. A at 3.  STR's terms are not "smoking gun" evidence of an

20  agreement ***among*** Hotel Defendants to exchange competitively sensitive information through

21  STR.

22  　　　Neither *United States v. Container Corp. of America* nor *Petroleum Products Antitrust*

23  *Litigation*, which Plaintiffs rely on, suggest that STR's terms constitute "direct" evidence of a

24  conspiracy.  *See* Opp. at 7, n.17.  In *United States v. Container Corp. of America*, competing

25  container suppliers directly "exchange[d] information concerning specific sales to identified

26  customers" and "the most recent price charged or quoted . . . ."  393 U.S. 333, 334-35 (1969).

27  And, in *Petroleum Products Antitrust Litigation*, there were direct exchanges of "price

28  information" between competing oil companies and defendants admitted that their pricing

4

1    announcements served "no purpose" other than to ensure "competitors could quickly learn of, and

2    respond to" the price changes.  906 F.2d 432, 446, 453 (9th Cir. 1990).  In neither case did the

3    court infer an express horizontal agreement among "spokes" based solely on bilateral agreements

4    between the "hub" and each "spoke."

5           Plaintiffs' only other supposed "direct" evidence are their allegations that hotels "use[]

6    STR reports in their operations" and that the Hotel Defendants' employees "tout using STR

7    reports" as part of their jobs.  Opp. at 10.  But receipt or use of STR's reports is not direct evidence

8    of an illicit agreement among the Hotel Defendants to exchange competitively sensitive

9    information.  *See Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir. 2023)

10   (rejecting supposed "direct" evidence that did not establish a conspiracy "without . . . any

11   inferences").  Hotel Defendants' mere use of STR establishes, at most, a series of unilateral

12   agreements between each individual Hotel Defendant and STR, not an agreement between Hotel

13   Defendants.

14          Plaintiffs' allegations also bear no resemblance to the alleged conspiracies at issue in the

15   *United States v. Gypsum*, *Moehrl v. National Association of Realtors*, or *Epic Games, Inc. v. Apple,*

16   *Inc.* cases upon which Plaintiffs rely.  *See* Opp. at 8-9.  In *United States v. Gypsum*, a patent

17   licensor entered into patent licensing agreements with licensees that, on their face, "fix[ed]

18   minimum prices."  340 U.S. 76, 83 (1950).  The allegedly illegal agreement was between the patent

19   licensor and the licensees, not among the licensees.  *See id.*  In *Moehrl v. National Association of*

20   *Realtors*, the National Association of Realtors ("NAR") issued express buyer-broker commission

21   rules that local realtor associations and realtor companies enforced.  *See* 492 F. Supp. 3d 768, 774

22   (N.D. Ill. 2020).  The allegedly illegal agreement was between NAR and realtor associations and

23   companies, not among the realtor associations and companies.  *Id.* at 777-78.  And, in *Epic Games,*

24   *Inc. v. Apple*, the Ninth Circuit held only that the district court erred when it held that "a non-

25   negotiated contract of adhesion" like Apple's Developer Program Licensing Agreement, fell

26   outside the scope of Section 1.  67 F.4th 946, 981-82 (9th Cir. 2023).  Those cases stand for the

27   unremarkable proposition that evidence of an express agreement can satisfy the agreement prong

28   of Section 1.  That principle does not cure Plaintiffs' failure to plead **any** agreement among the

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT                                        5
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1    Hotel Defendants.

2                   **3.      There Is No Indirect Evidence Of A Conspiracy**

3                          **a.      Plaintiffs Do Not Allege A Hub-And-Spoke Conspiracy**

4            Plaintiffs also argue that they have sufficiently pled a hub-and-spoke conspiracy because

5    STR supposedly advertises that its benchmarking services "exist[] to give a participating hotel

6    access to its competitors' price and occupancy data" and that the Hotel Defendants "accept[] STR's

7    invitation by subscribing to STR's services," and know "of each other's participation in STR."

8    Opp. at 12.  Embedded in this argument is an unsupported inference that "benchmarking" means

9    the illicit exchange of competitively sensitive information.  *See id.*; *see also* Compl. ¶ 76.  Stripped

10   of innuendo and mischaracterization, Plaintiffs only allege that participating hotels provide STR

11   with certain revenue and occupancy data in order to receive an aggregated, averaged, and

12   anonymized benchmarking report that allows hotels to compare their performance to that of a set

13   of competitors or the wider market.  *See* Mot. at 4-6; *see also* Compl. ¶¶ 69, 75, 134.  That does

14   not plausibly imply a conspiracy.  Nor does the fact that Hotel Defendants allegedly know which

15   other hotels receive STR's reports.  *See* Mot. at 16-17.

16           Plaintiffs rely on *Olean* to argue that they have sufficiently pled a hub-and-spoke

17   conspiracy based on the Hotel Defendants' receipt of STR's reports, *see* Opp. at 12-13, but the

18   underlying facts in *Olean* are not analogous.  In *Olean*, the plaintiffs alleged that turkey "prices

19   increased dramatically" following turkey producers' exchange of detailed and company-specific

20   information regarding their "profits, prices, costs, and production levels" through an industry

21   analyst, Agri Stats.  *Olean Wholesale Grocery Coop., Inc. v. Agri Stats, Inc.*, 2020 WL 6134982,

22   at *1-3 (N.D. Ill. Oct. 19, 2020).  Judge Kendall in the Northern District of Illinois held that the

23   plaintiffs had sufficiently alleged a conspiracy based on turkey producers' contribution of data to,

24   and receipt of reports from Agri Stats, because the turkey producers knew which other producers

25   were providing their competitively sensitive data ***and*** "could decipher the data pertaining to each

26   producer" in Agri Stats' reports, which were only superficially anonymized.  *Id.* at *6.  Here,

27   however, Plaintiffs do not and cannot allege that any individual hotel— much less all of them—

28   deciphered any other individual hotel's specific data.  That failure is fatal to Plaintiffs' claim.

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT                                       6
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1     Rather, the circumstances here are analogous to a subsequent case before Judge Kendall—

2   *Local TV Ads*—in which the plaintiffs alleged that the defendant, Sharebuilders, had facilitated the

3   exchange of competitively sensitive market information among local TV stations. 2022 WL

4   3716202, at *2.  The plaintiffs attempted to allege a hub-and-spoke conspiracy predicated on the

5   fact that Sharebuilders provided the TV station defendants with benchmarking reports concerning

6   their competitors' data, including pricing recommendations and "weekly bottom" prices.  *Id.* at

7   *2-3.  Judge Kendall explained that "to plausibly infer that a defendant *facilitated* a conspiracy,

8   plaintiffs must allege facts showing that the conduit's circulation of information enabled co-

9   conspirators to tacitly communicate with one another," and there must be "concrete allegations

10  that the conduit-defendant compromised the ostensible anonymity of competitively sensitive

11  information . . . ."  *Id.* at *6 (internal citation omitted).  In dismissing the plaintiffs' claims against

12  Sharebuilders, Judge Kendall distinguished *Olean*, holding that the information provided in

13  Sharebuilders' reports "lack[ed] sufficient granularity" and, because it was "aggregate[d]" and

14  "anonymous," did not allow the broadcaster defendants to "monitor specific competitors' activity"

15  or "tacitly communicate," like the Agri Stats reports in *Olean*.  *Id.*

16     As in *Local TV Ads*—a case Defendants cited in their Motion and Plaintiffs ignore—the

17  information that Plaintiffs allege STR disseminates in its reports is "aggregated" and

18  "anonymized."  Compl. ¶ 134; *see also* Opp. at 5 ("STR anonymizes data in its reports").  And,

19  while Plaintiffs speculate that "based on a strategic selection of custom cuts, some hotels ***could***

20  deanonymize" STR's data by "partner[ing] with another hotel," Compl. ¶ 22 (emphasis added),

21  the Complaint does not allege that any hotels have ever deanonymized STR's data, or even

22  attempted to do so.[3]  As in *Local TV Ads*, and unlike in *Olean*, there are no plausible or "concrete"

23  allegations that the Hotel Defendants "monitor" specific competitor's activities or "tacitly

24  communicate" with one another through STR's reports.

25     Plaintiffs also rely on *Interstate Circuit Inc. v. United States*, *United States v. Apple, Inc.*,

26  and *Meyer v. Kalanick* to support their argument that they have plausibly pled a conspiracy, Opp.

27

28  [3] Indeed, Plaintiffs' allegations recognize that an individual hotel cannot deanonymize data in STR's reports, but instead, must engage in a separate, unalleged conspiracy to do so.  *See* Compl. ¶ 22.

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT                                    7
Case No. 2:24-cv-00229-RSL

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1  at 11-13, but those cases are inapposite too, not least because they are price-fixing cases where the

2  "hub" (*i.e.*, Interstate, Apple, and Uber) had demanded that the "spokes" (*i.e.*, movie distributors,

3  book publishers, and drivers) charge a certain price or adopt a pricing policy.  The courts in each

4  of those cases inferred a hub-and-spoke conspiracy because each spoke knew to whom the hub

5  had made the pricing demand, and without uniform action by the spokes, there was a risk of

6  substantial loss of business or goodwill.  *See Interstate Cir. v. United States*, 306 U.S. 208, 222

7  (1939) (inferring conspiracy because distributors accepted Interstate's terms and were aware that

8  "without substantially unanimous action . . . there was a risk of a substantial loss of . . . business

9  and good will"); *United States v. Apple, Inc.*, 791 F.3d 290, 314-19 (2d Cir. 2015) (sufficient

10 allegations of conspiracy because Apple "assure[d] [the publishers] that they weren't going to be

11 alone" and would not face "retribution" if they adopted Apple's pricing model); *Meyer v. Kalanick*,

12 174 F. Supp. 3d 817, 822–24 (S.D.N.Y. 2016) (sufficient allegations of conspiracy because

13 "[w]ithout the assurance that all drivers will charge the price set by Uber . . . adopting Uber's

14 pricing algorithm would often not be in an individual driver's best interest . . . [and] result in lost

15 business opportunities").  There are no similar allegations here.  Plaintiffs do not allege that STR

16 makes any pricing recommendations or is involved with hotel room pricing at all, nor do they

17 allege that any hotel risks "substantial loss" or "retribution" of any kind if it does not participate

18 in STR's benchmarking services.  None of Plaintiffs' cases suggest that a conspiracy can be

19 inferred on the facts Plaintiffs allege.

20           **b.    Plaintiffs Do Not Allege Parallel Conduct**

21           Plaintiffs contend that they have sufficiently alleged parallel conduct because all of the

22 Hotel Defendants provide data to STR in order to receive a benchmarking report, and because their

23 "preliminary economic analysis" supposedly shows "parallelism" in Defendants' pricing.  *See*

24 Opp. at 13-14.  Plaintiffs are wrong on both counts.

25           ***First***, Plaintiffs' argument for parallelism is, at bottom, that all of the Hotel Defendants

26 have, over the course of at least the last four years, been STR customers.  *Id*.  But that is not

27 enough.  Indeed, the *Gibson* court rejected the same arguments Plaintiffs make here, as well as

28 their backup argument that annual licensing renewals somehow constitute parallel conduct.  *See*

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT                                    8
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1   *Gibson,* 2024 WL 2060260, at *3-4 (rejecting plaintiffs' argument of "parallel use" of defendant's

2   software, and finding that hotels' licensing decisions spread out over "approximately 10-year

3   period" did "'not raise the specter of collusion'"); *Musical Instruments,* 798 F.3d at 1195-96 (slow

4   adoption of similar policies over several years "does not raise the specter of collusion").[4]

5   **Second**, parallel conduct cannot be inferred from Plaintiffs' "preliminary economic

6   analysis." Plaintiffs claim that their analysis shows "highly correlated parallel pricing movement."

7   Opp. at 14. But Plaintiffs make no effort to respond to the multitude of flaws with their "analyses"

8   that Defendants identified. *See* Mot. at 14-15, 19-21; *see also infra* at 12. The Court need not

9   credit "charts and analysis," like Plaintiffs', "that are as consistent with parallel, market-following

10   behavior," nor is it "bound to accept unwarranted inferences." *RealPage,* 2023 WL 9004806, at

11   *14 (rejecting allegations of parallel pricing based on preliminary economic analysis).

12                    **c.      Plaintiffs Do Not Allege Any Plus Factors**

13           Plaintiffs also fail to allege any "plus factors" from which an agreement among the Hotel

14   Defendants could plausibly be inferred.

15           ***Action against self-interest***. Plaintiffs argue that the Hotel Defendants acted against their

16   self-interest by exchanging competitively sensitive information through STR, and that there would

17   be no reason for the Hotel Defendants to provide their information to STR absent a "give-to-get"

18   agreement. Opp. at 15-16. But Plaintiffs' argument rests on the falsehood that STR's reports

19   provide the Hotel Defendants with their competitors' competitively sensitive information, which

20   is not what the Complaint alleges or what STR's terms provide. *See supra* at 1, 3-4.

21           Plaintiffs have **no response** to the cases that Defendants cite confirming that the Supreme

22   Court and the Ninth Circuit have recognized the legitimate and pro-competitive motivation of

23   businesses to receive market-level benchmarking data. *See* Mot. at 16 (citing *Maple Flooring*

24   *Mfrs.' Ass'n,* 268 U.S. at 582-83; *In re Citric Acid Litig.,* 191 F.3d at 1098). Instead, Plaintiffs

25

---

26   [4]  Plaintiffs' reliance on *In re RealPage, Inc. Rental Software Antitrust Litig. (No. II),* 2023 WL
     9004806 (M.D. Tenn. Dec. 28, 2023) ("*RealPage*"), is of no help either. There, the court found
27   that the plaintiffs had alleged parallel conduct because the defendants' pricing strategies had all
     changed when they started using RealPage's software. *See id.* at *12-13. Plaintiffs have alleged
28   no comparable change in the Hotel Defendants' behavior once they became STR customers.

cite inapposite cases.  *See* Opp. at 15.  Both *American Column & Lumber Co. v. United States* and *Flextronics International USA v. Panasonic Holdings Corp.* involved direct exchanges of proprietary data between competitors.  *See Am. Column & Lumber Co. v. United States*, 257 U.S. 377, 410 (1921) (competitors directly exchanged "daily, weekly, and monthly reports of the minutest details"); *Flextronics Int'l USA, Inc. v. Panasonic Holdings Corp.*, 2023 WL 4677017, at *3 (9th Cir. July 21, 2023) (competitors directly exchanged "firm-specific, forward-looking, and confidential information" in "private meetings").  *RealPage* is even further removed from the facts of this case because it involved allegations of competing multifamily real estate companies providing their nonpublic pricing and output data to a common software provider in order to receive pricing recommendations that relied on competitors' proprietary data.  2023 WL 9004806, at *15-16, 21-22.

  ***Purported efforts to monitor compliance***.  Plaintiffs argue that STR is somehow "monitoring" hotels' compliance by ensuring that hotels provide "accurate" and "timely" data, and by telling hotels whether they are getting their "'fair share' of price."  Opp. at 17.  But Plaintiffs' Complaint does not allege, and the Opposition does not explain, how "accurate" and "timely" data submissions that are processed into aggregated and anonymized benchmarking reports could allow any Hotel Defendant to "monitor compliance," "detect 'cheating,'" or otherwise impose "disciplinary measures."  *Id.*

  In addition, this case is nothing like the *In re Broiler Chicken Antitrust Litigation* case.  *See id.* (citing 290 F. Supp. 3d 772, 788 (N.D. Ill. 2017) ("*Broilers*")).  As in *Olean*, *Broilers* involved plausible allegations that Agri Stats' reports breached anonymity and provided proprietary production information that chicken producers allegedly admitted using to coordinate their own production levels.  *Id.* at 781, 800.  The *Broilers* court found that the plaintiffs had alleged Agri Stats' reports could be used to "communicat[e]" and "monitor" compliance because they were "so detailed that a reasonably informed producer [could] discern the other producers' identities, and it [was] common knowledge among producers that this [was] possible."  *Id.* at 781, 800.  STR's reports, in comparison, only provide aggregated and anonymous data, which does not plausibly allow Hotel Defendants to communicate or monitor each other's pricing decisions.  *See* Mot. at 6;

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-RSL
10
LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1 | *see supra* at 3-4, 7.

2 |     ***Market structure***.  Plaintiffs' allegations of market concentration, significant barriers to

3 | entry, that luxury hotel rooms are fungible, and that demand for luxury hotel rooms is inelastic are

4 | conclusory and contradicted by Plaintiffs' other allegations.  *See* Opp. at 24-26; Mot. at 25-28.

5 | Regardless, allegations regarding the structure of the "luxury hotel market" are insufficient to

6 | allow the Court to infer collusion without more.  *See, e.g.*, *Musical Instruments*, 798 F.3d at 1189

7 | (market structure allegations are "no more consistent with an illegal agreement than with rational

8 | and competitive business strategies").

9 |     ***Motive and opportunities to conspire***.  Plaintiffs contend that STR's Hotel Data

10 | Conference serves as a "platform for STR to educate its audience about how to use data to drive

11 | up hotel room prices" and that the Hotel Defendants and their alleged co-conspirators attend the

12 | conference and "shar[e] their views on hotel pricing."  Opp. at 17-18.  But, at most, all Plaintiffs

13 | have actually alleged is that speakers at STR's conference discuss industry trends and general

14 | management strategies.  Compl. ¶¶ 18-19, 119-21.  There are no allegations that Defendants have

15 | shared or discussed any competitively sensitive information at STR's conference.  *See In re*

16 | *German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1071-72 (N.D. Cal. 2019) (holding

17 | insufficient allegations that vaguely asserted defendants participated in industry "working groups

18 | and trade associations," but "almost never identif[ied] what was [allegedly] agreed to in these

19 | meetings").

20 |     Whether considered collectively or individually, Plaintiffs have failed to allege any plus

21 | factors that could push any parallel conduct—of which there is none—over the line to the realm

22 | of a plausible conspiracy.

23 |     **B.**    **Plaintiffs Fail To Plausibly Allege Any Anticompetitive Effects**

24 |     Plaintiffs' claim fails for the independent reason that they do not adequately allege the

25 | purported conspiracy had any anticompetitive effects.

26 |         **1.**    **Plaintiffs' Preliminary Economic Analysis Is Not Direct Evidence Of**

27 |         **Anticompetitive Effects**

28 |     Plaintiffs' "preliminary economic analysis" is meaningless because Plaintiffs obscure the

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT          11
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

data by using future (not ***actual***) hotel prices, aggregated across "15 Major US Cities" (none identified as alleged submarkets), for four months in 2024, and do not distinguish prices from hotels that use STR's reports versus those that do not. *See* Mot. at 19-21. Plaintiffs' Opposition does not address ***any*** of these deficiencies. *See* Opp. at 30-32. Instead, Plaintiffs argue they are entitled to a free pass prior to discovery, and that the Court must accept their characterization of the economic analysis they have presented. *See id.* at 31-32. But that is wrong, and the Court need not "accept . . . unwarranted inferences" when considering Plaintiffs' supposed economic analysis. *RealPage*, 2023 WL 9004806, at *14; *see also id.* at *33-34 (rejecting similar economic analysis that relied on aggregate pricing data from only four defendants in four submarkets for a single month).

### 2. Plaintiffs Fail To Allege Anticompetitive Effects Through Indirect Evidence

Plaintiffs instead fall back on their allegations that the nature of the information exchanged and the "structure" of the "luxury hotel" industry supports an inference of anticompetitive effects. Opp. at 24-30. Plaintiffs' allegations on both issues are deficient.

### a. The Data In STR's Reports Is Not Likely To Result In Anticompetitive Effects

Plaintiffs' Opposition relies on the false assertion that the Hotel Defendants allegedly provide to STR, and STR allegedly reports back to the Hotel Defendants, "current and forward-looking price information." Opp. at 5. But, as Plaintiffs concede near the end of their Opposition, that is not what they actually alleged. *See id.* at 26-28. Plaintiffs have only alleged that participating hotels provide STR with data regarding their rooms available, rooms booked, and total room revenue—none of which is pricing information. *See id.* at 26 (citing Compl. ¶¶ 83-89); *see also* Berman Decl. Ex. A at 3-4. In return, participating hotels allegedly receive reports that compare their performance against aggregated, averaged, and anonymized data from at least three other companies, if not more. *See* Berman Decl. Ex. A at 3, 5-6; Compl. App'x A at 91; Mot. at 4-7.

Recognizing this reality, Plaintiffs argue that "average daily rate" ("ADR") is "pricing

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-RSL

12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1   information," and that knowing a competitor's ADR enables a hotel "to see how much more they

2   could charge compared to competitors."  Opp. at 27.  That is nonsensical.  ADR is a backward-

3   looking revenue figure that is calculated by dividing a given hotel's total room revenue for a period

4   by the rooms sold during the same period, which results in an unweighted average across various

5   room types for that hotel.  Compl. ¶ 73.  ADR does not reflect any rate that any hotel actually

6   charged for a room (or a "realized price," Opp. at 27), nor does it reflect any rate that a hotel might

7   charge in the future.  ADR is simply one measure of a hotel's performance.  Moreover, STR's

8   reports do not provide hotels with any specific hotel's ADR.  Instead, at their most granular level,

9   STR's reports provide anonymized ADR data aggregated across at least three (if not more) hotels.

10   *See, e.g.*, Compl. App'x A at 91.  Plaintiffs do not explain how receiving historical ADR data that

11   has been averaged and aggregated would allow a hotel to determine that it could charge more for

12   luxury hotel rooms.

13        Plaintiffs also suggest that STR's Revenue Per Available Room ("RevPAR") Positioning

14   Matrix Report "reveals competitors' pricing information," but that is at odds with Plaintiffs' actual

15   allegations.  Opp. at 27-28 (citing Compl. ¶¶ 93-94).  According to the Complaint, the RevPAR

16   Positioning Matrix Report consists of four quadrants, with an ADR Index on the vertical axis and

17   an Occupancy Index on the horizontal axis, and anonymized dots indicating where members of a

18   hotel's competitive set fall on the matrix.  Compl. ¶ 94.  The figure in the Complaint plainly shows

19   no hotel's "pricing information," but instead provides a visual representation of the relative ADR

20   and occupancy rate performance of properties in a comp set, without identifying the names of any

21   hotel or the scales of the graph.  *Id*. ¶ 94, n.86.

22        Plaintiffs further argue that STR's data is not sufficiently aggregated because it is

23   supposedly from "small subsets of competitors" and because hotels can "deanonymize STR data

24   and link it to particular competitors . . . ."  Opp. at 29.  But again, that is not what the Complaint

25   alleges.  Plaintiffs have only alleged that if two hotels are "partner[ing]" and make a "strategic

26   selection of custom cuts," it might theoretically be possible for them to deanonymize STR's data.

27   Compl. ¶ 22.  Plaintiffs have not alleged that any Hotel Defendants have "partnered" with each

28   other or successfully deanonymized any hotel's data.  Plaintiffs thus have failed to plausibly allege

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT                                                     13
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1  STR's reports include the type of competitively sensitive information that courts have found likely

2  to cause anticompetitive effects.  *See Local TV Ads,* 2022 WL 3716202, at *3-5 (dismissing

3  information-sharing claim where reports did not identify "particular parties, transactions, and

4  prices").

**b.   Plaintiffs Have Not Plausibly Alleged That The
Structure Of The "Luxury" Hotel Industry Makes It
Conducive To Anticompetitive Effects**

7       Plaintiffs have also not plausibly alleged that the "luxury hotel industry" is highly

8  concentrated, that luxury hotel rooms are "fungible," or that demand is "inelastic," such that

9  anticompetitive effects can be inferred from the structure of the market.  *See* Opp. at 24-26.

10      ***Market concentration***.   Plaintiffs argue that the "luxury hotel industry" is highly

11  concentrated because, during their proposed "class period," the Hotel Defendants and their alleged

12  co-conspirators supposedly controlled "an average 70% share" of that industry.  Opp. at 24 (citing

13  Compl. ¶¶ 25, 192).  Plaintiffs say that they allege the Hotel Defendants "control" their brands and

14  franchisees, Opp. at 20, but the Complaint nowhere alleges the Hotel Defendants control the

15  pricing or operations of all of the hotels operating under their brands and franchises.  Nor do

16  Plaintiffs attempt to address Defendants' argument that they have improperly lumped all

17  Defendants' and their Co-Conspirators' market shares across all U.S. markets, and have not

18  demonstrated that any one of the 15 geographic markets at issue in this litigation is actually "highly

19  concentrated."  Mot. at 25; *see Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, 2013 WL

20  12130024, at *2 (C.D. Cal. Dec. 2, 2013) (finding plaintiffs failed to plausibly allege defendant

21  controlled third parties such that their shares could be aggregated).[5]

22      ***Fungibility***.  Plaintiffs argue that luxury hotel rooms are "fungible enough" so that Hotel

23  Defendants "could have used the exchanged information to compare their positions for

24  coordination purposes," Opp. at 24-25, but Plaintiffs do not explain how that is so.  STR's reports

25  do not provide any information regarding specific luxury hotel ***rooms***; they provide aggregated

26  and anonymized performance data across luxury ***hotels***.  *See supra* at 3-4.  Moreover, Plaintiffs'

27

28

---

[5]  While Defendants did not challenge Plaintiffs' market allegations in their motion to dismiss,
Defendants do not "concede" that Plaintiffs have adequately pled any relevant market.  *See* Opp.
at 4, 23.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

labeling of "luxury" hotel rooms as "fungible enough" is at odds not only with common sense, but also with Plaintiffs' allegations that luxury hotels are highly differentiated and exhibit significant non-price competition. *See* Mot. at 26-27.

**Inelastic Demand**. Plaintiffs contend that demand for luxury hotels is "relatively inelastic" because when booking luxury hotel rooms, "travelers must secure accommodations regardless of price changes," Opp. at 25-26, but that too defies common sense, and in any event, it is not alleged in the Complaint. Nor have Plaintiffs explained why purchasers of "luxury" hotel rooms, who Plaintiffs concede can and do book arrangements far in advance, could not "abstain from purchasing . . . for some period of time." *Id.*

Plaintiffs thus have not plausibly alleged the "luxury hotel industry" has structural features that make any alleged information exchange likely to have anticompetitive effects.

### C.    Plaintiffs Fail To Plausibly Allege Antitrust Injury

Plaintiffs still have not explained how the Complaint plausibly connects the alleged information exchange to higher prices for "luxury" hotel rooms. Plaintiffs' theory of harm is that "there is widespread usage of hotel revenue management algorithms in the hospitality industry," Compl. ¶ 141; those "revenue management systems are fed with vast amounts of data," *id.*; and that data from STR is, at most, one of many inputs that is supposedly "propelling pricing algorithms towards the ultimate goal of charging higher prices." *Id.* ¶ 150. Plaintiffs do not plausibly allege that STR data—among "vast amounts of" other inputs—caused Plaintiffs to pay allegedly higher prices for "luxury" hotel rooms.

Plaintiffs are also wrong that this issue cannot be addressed at the pleading stage. Indeed, causation is a fundamental element of an antitrust claim, and Plaintiffs do not address the cases that Defendants cited where courts have dismissed claims for failing to plausibly allege a causal link between the allegedly anticompetitive conduct and the higher prices plaintiffs supposedly paid. Mot. at 28-29 (collecting cases). The sole case on which Plaintiffs rely—*Knevelbaard Dairies v. Kraft Foods, Inc.*—is irrelevant. *See* Opp. at 32. There, the Ninth Circuit found that the plaintiffs had sufficiently pled they had been harmed by the defendants' alleged price-fixing conspiracy, and refused to credit defendants' arguments for how plaintiffs could have avoided that

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-RSL                                                      15

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

injury, finding that the dispute regarding causation could not be decided on the pleadings. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989-90 (9th Cir. 2000).  Here, in contrast, Plaintiffs have ***not*** sufficiently alleged that the purported conspiracy is causally connected to the injury that Plaintiffs claim to have suffered, *i.e.*, paying higher prices for luxury hotel rooms, which provides an independent basis for dismissing the Complaint.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-RSL

16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1    *I certify that this memorandum contains 5,669 words, in compliance with the Court's May*

2    *14, 2024 Minute Order, Dkt. 89, and the Local Civil Rules.*

3

4    Dated:  August 28, 2024                                    Respectfully submitted,

5

6    *s/ Heidi Bradley*                                         *s/ Vanessa Soriano Power*
     Heidi Bradley (WSBA No. 35759)                             Vanessa Soriano Power (WSBA No. 30777)
7    BRADLEY BERNSTEIN SANDS                                    STOEL RIVES LLP
     2800 First Avenue, Suite 326                               600 University Street, Suite 3600
     Seattle, WA 98121                                          Seattle, WA 98101
8
     Jarrett Arp (*pro hac vice*)                               *s/ Lawrence E. Buterman*
9    Mari Grace (*pro hac vice*)                                Lawrence E. Buterman (*pro hac vice*)
     DAVIS POLK & WARDWELL LLP                                  LATHAM & WATKINS LLP
10   901 15th Street, NW                                        1271 Avenue of the Americas
     Washington, DC 20005                                       New York, NY 10020
11
     Neal Potishman (*pro hac vice*)                            Sarah M. Ray (*pro hac vice*)
12   DAVIS POLK & WARDWELL LLP                                  LATHAM & WATKINS LLP
     1600 El Camino Real                                        505 Montgomery Street, Suite 2000
13   Menlo Park, CA 94025                                       San Francisco, CA 94111

14   Tina Hwa Joe (*pro hac vice*)                              Elyse M. Greenwald (*pro hac vice*)
     DAVIS POLK & WARDWELL LLP                                  LATHAM & WATKINS LLP
15   450 Lexington Avenue                                       10250 Constellation Blvd. Suite 1100
     New York, NY 10017                                         Los Angeles, CA 90067
16
     *Counsel for Defendant Hilton Domestic*                    David L. Johnson (*pro hac vice* forthcoming)
17   *Operating Company*                                        LATHAM & WATKINS LLP
                                                                555 Eleventh Street NW, Suite 1000
18   *s/ Michael Rosenberger*                                   Washington, DC 20001
     Michael Rosenberger (WSBA No. 17730)
19   GORDON TILDEN THOMAS & CORDELL LLP                         *Counsel for Defendants CoStar Group, Inc. and*
     600 University Street, Suite 2915                          *STR, LLC*
20   Seattle, WA 98101
                                                                *s/ Robert Maguire*
21   *s/ Douglas E. Litvack*                                    Robert Maguire (WSBA No. 29909)
     Douglas E. Litvack (*pro hac vice*)                        DAVIS WRIGHT TREMAINE LLP
22   Lindsay C. Harrison (*pro hac vice*)                       920 5th Avenue, Suite 3300
     JENNER & BLOCK LLP                                         Seattle, WA 98104-1610
23   1099 New York Avenue, NW, Suite 900
     Washington, DC  20001-4412                                 Katherine B. Forrest (*pro hac vice*)
24                                                              Matthew A. Robinson (*pro hac vice*)
     *Counsel for Defendant Hyatt Corporation*                 PAUL, WEISS, RIFKIND, WHARTON & GARRISON
25                                                              1285 Avenue of the Americas
                                                                New York, NY 10019
26   *s/ Paul R. Taylor*
     Paul R. Taylor (WSBA No. 14851)                            Paul D. Brachman (*pro hac vice*)
27   BYRNES KELLER CROMWELL llp                                 PAUL, WEISS, RIFKIND, WHARTON & GARRISON
     1000 Second Avenue, 38th Floor                             2001 K Street, NW
28   Seattle, Washington 98104                                  Washington, DC 20006-1047

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT                                           17
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1

2   Jeffrey S. Cashdan (*pro hac vice*)
    Emily S. Newton (*pro hac vice*)
3   Lohr A. Beck (*pro hac vice*)
    Caroline Buyak (*pro hac vice*)
4   KING & SPALDING LLP
    1180 Peachtree Street, NE, Suite 1600
5   Atlanta, GA 30309-3521

6   *Counsel for Defendant Six Continents Hotels, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Counsel columns (right):

*Counsel for Defendant Loews Hotels Holding Corporation*

s/ *Kristen C. Limarzi*
Kristen C. Limarzi (*pro hac vice*)
Melanie L. Katsur (*pro hac vice*)
Sarah Akhtar (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

Jeffrey B. Coopersmith (WSBA No. 30954)
Steven Fogg (WSBA No. 23528)
CORR CRONIN
1015 Second Avenue, Floor 10
Seattle, WA 98104

*Counsel for Defendant Marriott International, Inc.*

s/ *Robin Wechkin*
Robin Wechkin (WSBA No. 24746)
SIDLEY AUSTIN LLP
8426 316th Place SE
Issaquah, WA 98027

Carrie Mahan (*pro hac vice*)
Benjamin M. Mundel (*pro hac vice*)
S. Nicole Booth (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005

Amy P. Lally (*pro hac vice*)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

*Counsel for Defendant Accor Management US Inc.*

DEFENDANTS' REPLY BRIEF ISO JOINT MOTION
TO DISMISS COMPLAINT
Case No. 2:24-cv-00229-RSL

18

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020