THE HONORABLE ROBERT S. LASNIK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

JEANETTE PORTILLO, et al.,

                      Plaintiffs,

    v.

COSTAR GROUP INC, et al.,

                  Defendants.

Case No. 2:24-cv-00229-RSL

**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION; AND**

Plaintiffs Jeanette Portillo, Alicia Coakley, Freddy Barajas, Heriberto Valiente, David Concepcion, Daniel Kassl, and Daniel Smith, and Defendants CoStar Group, Inc., STR, LLC, Hilton Domestic Operating Company Inc., Hyatt Corporation, Six Continents Hotels, Inc., Loews Hotels Holding Corporation, Marriott International, Inc., and Accor Management US Inc. (individually a "Party" and collectively, the "Parties"), hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter[1]:

---

[1] Unless defined herein, capitalized terms are defined in Appendix A.

AGREEMENT RE DISCOVERY OF ESI;
AND ORDER – 1

HAGENS BERMAN

**A.      General Principles**

1.      As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

2.      Applicability:  This ESI Protocol Order will govern the production of ESI and hard copy documents. To the extent that a Party collected and processed documents prior to the entry of this ESI Protocol Order, and production of such documents cannot be made in accordance with the terms of this ESI Protocol Order, the Parties will meet and confer concerning the potential formats of the production of any such documents.[2]

3.      Cooperation:  The Parties acknowledge their duty to work together cooperatively throughout the discovery process. The Parties agree that they will adhere to the principles of reasonableness and proportionality. Further, the Parties agree to meet-and-confer with one another in good faith and in a timely manner to address and resolve any disputes.  If the Parties are unable to resolve such disputes, either Party may raise the dispute to the Court for resolution as provided for in LCR 37 or, upon agreement among the Parties, the expedited process provided by the March 22, 2024 Order re Discovery and Depositions, Dkt. 63, ¶ 1.

4.      While this ESI Protocol Order is intended to address the majority of documents and data sources handled in this matter, there may be situations where the parties come into contact with data sources, such as ESI from social media, ephemeral messaging systems, collaboration tools, mobile device apps, and modern cloud sources.  In the event such data sources within a Party's possession, custody, or control are likely to contain relevant materials, the Parties will meet and confer in good faith about potential production from such sources.

---

[2]  This paragraph is not intended to alter the Parties' agreement in Paragraph 9 of the May 17, 2024 Joint Status Report and Discovery Plan.  *See* Dkt. 90.

AGREEMENT RE DISCOVERY OF ESI;
AND ORDER – 2

HAGENS BERMAN

**B.     ESI Disclosures**

1.      Within 30 days of entry of an order denying, in whole or in part, Defendants' motion to dismiss, or at a time mutually agreed to by the Parties, the Parties will make the following ESI disclosures:

2.      <u>Custodians</u>. Each Party will disclose an initial list of proposed ESI custodians. The proposed ESI custodians shall be identified by name, title, and a brief description of their job responsibilities. If, after the Parties identify initial ESI custodians, a Receiving Party determines that additional ESI custodians should be added, the Receiving Party shall advise the Producing Party in writing of the proposed additional ESI custodian(s) and the basis for the request. The Producing Party shall consider in good faith whether the proposed additional ESI custodian(s) are relevant and proportional to the needs of the case. If after good faith consideration and the Parties' meet and confer, the Producing Party refuses to add the Receiving Party's proposed, additional ESI custodians, the Receiving Party may raise the issue with the Court.

a.      For document custodians agreed on by the Parties or ordered by the Court, the Producing Party will take reasonable steps to identify whether unique relevant ESI (including text messages and/or iMessages), if any, are located on any cellphones in the possession, custody, or control of the Producing Party. To the extent reasonably practicable, materials collected pursuant to this subparagraph shall be produced as image files with related searchable text. The parties will meet and confer about reasonable requests related to the identification of senders and recipients.

3.      <u>Non-custodial Data Sources</u>. Each Party will disclose a list of non-custodial data sources, including third-party data sources that the Producing Party has control over (*e.g.*, shared drives, servers, third-party email providers, mobile device providers, cloud storage) that it intends to search to identify potentially relevant and discoverable ESI.

4.      <u>Inaccessible Data</u>. If a Producing Party asserts that certain categories of ESI that are reasonably likely to contain unique discoverable information are inaccessible or otherwise

HAGENS BERMAN

unnecessary under Fed. R. Civ. P. 26(b)(2)(B), the Producing Party shall disclose such data sources to the Receiving Party and the Parties shall meet and confer in good faith.

5.      Foreign data privacy laws. Nothing in this ESI Protocol Order is intended to prevent the Parties from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The Parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

**C. ESI Discovery Procedures**

1.      Search methodology. After the initial identification of custodians in accordance with Section B.2, the Parties shall meet and confer in good faith to attempt to reach agreement on appropriate search terms and search strings, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided search methodologies, before any such effort is undertaken. The Parties shall cooperate in revising the appropriateness of the search methodology.

2.      Search Terms. The Parties may use search terms and other limiters as a means of limiting the volume of information to be reviewed for responsiveness. To the extent that a Producing Party intends to use search terms, the Producing Party shall identify those search terms that it reasonably believes would lead to the identification of responsive documents.  Within 14 days of receiving the Producing Party's proposed search terms, if the Receiving Party reasonably believes the Producing Party's proposals regarding search, retrieval, and production would result in deficiencies in production, it shall provide in writing to the Producing Party its proposed modifications to the proposed search methods and search terms, and the Parties shall meet and confer in good faith no more than 7 days after the Receiving Party has provided its proposed modifications. To the extent that the Producing Party objects to the additional and/or revised terms as unduly burdensome or overbroad, the Producing Party will provide hit counts and/or information to show that the proposed/additional terms impose an undue burden or do not assist in identifying potentially responsive documents. If the Parties cannot resolve their disagreements

HAGENS BERMAN

regarding the sufficiency of the Producing Party's proposed search terms, they shall promptly bring the dispute to the Court for resolution. The Parties must come to agreed or Court-ordered final search terms at least 120 days in advance of the substantial completion deadline provided in the Scheduling Order.

3.    Prior to running searches, the Producing Party shall disclose reasonable information regarding any other methodology (e.g., any file type and date restrictions) that it proposes to use to cull ESI in order to locate ESI likely to contain responsive and discoverable information.

4.    Use of TAR.   The Parties may use TAR, continuous active learning, or similar technology to sort documents for linear review without disclosure to the other Parties, provided that the use of TAR will not eliminate any documents from review.  If a Party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, the Parties will meet and confer in good faith to discuss the process for the use of TAR in those instances, including the extent of disclosure of information related to the TAR tool's procedures, prioritization and training of the TAR tool.  If a Party desires to use both agreed upon or Court-ordered search terms to pre-cull the universe of documents before employing TAR to further cull or otherwise limit the volume of unstructured ESI subject to linear review, the Parties will meet and confer in good faith. Each party reserves all rights to object to a Party's usage of search terms to pre-cull the universe of documents before employing TAR.

5.    Structured Data.   To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer to determine whether existing report formats or exportable data formats, usually a .csv file, can be utilized. If discoverable data can be produced in an already existing and reasonably available report, the Producing Party may collect and produce the data in that report format. If existing report forms do not reasonably provide the requested information, the Parties will meet and confer.  Upon review of a produced report, the Receiving Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

HAGENS BERMAN

6.    Plaintiff Search Obligations. Each Plaintiff shall do reasonable searches on each of the sources reasonably likely to contain responsive information, to identify and collect potentially responsive ESI for counsel's review. Reasonably diligent searches may require running search terms; reviewing files, communications, videos, and photographs; or otherwise conducting an actual, physical search of the sources of documents. Plaintiffs' counsel shall take an active role in identifying, preserving, collecting, reviewing, and producing responsive ESI.

7.    Production Format. The production specification format for document productions is set forth in Appendix A.

8.    Deduplication.

a.    The Producing Party must take all appropriate measures to preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.

b.    If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

c.    The Parties shall deduplicate their ESI production across custodial and non-custodial data sources at the parent level, and the duplicate custodian information removed during the deduplication process tracked in a duplicate/other custodian field in the database load file, and the duplicate file path information produced in the All Paths metadata field. If processing and production is done on a rolling basis, updated duplicate custodians and All Paths fields with additional values shall be provided in an overlay metadata load file. The Producing Party shall identify whether the overlay replaces previously produced fields for a file or supplements them.

9.    Email Threading. The Parties may use email thread suppression to identify email threads and need only produce the unique most inclusive copy and related family members, provided that email thread suppression will not eliminate (a) the ability of a Receiving Party to identify the custodians who received the most inclusive thread of the produced document or email, (b) the ability of a Receiving Party to identify any BCC recipients of any version of the produced

HAGENS BERMAN

document or email, or (c) remove from production any unique branches and any attachments contained within an email thread.

10.     <u>Embedded Objects</u>. Embedded, as opposed to linked, spreadsheets, Word documents, or PowerPoints will be extracted as separate documents and treated as attachments to the document. The Parties agree that embedded objects including logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a Producing Party (e.g., such embedded objects will be produced within the document image itself, rather than as separate attachments).

11.     <u>Other Permitted Culling</u>. A Producing Party is permitted to cull data using agreed-upon custodial and non-custodial source lists, agreed-upon date parameters, and agreed-upon search terms (if applicable), and a Producing Party is permitted to remove known system or operating files, such as those that appear on the National Software Reference Library (NSRL) hash list. As such, the Parties may cull entire file directories from computer hard drives that contain Program Files, Program Data, SWTOOLs, Windows Operating System files, etc. For those excluded directories, the Parties will only conduct searches on user-created content that is reviewable and likely to yield relevant content.

**D.     Preservation of ESI**

The Parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. With respect to the preservation of ESI, the Parties agree as follows:

1.     Absent a showing of good cause by the Receiving Party, the Parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the Parties shall take reasonable and proportional steps to preserve all discoverable ESI in their possession, custody, or control.

2.     The Parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure

HAGENS BERMAN

where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.      Absent a showing of good cause by the Requesting Party, the following categories of ESI need not be preserved:

a.      Deleted, slack, fragmented, or other data only accessible by forensics;

b.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

c.      On-line access data associated with web browsers that is subject to frequent overwriting, such as temporary internet files, history, cache, cookies, and the like;

d.      Public-facing websites;

e.      Irrelevant data in metadata fields that are frequently deleted, overwritten, or updated automatically, such as last-opened dates (see also Section (E)(5));

f.      Information deemed as junk and/or irrelevant ESI outside the scope of permissible discovery in this or other matters;

g.      Voice-mail messages;

h.      Operating system files, executable files, server, system, or network logs, electronic data temporarily stored by scientific equipment or attached devices;

i.      Data stored on photocopiers, scanners, and fax machines;

j.      Interim automatically saved drafts, as opposed to drafts saved by a user;

k.      Dynamic fields of databases or log files that are not retained in the usual course of business;

l.      Back-up data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, data or system mirrors or shadows;

AGREEMENT RE DISCOVERY OF ESI;
AND ORDER – 8

HAGENS BERMAN

m.    Server, system or network logs;

n.    Data remaining from systems no longer in use that is unintelligible on the systems in use; and

o.    Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

4.    When duplicate copies of potentially relevant ESI exist in more than one location, this ESI Protocol Order does not require a Party to preserve all duplicates.

**E.    Privilege Log and Treatment of Privileged Materials**

1.    <u>Production of Privilege Logs</u>:  Consistent with the Federal Rules of Civil Procedure, the Parties agree to serve a privilege log providing information regarding all Documents withheld pursuant to a claim of privilege, work-product, or any other protection or immunity.  The Parties agree to produce an initial privilege log within 60 days of substantial completion of their document productions. The Parties agree to meet and confer regarding the deadline for any supplemental privilege logs that are necessary.  The Parties agree to produce their privilege log(s) in MS Excel.

2.    <u>Format of Privilege Logs</u>: To the extent applicable, each Party's privilege log needs only to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and a description of the privilege or protection being asserted. Attorneys or legal support personnel shall be indicated through the use of * or other character. Objective metadata includes the following (as applicable to the document types as shown in Appendix A):

a.    A unique privilege log identifier

b.    Custodian

c.    CustodianOther or CustodianAll (if applicable)

d.    Author

e.    From

AGREEMENT RE DISCOVERY OF ESI;
AND ORDER – 9

HAGENS BERMAN

f.      To

g.      CC

h.      BCC

i.      Subject or Filename

j.      Date Sent

k.      Date Received

l.      Date Created

In addition to the objective metadata fields, a party must also include a field on its privilege log entitled "Attorney/Description of Privileged Material" that, consistent with Fed. R. Civ. P. 26(b)(5) will enable other parties to assess the claim, and a field listing the privilege claim asserted. Further, a party must manually populate on its privilege log an author and date, if known, for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document.

3.    <u>Exceptions to Logging</u>: The Parties agree that the following privileged or protected documents need not be included on a privilege log: (i) privileged or work-product documents generated after February 20, 2024 (the date the original complaint was filed) involving either outside counsel or in-house litigation counsel; and (ii) privileged or work-product documents regarding litigation holds, the preservation, collection, or review of documents in this or any other litigation.

4.    <u>Protocol for Logging "Families"</u>: Each member of a family (i.e., e-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity, or any similar claim shall be identified on the log separately (i.e., in the foregoing example, the email and attached memorandum shall be identified on the log separately rather than on a single line).

5.    <u>Documents Redacted for Privilege</u>: Redacted documents need not be logged as long as the objective metadata (i.e., to, from, cc, bcc, recipients, date, and time, unless the privilege or protection is contained in these fields) is not redacted. For redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document

that is sufficient to understand the subject matter of the document shall be provided. After receipt of a production, the Receiving Party may request in good faith that the Producing Party create a privilege log for specific redacted documents and explain the basis for specific redactions.

**F.    502(d) Order and Clawback Procedure**

This ESI Protocol Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order, if the Producing Party discloses information that the Producing Party thereafter claims to be protected by the attorney-client privilege, work product protection, or any other privilege or immunity ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture—in this or any other action—of any claim of privilege, work product protection, or any other privilege or immunity that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

1.    This Order protects any disclosure of Protected Information, whether that disclosure is inadvertent or otherwise.

2.    Disclosure of Protected Information in discovery conducted in this litigation shall not waive any claim of privilege, work product protection, or any other privilege or immunity that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

3.    If a Producing Party discovers that it has disclosed Protected Information without intending a waiver by the disclosure, the Producing Party must notify the Receiving Parties in writing and provide the basis for its claim of privilege, work product, or other privilege or immunity. Upon receipt of written notification, the Receiving Parties shall not further review the inadvertently produced Protected Information, and shall immediately, and in no event more than five (5) calendar days:

a.    after receiving such a notification, destroy or return all copies, electronic or otherwise; or

b.  notify the Producing Party that it wishes to challenge the claim and has sequestered the material until the issue can be resolved. The Parties agree to meet and confer regarding the claim.  If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court.

4.  No motion to compel or other argument for waiver of privilege will be raised based upon the fact of the inadvertent or unintentional production of Protected Information made by the Producing Party as part of its discovery obligations in this case.  For the avoidance of doubt, Parties retain their right to make arguments regarding waiver of privilege related to other forms of disclosure not related to productions in this case.

5.  The Parties agree that all inadvertently or unintentionally disclosed or produced Protected Information shall be treated as confidential and may not be disclosed by the Receiving Party to persons or entities other than the Producing Party without the written consent of the Producing Party.

6.  If a Receiving Party has disclosed Protected Information to any third parties, the Receiving Party, once it learns of the disclosure, must promptly: (a) notify, in writing, the Producing Party of the disclosure; (b) use its best efforts to retrieve all copies of the Protected Information; and (c) notify, in writing, the Producing Party as to whether all copies have been retrieved.

7.  If a Producing Party attempts to clawback a document authored or received by an individual who is scheduled for a deposition within 30 days of the date of the deposition, and the propriety of the clawback is not resolved pursuant to Section G below prior to the date of the deposition, then the Parties will meet and confer on the appropriate course of action, which may, but need not necessarily include: rescheduling the deposition until the issue is resolved by the Court, conferring prior to the deposition to determine if the document may be used in the deposition subject to agreed-upon limitations; and/or calling the Court if the clawback is made during the deposition to determine if immediate resolution is possible.

AGREEMENT RE DISCOVERY OF ESI;
AND ORDER – 12

HAGENS BERMAN

8.      In accordance with the Court's Order pursuant to Federal Rule of Evidence 502(d), set forth in the Stipulated Protective Order (Dkt. 106 at 19), this Order shall be interpreted to provide the maximum protection allowed to the Producing Party by Federal Rule of Evidence 502(d).

**G.      Challenges to Claims of Privilege**

Nothing in this Order shall limit a Receiving Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure) a Producing Party's claim that information is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege or immunity.

Following the receipt of a privilege log, or after receiving notification of a clawback of Protected Information pursuant to Section F, the Receiving Party may identify, in writing, the privilege log entries that it believes require further explanation by unique log identifier or Bates number, and the reason why the Receiving Party contends the information is not privileged or otherwise protected. The Producing Party shall respond to such a request within 30 calendar days. If, after the Producing Party responds to the Receiving Party, and undertaking an appropriate meet and confer process, the Parties are unable to resolve any dispute they have concerning a claim of privilege or other protection, the Receiving Party may seek relief from the Court. Any Protected Information submitted to the Court in connection with a challenge to the Producing Party's claim of attorney-client privilege or other protection shall not be filed on the public record, but rather, shall be redacted and filed under seal in accordance with the Local Rules, or submitted for in camera review as appropriate.

**H.      Redactions**

1.      A Producing Party may redact personal information to the extent that the information falls within one of the following categories: (a) information that relates to the medical or health issues of an individual, or (b) social security numbers, taxpayer-identification numbers, driver's license numbers, personal physical or email address information and/or phone numbers,

HAGENS BERMAN

passport numbers, financial-account numbers or other bank account information, or personal passcodes or passwords. Such redactions should be identified as "PII" on the redactions.

2.    A Party may not make redactions based on an assertion that the data or information is not relevant. The only redactions permitted are on the basis of privilege and the categories listed in Section H.1.

3.    The Parties agree that, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files and Excel spreadsheets, which shall be redacted in native format, to the extent possible. Any non-privileged metadata fields reasonably available shall be provided. The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted using litigation database applications that can redact native Excel files, or in native format by inserting "[REDACTED]" in the cells from which data has been deleted before production.

**I.    Non-Party Discovery**

1.    A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this ESI Protocol Order with the subpoena.

2.    The Issuing Party shall be responsible for producing any documents obtained under a subpoena to all other Parties within a reasonable time frame and no later than 5 business days after receipt.

3.    If a non-party production is not Bates-stamped, the Issuing Party shall endorse the non-party production with unique prefixes and Bates numbers prior to producing the documents to all other Parties.

**J.    Modification**

This ESI Protocol Order may be modified by stipulation of the Parties or by the Court for good cause shown.

AGREEMENT RE DISCOVERY OF ESI;
AND ORDER – 14

HAGENS BERMAN

1   DATED: September 3, 2024        Respectfully submitted,

2

3                                **HAGENS BERMAN SOBOL SHAPIRO LLP**

4                                  */s/ Steve W. Berman*
                                  Steve W. Berman (WSBA No. 12536)

5                                  */s/ Theodore Wojcik*
                                  Theodore Wojcik (WSBA No. 55553)

6                                  */s/ Xiaoyi Fan*
                                  Xiaoyi Fan (WSBA No. 56703)

7                                  1301 Second Avenue, Suite 2000
                                  Seattle, WA 98101

8                                  Telephone: (206) 623-7292
                                  Facsimile: (206) 623-0594

9                                  Email: steve@hbsslaw.com
                                  Email: tedw@hbsslaw.com

10                                Email: kellyf@hbsslaw.com

11                                Rio S. Pierce (*pro hac vice*)
                                **HAGENS BERMAN SOBOL SHAPIRO LLP**

12                                715 Hearst Avenue, Suite 300
                                  Berkeley, CA 94710

13                                Telephone: (510) 725-3000
                                  Facsimile: (510) 725-3001

14                                Email: riop@hbsslaw.com

15                                *Attorneys for Plaintiffs*

16   *s/ Heidi Bradley*                  *s/ Vanessa Soriano Power*
     Heidi Bradley (WSBA No. 35759)        Vanessa Soriano Power (WSBA No. 30777)

17   BRADLEY BERNSTEIN SANDS           STOEL RIVES LLP
     2800 First Avenue, Suite 326           600 University Street, Suite 3600

18   Seattle, WA 98121                      Seattle, WA 98101

19   Jarrett Arp (*pro hac vice*)             *s/ Lawrence E. Buterman*
     Mari Grace (*pro hac vice*)             Lawrence E. Buterman (*pro hac vice*)

20   DAVIS POLK & WARDWELL LLP        LATHAM & WATKINS LLP
     901 15th Street, NW                 1271 Avenue of the Americas

21   Washington, DC 20005             New York, NY 10020

22   Neal Potischman (*pro hac vice*)       Sarah M. Ray (*pro hac vice*)
     DAVIS POLK & WARDWELL LLP        LATHAM & WATKINS LLP

23   1600 El Camino Real                 505 Montgomery Street, Suite 2000
     Menlo Park, CA 94025             San Francisco, CA 94111

24   Tina Hwa Joe (*pro hac vice*)          Elyse M. Greenwald (*pro hac vice*)

25   DAVIS POLK & WARDWELL LLP        LATHAM & WATKINS LLP
     450 Lexington Avenue              10250 Constellation Blvd. Suite 1100

26   New York, NY 10017               Los Angeles, CA 90067

27   *Counsel for Defendant Hilton Domestic*
     *Operating Company*

28

AGREEMENT RE DISCOVERY OF ESI;                       HAGENS BERMAN
AND ORDER – 15

s/ Michael Rosenberger
Michael Rosenberger (WSBA No. 17730)
GORDON TILDEN THOMAS & CORDELL LLP
600 University Street, Suite 2915
Seattle, WA 98101

s/ Douglas E. Litvack
Douglas E. Litvack (*pro hac vice*)
Lindsay C. Harrison (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC  20001-4412

*Counsel for Defendant Hyatt Corporation*

s/ Paul R. Taylor
Paul R. Taylor (WSBA No. 14851)
BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104

Jeffrey S. Cashdan (*pro hac vice*)
Emily S. Newton (*pro hac vice*)
Lohr A. Beck (*pro hac vice*)
Caroline Buyak (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521

*Counsel for Defendant Six Continents Hotels, Inc.*

David L. Johnson (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20001

*Counsel for Defendants CoStar Group, Inc. and STR, LLC*

s/ Robert Maguire
Robert Maguire (WSBA No. 29909)
DAVIS WRIGHT TREMAINE LLP
920 5th Avenue, Suite 3300
Seattle, WA 98104-1610

Katherine B. Forrest (*pro hac vice*)
Matthew A. Robinson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, NY 10019

Paul D. Brachman (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
2001 K Street, NW
Washington, DC 20006-1047

*Counsel for Defendant Loews Hotels Holding Corporation*

s/ Kristen C. Limarzi
Kristen C. Limarzi (*pro hac vice*)
Melanie L. Katsur (*pro hac vice*)
Sarah Akhtar (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

Jeffrey B. Coopersmith (WSBA No. 30954)
Steven Fogg (WSBA No. 23528)
CORR CRONIN
1015 Second Avenue, Floor 10
Seattle, WA 98104

*Counsel for Defendant Marriott International, Inc.*

s/ Robin Wechkin
Robin Wechkin (WSBA No. 24746)
SIDLEY AUSTIN LLP
8426 316th Place SE
Issaquah, WA 98027

AGREEMENT RE DISCOVERY OF ESI;
AND ORDER – 16

HAGENS BERMAN

Carrie Mahan (*pro hac vice*)
Benjamin M. Mundel (*pro hac vice*)
S. Nicole Booth (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005

Amy P. Lally (*pro hac vice*)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

*Counsel for Defendant Accor Management US Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX A

## PRODUCTION FORMAT PROTOCOL

I.   **DEFINITIONS**

The following definitions and terms shall apply in this ESI Protocol Order and Appendix A:

1.   "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes ESI and hard copy material. A draft or non-identical copy is a separate Document within the meaning of this term.

2.   "ESI" means electronically stored information.  ESI carries the broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

3.   "Extracted Text" means the text extracted from a Native File, and includes all header, footer, and document body information.

4.   "Load File" means a load utilization file, which is an electronic file containing information identifying a set of paper-scanned images or processed ESI, and containing: (i) an indication of which individual pages or files constitute each Document, including attachments, and links to the Static Images associated with each Document; (ii) links to any Native Files, where native files are being produced, including attachments, associated with each Document; and (iii) data relevant to each individual Document, including extracted and user-created Metadata and coded data.

5.   "Metadata" means: (i) information associated with or embedded in a Native File that does not constitute the primary content region of the file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

6.   "Native File" or "Native Format" refers to ESI that is produced in the format in which it was maintained (e.g., an Excel document produced in .xls format would be produced in native format).

HAGENS BERMAN

7.      "OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents text searchable using appropriate software.

8.      "Producing Party" means the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

9.      "Receiving Party" means the party receiving a production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

10.     "Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard document review systems. Tagged Image File Format (TIFF) images are examples of Static Images.

## II.     OVERVIEW

The production format has four main components:

1.      A directory containing images of every page of every Document in the production, Bates-numbered sequentially.

2.      A directory containing Native Files for a subset of the Documents, each file named with the Bates number of the first page of the Document it represents and the confidentiality designation, with no additional text beyond this, and with the same extension as the original Native File type of the Document.

3.      A directory containing OCR or Extracted Text files, one file per Document, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, followed by ".txt" suffix.

4.      Load Files containing the Metadata for each Document in .DAT file format, and an image load file in .OPT format that provides relative links to every page of the images associated with the documents referenced in the accompanying .DAT load file.

HAGENS BERMAN

## III.   FORMAT FOR PRODUCTION

1.   **Commencement of Production.**

The production of Documents shall proceed at such time, place, and in such sequence as allowed under the Federal Rules of Civil Procedure, as agreed to by the Parties, or permitted by the Court.

2.   **General Format of Production.**

Documents that are produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic image form, in the manner described in Section III.C., below, where reasonably feasible. Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Documents are not susceptible to production in the format or methods of production addressed herein. In that event, the Parties will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

3.   **Production Format.**

All documents shall be produced in the following formats when reasonably feasible:

a.   Electronic Production of Paper Documents. Documents that are maintained in hard copy format shall be scanned at 300 x 300 dots per inch (DPI) or greater resolution, in single-page Group IV TIFF format, and shall reflect the full and complete information contained in the original Document. Hard copy Documents shall be produced with associated OCR files at the same time that the TIFF files are produced and with a Load File that includes at least the following Metadata fields: Begin Bates; End Bates; Begin Family; End Family; Pages; TextPath; Placeholder; Custodian; All Custodians; Confidentiality; and Redacted, as those fields are described in Section IV, below. If color is material to the understanding of a document, the document shall be produced in single-page color JPG image format. When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as "auto-skewing" or "auto-rotation," should be turned on when documents are run through the process. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the

HAGENS BERMAN

document. If the content of the Document is obscured by the affixed notes, the Document and notes shall be scanned separately.

      b.    <u>Production of Electronically Stored Information (ESI)</u>. Unless otherwise specified, Document images shall be generated from electronic Documents as single page Group IV TIFF images that reflect the full and complete information contained on the original Document. If color is material to the understanding of a document, the document shall be produced in singe-page color JPG image format.  In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document. The failure to withhold such text for a redacted Document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document.

      c.    <u>File Structure</u>. The Producing Party shall produce the following sets of files with each production:

      (1)    <u>Image Load File</u>

      (a)    Every document referenced in a production image load file must have all corresponding images, text and metadata.

      (b)    The name of the image load file must mirror the name of the delivery volume and should have an .OPT file extension.

      (c)    The volume names must be reasonably consecutive (e.g. ABC001, ABC002…).

      (d)    The load file must contain one line per image.

      (e)    Every image in the delivery volume must be contained in the image load file.

      (f)    The image key must be named the same as the Bates number of the image.

      (g)    Load files must not span across media.

      (h)    File should be placed in the root directory or a folder

HAGENS BERMAN

labeled "DATA."

(2)   Metadata Load File

    (a)   Each production has one load file, in "Concordance" style .DAT format.

    (b)   Values must be enclosed by þ (ASCII Decimal 254).

    (c)   Values must be separated by the "Device Control 4" character, ASCII decimal 20.

    (d)   The first line of the load file must contain the column/field names (set forth in Section IV, below).

    (e)   The fields Begin Bates and End Bates must be present, and the first fields listed in the load file.

    (f)   The field NativePath must be present if native files are included in the document production.

    (g)   Each subsequent row must contain the Metadata for one Document.

    (h)   Every row must have the same number of columns/fields (empty values are acceptable).

    (i)   Text must be encoded in UTF-8.

    (j)   File should be placed in the root directory or a folder labeled "DATA."

(3)   OCR and Extracted Text Files (.TXT Files)

    (a)   A single text file for each Document containing all the Document's pages, in text.

    (b)   Pages separated by form feed character (decimal 12, hex 0xC).

    (c)   Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the

HAGENS BERMAN

Document.

    (d)    Text must be encoded in UTF-8.

    (e)    The formatting of the text files shall match the pagination of the images, so that the text on each "page" of the text file mirrors the text displayed on each page of the image file when loaded into a litigation database.

    (f)    Files should be placed in a directory labeled "TEXT."

  (4)    <u>Image Files</u>

    (a)    Single-page Group IV TIFF or JPG images for each Document, containing all images for that document.

    (b)    Filenames should be of the form: <Bates num>.<ext>, where <Bates num> is the BATES number of the first page of the document (i.e., the "Begin Bates" number), and <ext> is the appropriate extension for the image format (.tif, .jpg).

    (c)    Files should be placed in the "IMAGES" subdirectory.

d.    <u>Illegible Documents</u>. Documents that cannot be read because of imaging or formatting problems, or because they are password-protected, shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s).

e.    <u>Native Format Documents</u>. The Parties recognize that it may be appropriate for certain Documents to be produced in Native Format, such as spreadsheets, engineering drawings, presentations or slides, and audio and video files. In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the Native File. The Receiving Party may specifically identify other documents by Bates number that it would like the Producing Party to produce in Native Format, if necessary to review or understand the documents.

  (1)    <u>Excel and Access Databases</u>. To the extent that responsive

documents exist in Excel or another spreadsheet program, documents shall be produced in Native Format, or a format agreed to by the Parties. To the extent that the document format constitutes a database created or maintained in Access or another database program, Documents shall be produced in their Native Format, or in a format agreed to by the Parties, where reasonably feasible. If a database is based upon proprietary software, the Parties shall meet and confer regarding the format of production, which shall be a reasonably feasible format, to enable review by the Receiving Party. An image placeholder shall be provided for each document produced in Native Format. Each placeholder shall contain the phrase "DOCUMENT PRODUCED IN NATIVE FORMAT," or something similar, and shall be stamped with confidentiality designation and the Bates number corresponding to the native file.

(2)    PowerPoint Presentations (PPT). PPT presentations should be produced in Native Format (*e.g.*, as .PPT files). PPT presentations that require redactions shall be produced in single-page TIFF or JPG format, along with speaker notes. The linked native file name should also match the Begin Bates field with the appropriate file extension. Any hidden slides or speakers notes should be included in PPT presentations.

(3)    Password-Protected, Encrypted or Proprietary-Software Files: With respect to any ESI items that are password-protected or encrypted within the scope of review, the Producing Party will take reasonable steps to request passwords from custodians to remove the protection and produce an unencrypted version of the file. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the Receiving Party shall notify the Producing Party regarding the affected documents.  To the extent that the Receiving Party would need to use proprietary software to view certain ESI, the Parties agree to meet and confer regarding the next steps, if any, with respect to such ESI.

(4)    Audio and Video Data. Parties should make best efforts to ensure care is taken for collection and production of any responsive audio and/or video data, and to preserve any Metadata that may be associated with those items. These data types may be stored in

HAGENS BERMAN

audio or video recordings, voicemail text messaging, and related/similar technologies.

(5)    Word Documents (or similar). Microsoft Word documents (.DOC, .DOCX, or substantially similar non-Microsoft file formats) should be produced in single-page TIFF or JPG format for each Document, containing all images for that document, and should be imaged in a manner that captures tracked changes and comments. Documents with tracked changes and comments shall be produced in color JPG image format. To the extent a Receiving Party believes the converted image format distorts, omits, or causes information to be improperly displayed, the Receiving Party may request the Document in Native Format and the Producing Party shall meet and confer to attempt to resolve the problem(s).

(6)    Production Format for Native Documents: To the extent the Producing Party produces a Document in Native Format, the following specifications apply:

(a)    Filenames must be unique in the production. Files should be named for the starting Bates number of the associated Document.

(b)    The filename must retain the file extension corresponding to the original Native Format (*e.g.*, an Excel 2003 spreadsheet's extension must be .xls).

f.    Color. For non-native document images only, production may be made in black and white. However, if a Receiving Party reasonably determines that color is material to the understanding of a non-native document, at the request of the Receiving Party (identified by Bates number), the document shall be re-produced in color. A Producing Party will not refuse reasonable requests to re-produce documents in color if color is material to the understanding of the document. For the avoidance of doubt, native files (such as PowerPoints) will be produced in their original format, including color if it is in the original document.

g.    Production Media. A Producing Party may produce Documents electronically (via secure FTP, for example), or on an external hard drive, DVD, CD-ROM, or such other readily accessible computer or electronic media as the Producing Party and the

HAGENS BERMAN

Receiving Party may hereafter agree upon (the "Production Media"). Production Media should be labeled on its face with the production date, the production volume, the Bates range contained on the Production Media, and any confidentiality notation that may be required by the Protective Order entered in this case. Where not practicable to label Production Media on its face, a letter or email with the required information should be provided. If the Producing Party encrypts or "locks" the production, the Producing Party shall include, under separate cover, instructions regarding how to decrypt the files, and any necessary passwords.

        h.    <u>Document Unitization</u>. When scanning paper documents into Document images as described in Section III.C.1., they shall be unitized in a manner to maintain the Document(s) and any attachments as they existed in their original state, as reasonably feasible. Any applicable folder structure information should also be provided. Responsive attachments to e-mails stored shall be produced contemporaneously and sequentially immediately after the parent e-mail.

        i.    <u>Duplicates</u>. A Producing Party who has more than one identical copy of an electronic Document (i.e., the Documents are actual duplicates) need only produce a single copy of that Document if the documents do not have any attachments. Document families that are exact duplicates on the family level may only be deduplicated when the parent email/document and all attachments are exact duplicates. For avoidance of doubt, a Producing Party may deduplicate actual duplicate documents across custodians, but all custodians should be identified in the All Custodians and duplicate file paths shall be identified in the All Paths metadata fields.

        j.    <u>Bates Numbering</u>. Each Producing Party shall Bates number its production(s) as follows:  Each Bates number should consist of a unique identifier consisting of a prefix, followed by nine numbers (*e.g.*, ABC000000001). The prefix should be the same for all pages produced by the same Producing Party throughout this litigation, and the Bates sequence shall not contain spaces. Each page of a Document must have its own Bates number, and Bates numbers should be sequential.

        k.    <u>Document Images</u>. Each page of a produced Document shall have a legible,

HAGENS BERMAN

unique page identifier (Bates number) electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source Document. No other legend or stamp should be placed on the document other than a confidentiality designation (where applicable), a privilege designation, or a redaction stamp (where applicable). For confidential documents the confidentiality designation shall be "burned" onto each Document's image at a location that does not unreasonably obliterate or obscure any information from the source Document.

        1.     <u>Bates Numbering of Native Format Documents</u>. In order to preserve the integrity of any Native Format Documents that will be produced, no Bates number, confidentiality legend or redaction information should be added to the content of the Native Format Document. Each native should have an individual Bates number assigned in the file name. If Documents cannot be rendered to a readable TIFF/JPG format, and the Document needs to be redacted for personally identifiable information or privileged content, the native Documents may be redacted by creating a new copy of the native and inserting "Redacted" or similar language where the protected content is located. In that circumstance, a pristine copy of the original native file will be maintained and the party will identify documents redacted in native in the Redacted metadata field.

## IV.    METADATA FIELDS

### A.    Hard Copy Document Metadata Fields

For scanned hard copy documents, the Producing Party will provide the Metadata fields below:

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of first page of the parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| Pages | Total number of pages in the Document. |
| TextPath | Link to text file for the document. |
| Placeholder | Identifies a Document has a placeholder image (Y/N). |

AGREEMENT RE DISCOVERY OF ESI;
AND ORDER – 10

HAGENS BERMAN

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians of the document. |
| Confidentiality | Confidentiality designation. |
| Redacted | (Y/N) field that identifies whether the document is redacted. |
| Production Volume | Production volume number (*e.g.*, VOL001, VOL002, etc.). |
| Producing Party | Name of party producing the Document. |

### B.    ESI Metadata Fields

For ESI, all fields below should be provided, to the extent reasonably feasible. Unless otherwise agreed by the Parties, the field-naming conventions shall be as stated below, and shall be consistently applied across all productions:

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of the first page of parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| AttachCount | Number of document attachments. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians who the Producing Party agreed to produce and where a duplicate of the Document was deduplicated when processing the documents. |
| File Path | The file path from which the document was collected |
| All Paths | Identification of all file paths for duplicate copies. |
| Author | Author field extracted from the Metadata of a Document or other creator identified for the Document. |
| From | From field extracted from the Metadata of an email message. |
| To | To field extracted from the Metadata of an email message. |
| Cc | Cc field extracted from the Metadata of an email message. |
| Bcc | Bcc field extracted from the Metadata of an email message. |
| Pages | Total number of pages in the Document. |
| Date Received | Datetime received (MM/DD/YYYY HH/MM/SS). |
| Date Sent | Datetime sent (MM/DD/YYYY HH/MM/SS). |
| Date Created | Datetime created (MM/DD/YYYY HH/MM/SS). |

HAGENS BERMAN

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Date Modified | Datetime that a Document was last modified (MM/DD/YYYY HH/MM/SS). |
| Last Modified By | Identification of person(s) who last modified a Document. |
| Message Id | Unique Message Id. |
| Title | Title field value extracted from the Metadata of the Native File. |
| Subject | Subject line extracted from an email, e-document or e-attachment. |
| Filename | The full name of the Native File. |
| File Extension | The extension of the file. |
| File Size | The size of the file in bytes. |
| MD5 Hash | The MD5 hash value of a Document. |
| Document Type | Document type. |
| NativePath | The relative path to the native file for this Document. |
| TextPath | The relative path to the text file for this Document. |
| Redacted | Whether a Document has redactions (Y/N). |
| Placeholder | Whether a Document has a placeholder image (Y/N). |
| Confidentiality | Level of Confidentiality assigned. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (*i.e.*, hidden rows, columns, sheets, or slides). |
| Speaker Notes | Document has speaker notes (Y/N). |
| Has Comments | Indicates there are comments in the document. |
| Production Volume | Production volume number (*e.g.*, V001, V002, etc.). |
| Producing Party | Name of party producing the Document. |

AGREEMENT RE DISCOVERY OF ESI;
AND ORDER – 12

HAGENS BERMAN

1

2

## ORDER

Based on the foregoing, IT IS SO ORDERED.

DATED: September 5, 2024.

_Robert S. Lasnik_
Robert S. Lasnik
United States District Judge