UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEANETTE PORTILLO, ALICIA COAKLEY, FREDDY BARAJAS, HERIBERTO VALIENTE, DAVID CONCEPCION, DANIEL KASSL, and DANIEL SMITH, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COSTAR GROUP, INC., *et al.*,<br><br>Defendants. | Case No. C24-229RSL<br><br>ORDER GRANTING MOTION TO DISMISS |

This matter comes before the Court on defendants' "Joint Motion to Dismiss" (Dkt. # 91), plaintiffs' response (Dkt. # 103), the declaration of Steve W. Berman (Dkt. # 104), and defendants' reply (Dkt. # 108). Having reviewed the motions, declarations, and exhibits submitted by the parties,[1] as well as the record herein, the Court GRANTS defendants' motion to dismiss with leave to amend within thirty (30) days.

---

[1] This matter can be decided on the papers submitted. Defendants' request for oral argument is DENIED.

ORDER GRANTING MOTION
TO DISMISS - 1

## I. Background

Plaintiffs allege that competitors in the luxury hotel industry have engaged in "price fixing in its modern form" by participating in an information exchange agreement administered by Smith Travel Research ("STR"), which is owned by defendant CoStar Group ("CoStar"). Dkt. # 1 at 4–5. Plaintiffs contend that STR's information exchange and the defendant hotel operators' participation in that exchange amounts to a violation of Section 1 of the Sherman Act. *Id*. Specifically, plaintiffs in their complaint allege the existence of a contract, combination, or conspiracy involving STR and the defendant hotel operators that involves:

(1) written agreements allegedly made between the defendant hotel operators and STR that explicitly establish an agreement in violation of Section 1;

(2) parallel conduct by defendant hotel operators in the form of

  a. the defendant hotel operators' alleged agreements with STR, and

  b. the allegedly resulting hotel room prices charged by defendant hotel operators,

  both of which allegedly provide independent circumstantial evidence of an agreement in violation of Section 1; and

(3) a hub-and-spoke conspiracy in restraint of trade (with STR functioning as the hub and the defendants as the spokes) that allegedly provides circumstantial evidence of an agreement in violation of Section 1. Dkts. # 1; 103 at 13–25.

Plaintiffs further allege that by conspiring to raise, fix, or maintain the price of luxury hotel rooms in the alleged manner, defendants caused plaintiffs to pay supra-competitive rates for hotel rooms during the period covered by this putative class action. Dkt. # 1 at 74.

ORDER GRANTING MOTION
TO DISMISS - 2

At issue are benchmarking reports supplied by STR to its clients and the agreements defendant hotel operators allegedly entered into in order to receive STR's benchmarking reports. According to publicly available STR materials referenced in plaintiffs' complaint, STR's benchmarking reports are intended to assist clients in "comparing and analyzing your property or portfolio's performance against the competition." *Id*. at 27. In order to receive STR's benchmarking reports, a hotel operator must give STR information that includes (1) historical room revenue data, "which consists of rooms sold (demand), total rooms available (supply) and total rooms revenue"; (2) profit and loss data, "which consists of revenues and costs by hotel operating department and undistributed costs centers"; and (3) future bookings data, "which consists of daily totals of number of rooms sold, number of rooms available and rooms revenue for the next three hundred sixty-five (365) days." *Id*. at 5; Dkt. # 104, Ex. A at 3–4. STR contends that when it turns this incoming confidential data into benchmarking data that can be shared with STR's clients, the confidential data is first aggregated and anonymized before being shared with clients. Dkt. # 1 at 52:16. Plaintiffs, citing a confidential witness, contend it is possible for STR's clients to deanonymize the identities of specific participating hotels in order to associate those deanonymized hotels with benchmarking report data from STR. *Id*. at 11:12, 90–101. The confidential witness does not specify exactly what that deanonymized data might tell someone. *Id*. at 11:12. There is no allegation in the complaint that deanonymizing the identities of participating hotels reveals the actual prices charged for any individual hotel room by any hotel on any given day. *Id*. There is also no allegation in the complaint that actual prices

ORDER GRANTING MOTION
TO DISMISS - 3

charged for individual hotel rooms can be calculated based on the data provided by STR's benchmarking reports (whether that data is anonymized or effectively deanonymized). *Id*.

Plaintiffs do contend that the data shared in STR's reports to hotel operator clients includes "price information." *Id*. at 52:8. Plaintiffs state that "[t]he agreement to regularly exchange detailed and non-public information about current supply and pricing suppressed competition between the Defendants," and "allowed Defendant Hotel Operators to compare their prices and occupancy with their competitors and to raise prices when they were lower than their competitors." *Id*. at 76:10. Plaintiffs also contend that data provided by STR reports "effectively reduces any strategic uncertainty that would lead competitors to naturally compete through lowering prices," allowing defendant hotel operators to realize STR's promise of getting their "fair share" of the market. *Id*. at 4, 33. In addition, plaintiffs contend STR's data exchange mechanism acts as the essential fuel "propelling pricing algorithms towards the ultimate goal of charging higher prices." *Id*. at 59:15.

Defendants contest this, stating: "Plaintiffs' allegations, which in some ways attempt to mimic other recent lawsuits aimed at various forms of 'algorithmic pricing,' are misdirected at STR reports—which involve neither algorithms nor pricing recommendations." Dkt. # 91 at 7. According to defendants, hotel operators do not provide STR with their hotel room price information in order to receive STR's "aggregated, averaged, and anonymized" benchmarking reports. Dkts. # 91 at 10:19–13:9; 108 at 10:11. STR's terms and conditions do not ask for or require the submission of the actual price of any individual hotel room. Dkts. # 1 at 37, n.89; 104 at 3–4.

ORDER GRANTING MOTION
TO DISMISS - 4

## II. Discussion

### A. Pleading Standard Under Fed. R. Civ. P. 12(b)(6)

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

Case 2:24-cv-00229-RSL   Document 117   Filed 08/29/25   Page 6 of 18

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). In addition, the factual allegations in a complaint "must be enough to rise above the speculative level." *Twombly*, 550 U.S. 544 at 555 (2007).

In the context of a Section 1 claim, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556. However:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

*Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). There is no heightened fact pleading standard for anti-trust cases. *Id*. at 570. What is required is enough facts to show that plaintiffs have "nudged their claims across the line from conceivable to plausible." *Id*.

## B. Legal Standard for a Claim Under Section 1 of the Sherman Act

"Section 1 of the Sherman Act prohibits '[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations.'" *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 46 (9th Cir. 2022) (quoting 15 U.S.C. § 1). To state a claim under Section 1:

> [A] plaintiff must allege facts showing "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce ... ; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). The "crucial question" prompting Section 1 liability is "whether the

ORDER GRANTING MOTION
TO DISMISS - 6

challenged anticompetitive conduct 'stems from [lawful] independent decision or from an agreement, tacit or express.' " *Twombly*, 550 U.S. at 553, 127 S.Ct. 1955 (quoting *Theatre Enter., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540, 74 S.Ct. 257, 98 L.Ed. 273 (1954)).

*Id.*

### 1. Agreement as Proof of a Section 1 Violation

Where competitors agree to reciprocally exchange "the most recent price charged or quoted" whenever one competitor requests that information from another competitor, that is "of course sufficient" to establish a combination or conspiracy in violation of Section 1. *United States v. Container Corp. of Am.*, 393 U.S. 333, 335 (1969). In addition, "Acceptance by competitors, without previous agreement, of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce, is sufficient to establish an unlawful conspiracy under the Sherman Act." *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 843 (9th Cir. 2022) (quoting *Interstate Circuit, Inc. v. U.S.*, 306 U.S. 208, 227 (1939)).

### 2. Parallel Conduct as Proof of a Section 1 Violation

Allegations of a conspiracy in violation of Section 1 of the Sherman Act "often arise from parallel conduct among business competitors 'that could just as well be [lawful] independent action.'" *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). As a result, "to state a plausible Section 1 claim, plaintiffs must include additional factual allegations that place that parallel conduct in a context suggesting a preceding

ORDER GRANTING MOTION
TO DISMISS - 7

agreement." *Id*. These additional factual allegations that allow for the inference of an agreement in violation of Section 1 are known as "plus factors." *Id*. *See also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 at 1194 (9th Cir. 2015) (stating that "plus factors are economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action.").

### 3. Hub-and-Spoke Conspiracy as Proof of Section 1 Violation

An agreement also may be inferred from evidence of a hub-and-spoke conspiracy, which traditionally involves (1) a hub; (2) spokes; (3) "the rim of the wheel, which consists of horizontal agreements among the spokes." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 at 1192 (9th Cir. 2015). Horizontal agreement among the spokes may be shown using plus factors, but those plus factors must plausibly suggest that the spokes "entered into illegal horizontal agreements" rather than merely showing that the spokes behaved in similar ways out of their own self-interest. *Id*. at 1193–8.

### C. Plaintiffs' "Direct Evidence" of an Agreement Is Insufficient.

The Court first turns to the question of whether plaintiffs have sufficiently pled direct evidence of an explicit agreement among STR and the defendant hotel operators that violates Section 1. *See* Dkt. # 103 at 15 (plaintiffs stating that their complaint provides "explicit, direct evidence" of "an agreement to exchange confidential pricing information between competitors."). In analyzing this and subsequent questions concerning the sufficiency of plaintiffs' complaint, the Court accepts the factual allegations in plaintiffs' complaint as true and

ORDER GRANTING MOTION
TO DISMISS - 8

will construe the pleadings on defendants' motion to dismiss in the light most favorable to plaintiffs. *Manzarek*, 519 F.3d 1025 at 1031 (9th Cir. 2008).

Plaintiffs state that "[e]ach Hotel Operator agreed to regularly share its current and forward looking competitively sensitive information about their price and supply via STR with the understanding that the competitors would do the same." Dkt. # 1 at 36:16. While in general the Court must accept plaintiffs' factual allegations as true when considering a motion to dismiss, the Court is not required to accept as true "allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall*, 629 F.3d 992 at 998 (9th Cir. 2010). Here, plaintiffs did not attach CoStar's publicly available "Hotel Benchmarking Product Terms and Conditions" to their complaint but did quote from and provide a link to those terms and conditions, which are central to plaintiffs' claim. Dkt. # 1 at 5, n.4; 27, n.89. No party questions the authenticity of those terms and conditions. *See* Dkt. # 108 at 8:13. Therefore, the Court may consider CoStar's publicly available "Hotel Benchmarking Product Terms and Conditions." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998), *as amended* (July 28, 1998). *See also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). While those terms and conditions do state that STR's sharing of "Benchmarking Deliverables" (i.e., benchmarking reports) with any hotel operator is "contingent on" that hotel operator providing required data to STR, the data a hotel operator is required to share with STR under the terms and conditions does not include the current prices of any individual hotel rooms. *See* Dkt. # 104, Ex. A. As discussed above, the data a hotel operator is required to share may include the

ORDER GRANTING MOTION
TO DISMISS - 9

*total* numbers of rooms sold and available *historically*; profit and loss data "which consists of revenues and costs by hotel operating department and undistributed cost centers"; and "daily *totals* of number of rooms sold, number of rooms available and rooms revenue" *over the next 365 days*. *Id*. (Emphasis added.) But the terms and conditions do not require hotel operators to share "the most recent price charged or quoted" for any particular hotel room. *Container Corp. of Am.*, 393 U.S. 333 at 335 (1969) (finding a Section 1 violation where "all that was present was a request by each defendant of its competitor for information as to the most recent price charged or quoted," and where the expectation was that each defendant providing price information would, reciprocally, be provided the same type of price information by competitors).

While claims about the sharing of price information are central to plaintiffs' complaint, on careful reading the complaint does not actually allege that "the most recent price charged or quoted" is required to be shared under STR's terms and conditions. Dkt. # 1. Nor does the complaint allege that the data shared with STR by hotel operators can subsequently be used by STR's benchmarking report clients to determine "the most recent price charged or quoted" for any individual hotel rooms. Dkt. # 1. The complaint does allege that STR's clients can deanonymize some of the aggregated data in STR reports and potentially attribute that deanonymized data to individual hotel industry competitors, but the complaint does not specify what the deanonymized data might tell someone and nothing in the complaint suggests that this deanonymized data would be "the most recent price charged or quoted" for any individual hotel rooms. *Id*. at 11:12, 90–101. In other words, the complaint does not allege that "the most recent

ORDER GRANTING MOTION
TO DISMISS - 10

price charged or quoted" for any hotel room was either an input from the hotel operator defendants to STR or an output from STR to the hotel operator defendants in the form of STR reports and their associated data (whether that data was anonymized or effectively deanonymized).

      Nevertheless, plaintiffs cite *Container Corp.* in support of their argument that "direct evidence" of an agreement violating Section 1 has been sufficiently pled (*see* Dkt. #103 at 18:10–15), and plaintiffs repeatedly characterize the information shared by defendant hotel operators under STR's terms and conditions as being "price information," "pricing information," or "information about current and forward-looking . . . pricing data." *See, for example,* Dkt. # 1 at 4, 30, 52, 76. "Price information," as that phrase was used in another case cited by plaintiffs, means information conveying actual "wholesale and retail" prices to be charged for the product at issue. *See In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 445–47 (9th Cir. 1990). Considering this, *plus* the fact that STR's terms and conditions neither use the word "price" nor require the sharing of the current price of any hotel room, *and* the fact that plaintiffs' complaint does not actually allege the sharing of "the most recent price charged or quoted" for any hotel room, the Court finds plaintiffs' repeated use of phrases like "price information," "pricing information," and "information about current and forward-looking . . . pricing data" to be linguistic stretches. These linguistic stretches amount to plaintiffs offering merely conclusory factual assertions, unwarranted deductions of fact, and unreasonable inferences to support their charge of a conspiracy among the defendant hotel operators and STR to share price information. *See* Dkt. # 104, Ex. A. *See also Daniels-Hall*, 629 F.3d 992 at 998

ORDER GRANTING MOTION
TO DISMISS - 11

(9th Cir. 2010). Therefore, plaintiffs have insufficiently pled direct evidence of an agreement to share price information that violates Section 1. *See* Dkt. # 103 at 18:10; *Daniels-Hall*, 629 F.3d 992 at 998 (9th Cir. 2010). *See also Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir. 2023) (stating: "Direct evidence is smoking-gun evidence that 'establishes, without requiring any inferences' the existence of a conspiracy.").

### D. Plaintiffs Insufficiently Plead Parallel Conduct

Parallel conduct and "plus factors" may also be used to sufficiently plead an anticompetitive scheme that violates Section 1. *In re Musical Instruments*, 798 F.3d 1186 at 1194, n.7 (9th Cir. 2015). Here, plaintiffs contend they have sufficiently pled parallel conduct by showing in their complaint that each hotel operator "submits real-time, commercially sensitive pricing and supply data to STR, and in return receives standardized data from competitors based on this shared information." Dkt. # 103 at 20:13. As already discussed, plaintiffs allege that "standardized data" can be deanonymized but do not allege that deanonymizing the "standardized data" in STR reports could reveal the actual price of any hotel room. *See supra*. Plaintiffs also have not shown that the standard agreement between STR and hotel operators involves hotel operators submitting real-time pricing data for hotel rooms (as opposed to historical totals for rooms sold and available, broad revenue information, and total projected room revenue based on bookings for the next 365 days). *Id*. Thus, after removing from consideration plaintiffs' insufficiently supported claim that defendants are illegally exchanging price information, the Court is unable to determine what parallel conduct plaintiffs may be alleging beyond plaintiffs' contention (which the Court will accept as true at this stage) that the

ORDER GRANTING MOTION
TO DISMISS - 12

defendant hotel operators were all clients of STR within the relevant time period and received, in some form, STR's benchmarking reports. Because plaintiffs do not plead that the actual price of hotel rooms is either a required input from the defendant hotel operators to STR, or an output from STR back to the defendant hotel operators via STR's benchmarking reports, it is unclear to the Court why the alleged parallel conduct of contracting with STR would be of any significance in this matter.

The present case is therefore unlike *Duffy v. Yardi Systems, Inc.*, where this Court recently denied a motion to dismiss in a putative class action claiming antitrust violations, finding that plaintiffs had plausibly alleged parallel conduct by a group of defendant landlords. 758 F. Supp. 3d 1283, 1292 (W.D. Wash. 2024). In *Duffy*, plaintiffs sufficiently alleged that the defendant landlords had agreed to provide "RENTmaximizer," Yardi Systems' algorithmic pricing product, with their commercially sensitive information on apartment rental prices, in exchange for which the group of defendant landlords received pricing recommendations from "RENTmaximizer" that allowed them to charge supra-competitive rates. *Id*. Here, in contrast, the key missing ingredient is sufficient pleading that defendants gave STR any information on the actual prices of individual hotel rooms. Further heightening the contrast, STR's benchmarking reports are not an algorithmic pricing product like Yardi Systems' "RENTmaximizer," which allegedly offered price recommendations to individual clients by leveraging the knowledge gained from all clients who inputted their commercially sensitive price data. At most, plaintiffs here allege that STR reports are one of many inputs fed into actual pricing algorithms that are used by the hotel industry to "push higher rates" (pricing algorithms

ORDER GRANTING MOTION
TO DISMISS - 13

that, the Court notes, are not a direct subject of this lawsuit). Dkt. # 1 at 56–61. In other words, plaintiffs, having offered insufficient facts to show defendants are exchanging real-time pricing information for hotel rooms via STR reports, then tell this Court that STR reports are likely one of many inputs into algorithms that "push higher rates" for luxury hotel rooms. That is too attenuated and speculative a connection between STR reports and final hotel room prices to justify this Court finding that defendants' alleged parallel conduct of contracting with STR is significant in a case that is allegedly about "price fixing in its modern form." Dkt. # 1 at 4.[2]

For this same reason, the Court does not believe that plaintiffs' "preliminary economic analysis," which purports to show that defendant hotel operators "have been able to set higher prices compared to other luxury hotels," is on its own a sufficient pleading of parallel conduct relevant to this antitrust claim. While defendants dispute the validity of plaintiffs' "preliminary economic analysis" on many grounds (*see* Dkt. # 91 at 20–21, 25–27), even assuming *arguendo* that plaintiffs have provided a valid economic analysis it suffers from the same speculative and attenuated connection to defendants' use of STR reports described above. This is because, as plaintiffs' complaint makes clear, STR reports are likely one of many inputs fed into actual pricing algorithms used by the hotel industry to "push higher rates." Dkt. # 1 at 56–61. This creates a hypothetical connection between STR reports and final hotel prices that is too

---

[2] It may also be too speculative and attenuated to sufficiently allege that an antitrust injury "flows from" plaintiffs' alleged conduct of contracting with STR, *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)), but this Court need not reach that issue given its finding that plaintiffs here have failed to sufficiently plead a contract, combination, or conspiracy.

ORDER GRANTING MOTION
TO DISMISS - 14

speculative and attenuated to sufficiently place plaintiffs' "preliminary economic analysis" or its results "in a context that raises a suggestion of a preceding agreement" to fix hotel room prices using STR reports. *Twombly*, 550 U.S. 554 at 557 (2007). Therefore, plaintiffs' have failed to sufficiently plead parallel conduct through either evidence of defendants' alleged parallel agreements with STR or defendants' alleged parallel implementation of higher prices compared to other luxury hotels. Because of this, the Court need not evaluate the merits of the plus factors offered by plaintiffs.

### E.  Plaintiffs Insufficiently Plead a Hub-and-Spoke Conspiracy

An anticompetitive scheme in violation of Section 1 may also be inferred from a hub-and-spoke conspiracy. In support of the contention that a hub-and-spoke conspiracy has been sufficiently pled here, plaintiffs quote *PLS.Com, LLC v. Nat'l Ass'n of Realtors*: "Acceptance by competitors, without previous agreement, of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce, is sufficient to establish an unlawful conspiracy under the Sherman Act." 32 F.4th 824 at 843 (9th Cir. 2022) (quoting *Interstate Circuit, Inc. v. U.S.*, 306 U.S. 208, 227 (1939)); *see* Dkt. # 103 at 18:22–19:9. Here, plaintiffs allege that public STR materials advertising its benchmarking reports constitute the invitation, the defendant hotel operators' alleged agreements with STR constitute the acceptance, and the necessary consequence of the agreements and acceptances is an unlawful conspiracy to fix luxury hotel prices. Setting aside the question of whether plaintiffs have sufficiently shown the "rim" of this alleged hub-and-spoke conspiracy by plausibly demonstrating "agreement among the spokes," *In re Musical Instruments & Equip. Antitrust*

ORDER GRANTING MOTION
TO DISMISS - 15

*Litig.*, 798 F.3d 1186 at 1192 (9th Cir. 2015), this attempt at showing a hub-and-spoke conspiracy fails at a basic level, and for the same reason that plaintiffs' attempt at showing parallel conduct fails. On the hub-and-spoke conspiracy allegation, plaintiffs fail to sufficiently show grounds for inference of an agreement between the alleged hub (STR) and the spokes (defendant hotel operators) because plaintiffs have not shown that either the alleged hub or the alleged spokes are receiving any hotel room pricing information from, or giving any hotel room pricing information to, each other. Therefore, the Court cannot find that the hub-and-spoke arrangement described by plaintiffs constitutes sufficient pleading of indirect evidence of an agreement to engage in "price fixing in its modern form." Dkt. # 1 at 4.

### F. The Court Need Not, and Does Not, Reach the Restraint of Trade or Injury Issues

Because plaintiffs have not sufficiently pled a contract, combination, or conspiracy either directly or indirectly, the Court need not, and does not, reach the question of whether plaintiffs have met the pleading standard for the other required elements of a Section 1 violation: intent to harm or restrain trade or commerce, and actual injury.

### G. Plaintiffs Will Be Granted Leave to Amend

Plaintiffs' complaint offers a lengthy theory that defendants have engaged in "price fixing in its modern form." Dkt. # 1 at 4. *See also* Dkt. 89 (the Court granting the parties' stipulated motion for leave to file over-length motions and briefs). While the complaint covers a lot of ground, some of it relatively complex, the complaint's description of the alleged Section 1 violation by defendants ultimately fails to "rise above the speculative level," *Twombly*, 550 U.S.

ORDER GRANTING MOTION
TO DISMISS - 16

544 at 555 (2007), in that is fails to introduce any non-conclusory facts, warranted deductions of fact, or reasonable inferences that would allow this Court to reasonably infer that actual prices of individual hotel rooms are being shared with STR by the defendant hotel operators. *Daniels-Hall*, 629 F.3d 992 at 998 (9th Cir. 2010). If actual hotel room prices are not an input to STR from the defendant hotel operators, the Court struggles to understand how they could be an output from STR to its hotel operator clients. Given this, the Court further struggles to see how plaintiffs' allegations that STR reports are potentially one of many data points fed into hotel pricing algorithms is of any great significance in a putative class action that does not target the sale, use, or operation of luxury hotel pricing algorithms. That said, the Court recognizes that the theory behind the complaint is somewhat complex and might appear less speculative and conclusory if conveyed differently, and with definitions that outline precisely what plaintiffs mean when they deploy phrases such as "price information," "pricing information," and "information about current and forward-looking . . . pricing data." *See, for example* Dkt. # 1 at 4, 30, 52, 76. At present, as discussed above, it appears to this Court that plaintiffs' complaint is rounding up to "price information" various types of information that do not actually include individual hotel room prices.

As Judge Joan B. Gottshall of the United States District Court for the Northern District of Illinois recently wrote when granting a motion to dismiss with leave to amend in a similar case, "[t]his is not to say that information sharing cannot be an appropriate basis for a Sherman Act section 1 conspiracy case," but that "the nature of the information exchanged is a major factor in any information-sharing case." *Segal v. Amadeus IT Grp., S.A.*, No. 24-CV-1783, 2025 WL

ORDER GRANTING MOTION
TO DISMISS - 17

963751, at *6 (N.D. Ill. Mar. 31, 2025) (quotation marks omitted). Like Judge Gottshall, this Court has been presented with "unfamiliar" information about the alleged inner-workings of the hotel industry, must rely on "what the parties have told it," and at this point finds that a Sherman Act violation has been insufficiently pled. *Id*. Therefore, the Court will grant plaintiffs leave to amend within 30 days if they have facts and explanations to present that can nudge this complaint across the line to sufficiently pled. Any amended complaint should also take into account the Ninth Circuit's August 15, 2025 opinion in *Gibson et al. v. Cedyn Group, LLC et al.*, No. 24-3576.

### III. Conclusion

For all to foregoing reasons, defendants "Joint Motion to Dismiss" (Dkt. # 91) is GRANTED. Plaintiffs shall be given leave to amend their complaint within 30 days as described above.

IT IS SO ORDERED.

DATED this 29th day of August, 2025.

*[signature]*
Robert S. Lasnik
United States District Judge