THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEANETTE PORTILLO, *et al.*,

                Plaintiffs,

   v.

COSTAR GROUP, INC., *et al.*,

                Defendants.

Case No. 2:24-cv-00229-RSL

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

NOTE ON MOTION CALENDAR:
January 6, 2026

**ORAL ARGUMENT REQUESTED**

**[REDACTED VERSION]**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 2

    A.    Plaintiffs' Original Complaint And Defendants' Motion To Dismiss ................................................................................................... 2

    B.    The Court's Motion To Dismiss Decision ............................................... 3

    C.    The FAC's Allegations ........................................................................... 4

        1.   The Hotel Defendants' Agreements With STR ............................ 4

        2.   STR's Benchmarking Reports ...................................................... 5

        3.   The Alleged "Luxury Hotel Metropolitan Markets" And The Hotel Defendants ................................................................ 10

        4.   The Alleged Conspiracy To Exchange "Pricing Information" ............................................................................... 10

III.    LEGAL STANDARD ........................................................................................... 11

IV.     ARGUMENT ........................................................................................................ 11

    A.    Plaintiffs Still Do Not Allege An Agreement To Exchange Competitively Sensitive Information ..................................................... 12

        1.   Plaintiffs Do Not Allege Direct Evidence Of An Agreement.................. 12

        2.   Plaintiffs Still Have Not Alleged Parallel Conduct Or Plus Factors To Plead An Agreement Through Circumstantial Evidence.................................................................................... 14

            A.   Plaintiffs' Allegations Of Parallel Conduct Remain Deficient............................................................................ 14

            B.   Plaintiffs' "Plus Factors" Remain Insufficient ............................ 16

        3.   Plaintiffs Also Do Not Allege A Hub-And-Spoke Conspiracy ............................................................................... 19

    B.    Plaintiffs Still Do Not Allege An Unreasonable Restraint Of Trade.................. 20

        1.   Plaintiffs Do Not Allege Any Anticompetitive Effects ........................... 20

            A.   Plaintiffs Do Not Allege Direct Evidence Of Anticompetitive Effects ................................................. 20

            B.   Plaintiffs' "Indirect" Evidence Fares No Better ......................... 22

        2.   Plaintiffs Do Not Plausibly Allege A Relevant Product Or Geographic Market ..................................................................... 26

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

C.    Plaintiffs Still Do Not Allege Any Antitrust Injury ............................................. 29

V.    CONCLUSION .......................................................................................................... 30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*1-800 Contacts, Inc. v. FTC,*
5     1 F.4th 102 (2d Cir. 2021) ...................................................................................21

6 *Apple Inc. v. Psystar Corp.,*
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) .........................................................26, 28
7

8 *Brantley v. NBC Universal, Inc.,*
    675 F.3d 1192 (9th Cir. 2012) ............................................................................12

9 *Brown Shoe Co. v. United States,*
10     370 U.S. 294 (1962)............................................................................................27

11 *Brown v. JBS USA Food Co.,*
    2023 WL 6292717 (D. Colo. Sept. 27, 2023)....................................................14
12

13 *Burtch v. Milberg Factors, Inc.,*
    662 F.3d 212 (3d Cir. 2011)................................................................................12

14 *Byrd v. Bank of Am.,*
15     2015 WL 13919187 (C.D. Cal. Apr. 22, 2015) .................................................30

16 *In re Citric Acid Litig.,*
    191 F.3d 1090 (9th Cir. 1999) ............................................................................17
17

18 *Cornish-Adebiyi v. Caesars Ent., Inc.,*
    2024 WL 4356188 (D.N.J. Sept. 30, 2024) ......................................................20

19 *Coronavirus Rep. v. Apple, Inc.,*
20     85 F.4th 948 (9th Cir. 2023) ..............................................................................27

21 *Dai v. SAS Inst. Inc.,*
    2025 WL 2078835 (N.D. Cal. July 18, 2025).....................................16, 18, 19, 20
22

23 *Five Smiths, Inc. v. Nat'l Football League Players Ass'n,*
    788 F. Supp. 1052 (D. Minn. 1992)...............................................................24, 26

24 *Gamboa v. Apple Inc.,*
25     2025 WL 660190 (N.D. Cal. Feb. 28, 2025) .....................................................28

26 *Gibson v. Cendyn Grp., LLC,*
    148 F.4th 1069 (9th Cir. 2025) ......................................................12, 15, 17, 18
27

28 *Gibson v. MGM Resorts Int'l,*
    2023 WL 7025996 (D. Nev. Oct. 24, 2023) ......................................................16

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

iii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...................................................................18

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ................................................................................27

*Hilton Int'l Co. v. Hilton Hotels Corp.*,
  888 F. Supp. 520 (S.D.N.Y. 1995) ..........................................................................28

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
  733 F. App'x 380 (9th Cir. 2018) ............................................................................31

*Honey Bum, LLC v. Fashion Nova, Inc.*,
  63 F.4th 813 (9th Cir. 2023) ...................................................................................12

*Intel Corp. v. Fortress Inv. Grp. LLC*,
  2022 WL 16756365 (9th Cir. Nov. 8, 2022).............................................20, 21, 29

*Interstate Circuit Inc. v. United States*,
  306 U.S. 208 (1939).........................................................................................19, 20

*Krehl v. Baskin-Robbins Ice Cream Co.*,
  664 F.2d 1348 (9th Cir. 1982) ................................................................................11

*In re Loc. TV Advert. Antitrust Litig.*,
  2022 WL 3716202 (N.D. Ill. Aug. 29, 2022) ......................................13, 22, 23, 24

*Maple Flooring Mfrs.' Ass'n v. United States*,
  268 U.S. 563 (1925)................................................................................................17

*Mayor & City Council of Balt. v. Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013).....................................................................................12

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
  924 F.2d 1484 (9th Cir. 1991) ................................................................................28

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015)................................................................14, 17, 18, 19

*Ni-Q, LLC v. Prolacta Bioscience, Inc.*,
  2021 WL 3145968 (D. Or. July 26, 2021).............................................................26

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018)......................................................................................20, 21, 27

*In re Online DVD Rental Antitrust Litig.*,
  2009 WL 4572070 (N.D. Cal. Dec. 1, 2009) .........................................................30

*Parents for Privacy v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ................................................................................31

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION TO SEAL
Case No. 2:24-cv-00229-RSL

iv

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ....................................................................................8

*Perdue Farms, Inc. v. Nat'l Union Fire Ins. Co.*,
517 F. Supp. 3d 458 (D. Md. 2021).........................................................................23

*In re Pork Antitrust Litig.*,
781 F. Supp. 3d 758 (D. Minn. 2025)......................................................................19

*Portillo v. CoStar Group, Inc.*,
2025 WL 2495053 (W.D. Wash. Aug. 29, 2025) ............................................. *passim*

*In re RealPage, Inc., Rental Software Antitrust Litig.*,
2023 WL 9004806 (M.D. Tenn. Dec. 28, 2023)......................................................22

*Segal v. Amadeus IT Grp., S.A.*,
2025 WL 963751 (N.D. Ill. Mar. 31, 2025)......................................................19, 24

*Smart v. Emerald City Recovery, LLC*,
2018 WL 3569873 (W.D. Wash. July 25, 2018) ......................................................8

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .............................................................................29, 30

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
547 F. Supp. 3d 1086 (C.D. Cal. 2007) ..................................................................28

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ..................................................................................12

*Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*,
512 F.2d 1264 (9th Cir. 1975) ................................................................................28

*United States v. Container Corp. of Am.*,
393 U.S. 333 (1969)..............................................................................22, 23, 24, 25

*United States v. U.S. Gypsum Co.*,
438 U.S. 422 (1978)..........................................................................................11, 25

*In re Zhejiang Topoint Photovoltaic Co., Ltd.*,
2015 WL 2260647 (D.N.J. May 12, 2015)..............................................................25

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION TO SEAL
Case No. 2:24-cv-00229-RSL

v

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1  **I.      INTRODUCTION**

2      Plaintiffs' First Amended Class Action Complaint, Dkt. 121 ("FAC"), should be dismissed,

3  this time with prejudice, because Plaintiffs have not fixed the deficiencies the Court identified with

4  their original complaint.  The FAC confirms that Plaintiffs do not, and cannot, plead an agreement

5  among the Hotel Defendants[1] to exchange competitively sensitive information, including any

6  pricing information, through STR's benchmarking reports.  Nor do Plaintiffs plausibly allege that

7  any purported agreement to exchange information through STR is likely to cause anticompetitive

8  effects in any relevant market, or that the supposedly "supra-competitive" prices for "luxury" hotel

9  rooms that Plaintiffs allegedly paid are connected to the Hotel Defendants' receipt of STR's

10  reports.  Each of these defects is fatal to Plaintiffs' claims.

11      ***First***, Plaintiffs still fail to plead that the Hotel Defendants agreed to share competitively

12  sensitive information through STR's benchmarking reports, or that through those reports the Hotel

13  Defendants receive each other's competitively sensitive information, including the price that any

14  hotel charged or intends to charge for any hotel room.  On this point, the FAC supplies nothing

15  new.  The Hotel Defendants' written agreements with STR, which supposedly form the basis for

16  Plaintiffs' amended allegations, are entirely consistent with STR's terms and conditions, which

17  the Court already considered and held were insufficient to plead an agreement among the Hotel

18  Defendants.  Plaintiffs' new allegations show no more than what they alleged in their original

19  complaint:  that the Hotel Defendants share historical revenue and occupancy data (*i.e.*, rooms

20  available, rooms sold, and total revenue) with STR, and in return, the receive a benchmarking

21  report that provides revenue and occupancy data that is aggregated, averaged, and anonymized

22  across at least several hotels, if not more.  Plaintiffs again mischaracterize this revenue and

23  occupancy data as "pricing information," *see, e.g.*, FAC ¶ 2 n.2, but the Court already held it is

24  not.  *Portillo v. CoStar Grp., Inc.*, 2025 WL 2495053, at *4-5 (W.D. Wash. Aug. 29, 2025).  Like

25  Plaintiffs' original complaint, the FAC's allegations are predicated on "linguistic stretches" that

26  _____

27  [1] The "Hotel Defendants" are Accor Management US Inc ("Accor"), Hilton Domestic Operating Company, Inc. ("Hilton"), Hyatt Corporation ("Hyatt"), Loews Hotels Holding Corporation ("Loews"), Marriott International, Inc. ("Marriott"), and Six Continents Hotels, Inc. ("Six Continents" or "IHG").  "STR" refers to STR, LLC.

28

1    are insufficient to plausibly allege an agreement under any theory.  *See id.* at *3-7.

2        **Second**, and for multiple reasons, the FAC also still does not plausibly allege that any

3    supposed agreement to exchange information through STR's benchmarking reports is likely to

4    result in anticompetitive effects in any relevant market.  Plaintiffs still have not alleged viable

5    product or geographic markets, a necessary precondition to measuring any purported

6    anticompetitive effects.  And even if they had, the aggregated, anonymized, and historical non-

7    price data that STR's benchmarking reports provide is the type of data that courts, including the

8    Supreme Court and Ninth Circuit, have recognized can be procompetitive.  Plaintiffs have not

9    plausibly alleged that the exchange of such information is likely to be anticompetitive because

10   they have not plausibly alleged that the "luxury" hotel industry is highly concentrated, or that

11   "luxury" hotel rooms are fungible or purchased only for immediate, short-term use.  Plaintiffs try

12   to distract from these defects with a "preliminary economic analysis" that purportedly shows

13   "supra-competitive" pricing.  But their model does not show that the Hotel Defendants' supposedly

14   "supra-competitive" prices were caused by STR's reports.

15       **Third**, Plaintiffs still do not allege any antitrust injury.  They do not allege that the "supra-

16   competitive" prices for "luxury" hotel rooms that they allegedly paid are at all connected to the

17   Hotel Defendants' receipt of STR's benchmarking reports.  Instead, Plaintiffs continue to allege

18   that the Hotel Defendants rely on various revenue management platforms to determine their

19   pricing—supposed "pricing algorithms" that are not at issue in this litigation—and that STR's

20   reports might be, but are also allegedly prohibited from being, one of many data sets that are fed

21   into those revenue management platforms to drive hotel room prices higher.  The connection

22   between the Hotel Defendants' receipt of STR's reports and the prices that Plaintiffs supposedly

23   paid is even more speculative and attenuated than in their original complaint.

24       Plaintiffs cannot cure these fundamental defects, and the Court should dismiss their claims

25   with prejudice.

26   **II.    BACKGROUND**

27       **A.    Plaintiffs' Original Complaint And Defendants' Motion To Dismiss**

28       Plaintiffs alleged in their original complaint that Defendants violated Section 1 of the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   Sherman Act by agreeing to exchange competitively sensitive information through STR's reports.

2   *See generally* Compl., Dkt. 1 ("Compl.").  Specifically, Plaintiffs alleged that the Hotel Defendants

3   (and thousands of non-Defendant hotels that contract with STR to receive STR's reports) provide

4   STR with historical data regarding total rooms available, rooms sold, and room revenue for a

5   specified time period, *id.* ¶¶ 16, 69, and in return receive reports containing aggregated, averaged,

6   and anonymized data that a hotel can use to compare its historical performance against a set of

7   competitors and the broader industry.  *Id.* ¶¶ 75, 134.  The original complaint alleged that STR's

8   reports contain historical data regarding occupancy rate, average daily rate ("ADR"), and revenue

9   per available room ("RevPAR").  *Id.* ¶ 71.  Plaintiffs labeled those data "pricing information," but

10  did not allege that any hotel provided or received any information about the actual price charged

11  for any hotel room.  *See id.* ¶¶ 60-102.  Plaintiffs likewise did not allege that STR recommended

12  any prices or pricing strategy.  *See id.* ¶¶ 141-55.  Instead, Plaintiffs alleged that some Hotel

13  Defendants use STR reports together with third-party "revenue management" products to guide

14  their pricing strategies.  *Id.* ¶¶ 12, 141-55.

15          Defendants moved to dismiss the complaint.  *See generally* Dkt. 91.  Among other things,

16  Defendants argued that Plaintiffs could not plausibly allege an agreement among the Hotel

17  Defendants to exchange competitively sensitive information because STR's reports did not reflect

18  any competitively sensitive information, but rather, reported only aggregated, averaged,

19  anonymized data on occupancy, ADR, and RevPAR, and did ***not*** include the price of any hotel

20  room.  *Id.* at 10-17, 22-23.  Defendants also argued that the Hotel Defendants could not plausibly

21  have raised or fixed "luxury" hotel room prices based on STR's reports, and that Plaintiffs could

22  not connect their purported injury to the receipt of STR's reports.  *Id.* at 21-29.

23          **B.      The Court's Motion To Dismiss Decision**

24          The Court granted Defendants' motion to dismiss, holding that Plaintiffs had not plausibly

25  alleged an agreement among the Hotel Defendants to exchange competitively sensitive

26  information.  *Portillo*, 2025 WL 2495053 at *2-7.  As the Court explained, each of Plaintiffs'

27  theories for pleading an agreement failed because Plaintiffs did not allege that any hotel shares

28  with STR, or that STR discloses in its benchmarking reports, the price that any hotel charged or

1    intends to charge for any particular hotel room. *Id.* at *3-7. The Court made clear that Plaintiffs'

2    description of certain STR report data as "pricing information" were conclusory "linguistic

3    stretches" that could not make up for the fact that STR's terms and conditions neither "use the

4    word 'price' nor require the sharing of the current price of any hotel room . . . ." *Id.* at *5.

5         The Court granted Plaintiffs leave to amend, but warned that it "struggle[d]" to see how

6    Plaintiffs could allege a viable Section 1 claim "[i]f actual hotel room prices are not an input to

7    STR from the defendant hotel operators" or "an output from STR. . . ." *Id.* at *7. And the Court

8    likewise "struggle[d] to see how plaintiffs' allegations that STR reports are potentially one of many

9    data points fed into hotel pricing algorithms is of any significance in a putative class action that

10   does not target the sale, use, or operation of luxury hotel pricing algorithms." *Id.*

11        **C.    The FAC's Allegations**

12        Plaintiffs amended their complaint, asserting they had cured the deficiencies the Court

13   identified based on the terms of STR's agreements with the Hotel Defendants that were produced

14   in discovery. *See, e.g.*, FAC ¶ 1.[2] But Plaintiffs' amended allegations add no new material facts

15   and only undermine the plausibility of any purported agreement.

16             **1.    The Hotel Defendants' Agreements With STR**

17        Plaintiffs allege that the Hotel Defendants' agreements with STR show that they provide

18   STR with "pricing information," FAC ¶ 86—employing the same "linguistic stretch" the Court

19   discounted as "conclusory" in its motion to dismiss ruling. Just like STR's terms and conditions,

20   however, the Hotel Defendants' contracts with STR confirm that the Hotel Defendants provide

21   STR only with historical revenue and occupancy data, *i.e.*, rooms available, rooms sold, and room

22   revenue data, in order to receive a benchmarking report—***not*** actual hotel room prices. FAC ¶¶ 87-

23   104; *see also* FAC Exs. 4-7.

24   ████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████

27

28   _____
     [2] Defendants treat the FAC's allegations as true, as they must, only for purposes of this motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200



2.    **STR's Benchmarking Reports**

The rest of the FAC remains largely unchanged from Plaintiffs' original complaint, and Plaintiffs' warmed-over allegations again show that STR's benchmarking reports consist of aggregated and anonymized data and do not contain any actual hotel room prices.

***STAR Reports***.  Plaintiffs allege that hotels subscribing to STR's STAR Report agree to provide STR with data regarding their total rooms available, total rooms sold, and total room revenue for a specified time period.  FAC ¶¶ 3, 10, 54, 57-62; *see also* FAC Ex. 2 at 3 (defining "Hotel Data").  Rooms available is the total number of rooms at a hotel property multiplied by the days in the reporting period.  FAC ¶ 57.  Rooms sold reflects the total number of hotel rooms sold during the specified period, excluding complimentary rooms.  *Id.* ¶ 59.  And room revenue is the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    total revenue generated from the rental of all hotel rooms (regardless of type) for the reporting

2    period. *Id.* ¶¶ 61-62.  Plaintiffs' allegations regarding the information that hotels provide to STR

3    for STAR Reports are unchanged.  *Compare* FAC ¶¶ 54-62 *with* Compl. ¶¶ 16, 68-69.  Plaintiffs

4    (again) attempt to characterize the revenue and occupancy data that hotels provide to STR as

5    "pricing information," and suggest that the data is "information about actual hotel room prices,"

6    FAC ¶ 2 n.2, 54, 56-57, 62, but Plaintiffs do not allege that any hotel provides STR with any price

7    that it charged or quoted for any particular hotel room.  Plaintiffs still do not allege that

8    "information about actual hotel room prices" means the actual price charged or quoted for any

9    hotel room.

10          The STAR Report that a subscribing hotel receives reflects aggregated, averaged, and

11   anonymized revenue and occupancy data from several hotels or the broader industry. *See id.* ¶¶ 70,

12   76, 83; FAC Ex. 1 (sample STR Report); FAC Ex. 2 at 3 (defining "Hotel Benchmarking

13   Deliverables" as "Hotel Data and its derivative [key performance indicators] compared against

14   comparable and ***aggregated*** data provided by other Hotel Benchmarking Participants") (emphasis

15   added).  Specifically, STAR Reports provide participating hotels with aggregated, averaged, and

16   anonymized data comprising multiple hotels' occupancy rate, ADR, and RevPar.  FAC ¶¶ 63-84;

17   FAC Ex. 1.  An "exemplar" report is attached as Exhibit 1 to the FAC, an excerpt from which is

18   below, and illustrates how a STAR Report presents this aggregated and anonymized data.  FAC

19   ¶ 70 n.37; FAC Ex. 1.

20

21

22

23

24

25

26

27

28

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

**Tab 2 - Monthly Performance at a Glance - My Property vs. Competitive Set**

Any Hotel    123 Any Street    Any City, Any State  99999    (555) 555-5555
STR # 98765    ChainID: 999999    MgtCo: None    Owner: None
For the Month of: July 2006    Date Created: August 24, 2006    Monthly Competitive Set Data Excludes Subject Property

| July 2006 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Occupancy (%) | | | ADR ($) | | | RevPAR ($) | | |
| | My Prop | Comp Set | Index | My Prop | Comp Set | Index | My Prop | Comp Set | Index |
| Current Month | 89.8 | 90.5 | 99.3 | 234.89 | 229.88 | 102.2 | 210.89 | 207.93 | 101.4 |
| Year To Date | 80.9 | 86.5 | 93.4 | 248.55 | 241.02 | 103.1 | 201.01 | 208.60 | 96.4 |
| Running 3 Month | 82.0 | 91.5 | 89.6 | 266.87 | 255.11 | 104.6 | 218.75 | 233.50 | 93.7 |
| Running 12 Month | 84.9 | 87.7 | 96.8 | 259.98 | 254.12 | 102.3 | 220.81 | 222.92 | 99.1 |

| July 2006 vs. 2005 Percent Change (%) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Occupancy | | | ADR | | | RevPAR | | |
| | My Prop | Comp Set | Index | My Prop | Comp Set | Index | My Prop | Comp Set | Index |
| Current Month | 2.7 | 0.7 | 2.0 | 10.0 | 8.8 | 1.1 | 12.9 | 9.5 | 3.1 |
| Year To Date | -8.5 | 3.2 | -11.3 | 14.3 | 10.8 | 3.2 | 4.6 | 14.3 | -8.5 |
| Running 3 Month | -9.8 | 1.1 | -10.7 | 15.2 | 11.7 | 3.1 | 3.9 | 12.9 | -7.9 |
| Running 12 Month | -5.6 | 2.4 | -7.7 | 15.2 | 13.8 | 1.2 | 8.8 | 16.5 | -6.6 |

FAC Ex. 1 at 3

Occupancy rate is a percentage that reflects "the number of rooms sold" divided by "the number of rooms available." FAC ¶ 80. ADR is calculated by "dividing room revenue by rooms sold," *id.* ¶ 66, and reflects "the average paid for rooms sold in a given time period." *Id.* ¶ 65. Plaintiffs say that ADR is "the realized average price that guests actually paid per occupied room," but ADR, by definition, is an unweighted average across all room types that a hotel sold in a given time period. *Id.* Given variations in room size and features, as well as rate changes over time, this average cannot reflect the actual price that any customer paid for any particular hotel room or a price that any hotel intends to charge in the future. RevPar is calculated by dividing the total revenue generated from all hotel rooms sold—again regardless of room type—by the total rooms available and reflects the average "revenue generated per room regardless of if rooms are occupied or not." *Id.* ¶ 74. Plaintiffs call RevPar an "effective realized price," but by Plaintiffs' own description, RevPar is just the average revenue generated per available hotel room and does not reflect the price that any customer paid for any hotel room (or the revenue that a hotel generated for any hotel room). *Id.* ¶¶ 6, 73-74.

For those three metrics, a STAR Report permits a participating hotel to evaluate its own

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

historical performance against various aggregated and averaged groups of hotels, including in a particular geographic area, hotels within a sub-tract (*e.g.*, luxury, upper upscale, economy), and/or a self-selected "competitive set" of other hotels.  *See, e.g.,* FAC ¶¶ 70, 76, 83; FAC Ex. 1.  The frequency at which a hotel receives a STAR Report depends on the cadence at which the hotel shares its revenue and occupancy data with STR.  FAC ¶ 115.

     ***Competitive Sets***.  In order to provide a meaningful benchmark, participating hotels may select a "competitive set," or "comp set," which is a group of hotels against which the participating hotel would like to compare its past performance.  FAC ¶¶ 9, 105-106.  There is no maximum number of competing hotels that may be placed in a hotel's comp set but STR's terms and contracts require that there must be at least three other hotels—*i.e.*, at least four hotels being compared in total—and there are typically over five other hotels in any hotel's comp set.  FAC ¶ 183; FAC Ex. 1 at 3; FAC Ex. 8 at 1; *see also* Decl. Ex. 1 at 16, Lodging, Comp Sets Revisited (Oct. 26, 2011) ("[T]he national average is 5.57 properties per comp set").[3]  Participating hotels select their own comp sets, and there is no requirement that they be reciprocal.  FAC ¶ 183; FAC Ex. 8.  In other words, Hotel A's comp set may include Hotel B, but that does not mean that Hotel B's comp set includes Hotel A.  Plaintiffs do not allege that the Hotel Defendants have conspired to coordinate or align their comp sets.

     The comp set data that a subscribing hotel receives in a STAR Report reflects averaged and aggregated data from all of the hotels in the comp set (*e.g.*, the average occupancy rate, ADR, or RevPar across all hotels in the comp set).  FAC ¶¶ 60, 70, 76, 83, 183; FAC Ex. 1.  STR takes many precautions to ensure that data from an individual hotel cannot be identified in any STR report.  *See* FAC Ex. 8.  For example, a change to a comp set cannot "be made if data of a single property is isolated in any way," and STR performs "isolation checks" to prevent "individual

---

[3] "Decl." refers to the Declaration of Lawrence Buterman, filed concurrently.  Plaintiffs rely on and (selectively) quote the article attached as Ex. 1 to the Decl., and it is thus incorporated by reference into the FAC.  *See* FAC ¶ 108; *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998) (a court "may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading") (citation and internal quotation omitted); *Smart v. Emerald City Recovery, LLC*, 2018 WL 3569873, at *2 (W.D. Wash. July 25, 2018) (considering a document incorporated by reference into the complaint).

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

property data" from being isolated from report to report. *Id.* at 3-4.  These and other safeguards ensure that data provided through STR reports remains anonymized.  *See id.*; *see also* FAC Ex. 1 at 6 ("Any request to modify your comp set must include at least two changes to protect confidentiality.").  STR's terms and conditions, and its agreements with its customers, also require that STR keep the data that hotels provide confidential, and STR does not share that data with anyone other than the hotel that provided it except in aggregated and anonymized form.  *See, e.g.*, FAC Ex. 2 at 5 ("no Hotel Benchmarking Deliverable shall directly or indirectly identify [the providing hotel] as the owner/provider of any specific data . . . ."); FAC Ex. 4 at STR00000092

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

Plaintiffs state in conclusory fashion that the aggregated data in STR's reports is "loosely anonymized" because, according to speculation from a single confidential witness, "hotels can deanonymize STR reports" by partnering with another hotel and coordinating their comp sets, and supposedly do so "quite frequently."  FAC ¶¶ 142, 180, 183.  Plaintiffs, however, do not allege any instance where two hotels even attempted to coordinate and deanonymize STR's reports, nor do they allege that any Hotel Defendant engages in this practice, or that any "deanonymized" data from any STR report would reveal any price for any particular hotel room.

***Forward STAR Reports***.  In "certain" unidentified U.S. markets, but not all of them, STR offers Forward STAR Reports.  *Id.* ¶ 123.  Hotels receiving Forward STAR Reports provide STR with two types of non-price "booking" data: (i) adjusted rooms available, which is the "total number of rooms a property has available in its inventory to be booked;" and (ii) rooms booked, which is "any room which has been subtracted/deducted from the Adjusted Rooms Available due to a booking."  *Id.* ¶ 124.  STR then aggregates, anonymizes, and averages that data and publishes it in a report showing "occupancy on the books" for the next 90 days (weekly report) and 12 months (monthly report).  *Id.* ¶ 125.  Plaintiffs do not allege that any of the Hotel Defendants receive

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   Forward STAR Reports, nor that they are available in any of Plaintiffs' purported geographic

2   markets.

### 3.    The Alleged "Luxury Hotel Metropolitan Markets" And The Hotel Defendants

5   Plaintiffs attempt to allege "Luxury Hotel Metropolitan Markets," which they define as

6   hotels with "four or five star ratings on Kayak" in fifteen metropolitan areas in the U.S.  ¶¶ 208

7   n.140, 214-231.  Plaintiffs allege that the hotel industry recognizes "luxury hotels" as a distinct

8   market, but the article Plaintiffs cite for support categorizes only "five star" hotels as "luxury,"

9   and notes that the "five star" market is "segmented by location, services, target audience, and

10  geography."  Decl. Ex. 2 at 1, MarketWide Research, *Five Star Hotel Market: Elevating Luxury*

11  *Hospitality*.[4]  Plaintiffs never define what constitutes a "four or five star" hotel on Kayak, and

12  Plaintiffs recognize that there are "[v]arious independent organizations" that provide "star ratings."

13  FAC ¶ 212.

14  Plaintiffs allege that the Hotel Defendants have certain "luxury" hotel brands but do not

15  allege that any Hotel Defendant operates any individual hotel that carries their "luxury" brand,

16  much less that they operate any specific "luxury" hotel.  *Id.* ¶¶ 23-28.  For example, there is no

17  allegation that Marriott owns or is responsible for operating, including setting prices for, all hotels

18  that operate under the JW Marriott, Ritz-Carlton, St. Regis, W Hotels, Westin, Gaylord, Sheraton

19  or Renaissance brands.  *Id.* ¶ 27.

### 4.    The Alleged Conspiracy To Exchange "Pricing Information"

21  Plaintiffs allege that the Hotel Defendants' receipt of STR's benchmarking reports resulted

22  in "supra-competitive prices" for "luxury" hotel rooms in fifteen metropolitan areas in the U.S.

23  *Id.* ¶¶ 2, 12, 216, 253.  As in their original complaint, Plaintiffs do not allege that STR's reports

24  recommend any hotel room prices or pricing strategies.  Instead, Plaintiffs continue to allege that

25  the Hotel Defendants use various third-party "revenue management systems" to guide their pricing

26  strategies and decisions, and that STR's reports are just "one of the historical data set points" that

27

28  [4] Plaintiffs rely on this article, and it is thus incorporated by reference into the FAC.  *See* FAC ¶ 211 n.141; *see also supra* n.3.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    are "fed" into such "pricing algorithms," which are responsible for driving prices for "luxury"

2    hotel rooms higher. *Id.* ¶¶ 202-206; *see also* Compl. ¶ 150.  Elsewhere, however, Plaintiffs allege

3    that STR's terms prohibit subscribing hotels from using data received from STR in their revenue

4    management systems.  *See* FAC ¶ 117.

5    **III.    LEGAL STANDARD**

6            "The question for the Court on a motion to dismiss is whether the facts alleged in the

7    complaint sufficiently state a 'plausible' ground for relief."  *Portillo*, 2025 WL 2495053, at *2

8    (citation omitted).  In the context of a Section 1 claim, "a complaint must contain 'enough factual

9    matter (taken as true) to suggest that an agreement was made.'"  *Id.*  While the Court "must accept

10    factual allegations in the complaint as true and construe the pleadings in the light most favorable

11    to the nonmoving party," the Court is not "required to accept as true allegations that contradict

12    exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that

13    are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Id.* (citation

14    omitted).

15    **IV.    ARGUMENT**

16            The FAC should be dismissed because Plaintiffs still do not plausibly allege any element

17    of their Section 1 claim: they do not allege the exchange of any competitively sensitive

18    information, such as pricing information, and they do not allege any unlawful agreement to share

19    such information.  But even if Plaintiffs did plead the exchange of pricing information, their claim

20    would still fail.  Information sharing claims brought under Section 1 are evaluated under the rule

21    of reason because such exchanges "do[] not invariably have anticompetitive effects."  *United*

22    *States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978); *accord Krehl v. Baskin-Robbins Ice*

23    *Cream Co.*, 664 F.2d 1348, 1357 (9th Cir. 1982).  Rather, information exchanges can "increase

24    economic efficiency and render markets more . . . competitive."  *U.S. Gypsum*, 438 U.S. at 441

25    n.16.

26            To state a Section 1 claim under the rule of reason, Plaintiffs must plausibly allege: (1) "a

27    contract, combination or conspiracy among two or more persons or distinct business entities;"

28    (2) "by which the persons or entities intended to harm or restrain trade . . .," (3) "which actually

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

11

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   injures competition," and (4) "that they were harmed by the defendant's anti-competitive contract,

2   combination, or conspiracy, and that this harm flowed from anti-competitive aspect of the practice

3   under scrutiny." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012) (citation

4   and internal quotation omitted).  Plaintiffs do not plausibly allege any element of their claim.

5
6   **A.   Plaintiffs Still Do Not Allege An Agreement To Exchange Competitively Sensitive Information**

7   Alleging an agreement is just as necessary in an alleged information-sharing case as in a

8   price-fixing case.  In addition to the fact that Plaintiffs still have not shown that the Hotel

9   Defendants exchanged pricing information—or any other competitively sensitive information—

10  Plaintiffs' claim fails because "the exchange of price information still requires showing that the

11  defendants had an agreement." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 223 (3d Cir. 2011).

12  All that Plaintiffs allege is a series of bilateral agreements between each Hotel Defendant and STR,

13  which is insufficient to plead a Section 1 claim.  *See Gibson v. Cendyn Grp., LLC*, 148 F.4th 1069,

14  1079-88 (9th Cir. 2025).  Plaintiffs must, but do not, plead an agreement ***among*** the Hotel

15  Defendants to exchange competitively sensitive information through STR.

16  **1.   Plaintiffs Do Not Allege Direct Evidence Of An Agreement**

17  The FAC does not allege direct evidence of an agreement among the Hotel Defendants.

18  "Direct evidence is smoking-gun evidence that establishes, without requiring any inferences, the

19  existence of a conspiracy." *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir.

20  2023) (citation and internal quotation omitted); *see also Portillo*, 2025 WL 2495053, at *4 (direct

21  evidence is an "explicit agreement").  Examples of direct evidence include "an admission by an

22  employee of one of the conspirators, that officials of the defendants had met and agreed explicitly

23  on the terms of [the] conspiracy," *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th

24  Cir. 2010), or "a recorded phone call in which two competitors agreed to fix prices at a certain

25  level." *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013).  STR's

26  agreements with the Hotel Defendants add nothing new and are not "smoking-gun" evidence of

27  an agreement among the Hotel Defendants to exchange competitively sensitive information.

28  In dismissing Plaintiffs' complaint, the Court reviewed STR's terms and conditions, and

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL
12
LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   found that they did not constitute "direct evidence" of an agreement because they did not reflect

2   that any hotel shared with STR "the most recent price charged or quoted for any particular hotel

3   room," or that recipients of STR's benchmarking reports could "determine the most recent price

4   charged or quoted for any individual hotel rooms." *Portillo*, 2025 WL 2495053, at *5. The FAC

5   does not cure this deficiency. STR's agreements confirm that the only information that the Hotel

6   Defendants provide to STR is historical revenue and occupancy data, *i.e.*, data regarding total

7   rooms available, total rooms sold, and total room revenue, information the Court already held is

8   not "pricing information" and insufficient to plead an agreement. *Id*. at *4-5; *see also* FAC ¶¶ 87-

9   103; FAC Exs. 4-7.

10      More fundamentally, the FAC still does not allege direct evidence of an agreement to

11  exchange competitively sensitive information ***at all***. To plead that competitors engaged in an

12  information exchange through a "conduit" or hub, as Plaintiffs attempt here, they must plead that

13  competitors used the "conduit" to "communicate with one another" about competitively sensitive

14  information. *In re Loc. TV Advert. Antitrust Litig.*, 2022 WL 3716202, at *6 (N.D. Ill. Aug. 29,

15  2022). Yet STR's agreements confirm that STR's benchmarking reports contain ADR, RevPar,

16  and occupancy rate information that is aggregated, averaged, and anonymized from at least three,

17  if not more, other hotels, and that STR is required to keep the data that any individual hotel

18  provides confidential. FAC Ex. 4-7. Indeed, the very agreements that Plaintiffs allege provide

19  "direct" evidence of an agreement, *see* FAC ¶ 1, expressly prohibit, and include safeguards to

20  prevent, customers from coordinating any one-to-one exchange of any confidential data from any

21  hotel to another. FAC Ex. 4 at STR00000092; FAC Ex. 5 STR00000144-45, 146-47; *see also*

22  FAC Ex. 2 at 5-6; FAC Ex. 8.

23      Plaintiffs attempt to paper over this problem by alleging that STR's reports are only

24  "loosely anonymized" because, according to speculation from a single confidential witness,

25  "hotels can deanonymize STR reports" by partnering with another hotel and coordinating their

26  comp sets, and supposedly do so "quite frequently." FAC ¶¶ 142, 180, 183. But such a vague

27  assertion is not "direct evidence" of an agreement among the Hotel Defendants to exchange

28  competitively sensitive information (nor is it indirect evidence). The FAC does not contain a

single allegation that any Hotel Defendant—much less all of them—"got" any information from any other Hotel Defendant by "partnering" in this way. *See Brown v. JBS USA Food Co.*, 2023 WL 6292717, at *11 (D. Colo. Sept. 27, 2023) (dismissing complaint because plaintiffs did "not allege that [defendant] agreed to share its wage data with any other company, much less with the entire group alleged to have been part of the conspiracy."). Without that, or any other explicit evidence that any hotel is receiving any other hotel's commercially sensitive information, the FAC does not plausibly allege direct evidence of an agreement.

### 2. Plaintiffs Still Have Not Alleged Parallel Conduct Or Plus Factors To Plead An Agreement Through Circumstantial Evidence

The FAC also still does not plead circumstantial evidence of an agreement to exchange competitively sensitive information through STR. To plead an agreement based on circumstantial evidence, a plaintiff must allege facts demonstrating both (1) "parallel conduct," and (2) "plus factors." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193-94 (9th Cir. 2015); *see also Portillo*, 2025 WL 2495053, at *5. Plaintiffs continue to allege neither.

### a. Plaintiffs' Allegations Of Parallel Conduct Remain Deficient

Plaintiffs do not plausibly allege any parallel conduct that supports the inference of an agreement. In granting Defendants' motion to dismiss, the Court held that Plaintiffs had not alleged any parallel conduct that could support the inference of an agreement to exchange pricing information because Plaintiffs did "not plead that the actual price of hotel rooms is either a required input from the defendant hotel operators to STR, or an output from STR back to the defendant hotel operators via STR's benchmarking reports." *Portillo*, 2025 WL 2495053, at *5.

The FAC's allegations do not cure this deficiency. Plaintiffs' theory of parallel conduct rests (again) on their conclusory allegation that the Hotel Defendants are "simultaneously" exchanging competitively sensitive information through STR, FAC ¶ 85, but they have not supported that assertion with any facts. Plaintiffs still do not allege that "the actual price of hotel rooms is either a required input" from the Hotel Defendants or "an output from STR back to" the Hotel Defendants, *Portillo*, 2025 WL 2495053, at *5, or that the Hotel Defendants are receiving

1  each other's identifiable, confidential information through STR's reports.  Once stripped of

2  Plaintiffs' conclusory assertions and unreasonable inferences, Plaintiffs are left relying on their

3  allegation that the "defendant hotel operators were all clients of STR . . . and received, in some

4  form, STR's benchmarking reports," which the Court already held is not "parallel conduct" of

5  "any significance." *Portillo*, 2025 WL 2495053, at *5; *cf. Gibson*, 148 F.4th at 1084 (the antitrust

6  laws do not "require businesses to decline to take advantage of a service because its competitors

7  already use that service").

8      Plaintiffs' unchanged "preliminary analysis" of "future listed" prices is also insufficient to

9  plead parallel conduct.  *Compare* FAC ¶ 191 *with* Compl. ¶ 140.  The Court rejected Plaintiffs'

10  "preliminary economic analysis" because Plaintiffs "offered insufficient facts to show Hotel

11  Defendants are exchanging real-time pricing information for hotel rooms via STR reports," and

12  also because Plaintiffs alleged "that STR reports are likely one of many inputs into algorithms that

13  push higher rates for luxury hotel rooms," making the "connection between STR reports and final

14  hotel room prices" "too attenuated and speculative a connection" to justify "finding that

15  defendants' alleged parallel conduct of contracting with STR is significant." *Portillo*, 2025 WL

16  2495053, at *6.

17      The FAC adds no allegations that warrant a different result.  Plaintiffs still do not allege

18  that the Hotel Defendants are "exchanging real-time pricing information for hotel rooms via STR,"

19  and Plaintiffs continue to allege that STR's reports are "one of many inputs into" hotels' various

20  revenue management systems that are responsible for setting prices.  *See id.*; *see also* FAC ¶¶ 201-

21  207.  Moreover, on its face, Plaintiffs' "preliminary analysis" undermines any suggestion of

22  parallel pricing among the Hotel Defendants for "luxury" hotel rooms in any geographic market

23  at issue.  FAC ¶ 191.  Despite Plaintiffs' label of "parallelism," Plaintiffs' charts show prices across

24  hotel chains and metropolitan markets that are hundreds of dollars apart for rooms on the same

25  day, and prices that fluctuate dramatically.  *See id.*  Plaintiffs still do not connect this supposed

26  "parallelism" to STR's reports, instead vaguely asserting that the charts reflect a "common pricing

27  strategy and/or a shared input in determining room fares." *Id.*

28      Plaintiffs thus do not plausibly allege any parallel conduct by the Hotel Defendants that

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    could support the inference of an agreement to exchange competitively sensitive information.

2    **b.    Plaintiffs' "Plus Factors" Remain Insufficient**

3    The Court previously did not reach whether Plaintiffs plausibly alleged "plus factors" that

4    placed any alleged parallel conduct in a context that could support the inference of an agreement,

5    and it need not reach them again. *Portillo*, 2025 WL 2495053, at *7. But even if the Court were

6    to consider Plaintiffs' purported "plus factors," they too remain insufficient.

7    **(1)    Subscribing To STR Is Not Against Any Hotel's
        Self-Interest**

8

9    Plaintiffs do not allege that any Hotel Defendant acted against its self-interest by

10   subscribing to STR's benchmarking reports. Plaintiffs do not plausibly allege that the Hotel

11   Defendants are providing any confidential data to STR knowing that STR will share their

12   confidential data in an identifiable format with their competitors. *See supra* at II.C.2. STR's

13   terms, and its agreements with the Hotel Defendants, require that STR keep each hotel's individual

14   data confidential, and Plaintiffs recognize that STR's reports reflect aggregated, averaged, and

15   anonymized non-price data. *See id*. STR also requires that comp sets include aggregated data

16   from at least three other hotels and imposes numerous rules and safeguards to prevent hotels from

17   isolating data from any individual hotel. *See id*. While Plaintiffs allege that STR's reports are

18   only "loosely" anonymized, that allegation is based solely on a single confidential witness's

19   speculation about how two hotels could theoretically "partner" to coordinate on their comp sets to

20   deanonymize data in STR's reports. FAC ¶ 142. And Plaintiffs do not allege any agreement

21   among any two hotels to so partner, or that any hotel has deanonymized STR's data. *See Dai v.*

22   *SAS Inst. Inc.*, 2025 WL 2078835, at *4-5 (N.D. Cal. July 18, 2025) (refusing to infer an agreement

23   from plaintiffs' conclusory assertions that "confidential information" was exchanged through

24   defendant's revenue management software); *Gibson v. MGM Resorts Int'l*, 2023 WL 7025996, at

25   *5 (D. Nev. Oct. 24, 2023) (finding allegations from a confidential witness insufficient to plausibly

26   allege exchange of confidential information).

27   The fact that a participating hotel must provide its revenue and occupancy data to STR to

28   receive a benchmarking report from STR does not demonstrate that subscribing to STR is "so

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

perilous in the absence of advance agreement that no reasonable firm" would do so. *In re Musical Instruments*, 798 F.3d at 1195. A hotel would rationally decide to submit revenue and occupancy data to STR because doing so is the only way to create an industry benchmark to evaluate its competitive performance. Indeed, Plaintiffs themselves allege many reasons why receiving STR's benchmarking reports is in a hotel's self-interest and fosters competition among the Hotel Defendants, including using the reports to track their "competitive performance," FAC ¶¶ 52, 151 n.103, manage occupancy and market share, *id.* ¶ 138, and evaluate employee performance. *Id.* ¶¶ 137, 143, 157. And courts, including the Supreme Court and Ninth Circuit, have acknowledged the legitimate motivation of businesses to conduct their operations with the benefit of market-level data. *See, e.g., Maple Flooring Mfrs.' Ass'n v. United States*, 268 U.S. 563, 582-83 (1925) (noting that "gathering and dissemination" of market-level data leads to efficiency and transparency); *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) (distribution of "aggregate statistics" "served the legitimate purpose of informing members of worldwide citric acid conditions"); *cf. Gibson*, 148 F.4th at 1083-84 (finding that the antitrust laws do "not require a business to turn a blind eye to information simply because its competitors are also aware of the same information"). It is plainly in each Hotel Defendant's self-interest to benchmark their performance, and STR provides a means for hotels to do that without exchanging any competitively sensitive information.

### (2)  Plaintiffs' Allegations That STR's Reports Allow The Hotel Defendants To Monitor Their Competitors' "Actual Prices" Are Implausible

Plaintiffs allege that through STR's reports, the Hotel Defendants are supposedly able to "monitor" their "rivals' pricing and supply," FAC ¶ 1, going so far as to allege that STR's reports allow "hotels [to] observe the actual prices and occupancy levels" of their competitors. *Id.* ¶ 105. But Plaintiffs' characterizations of STR's reports are unsupported by their actual allegations. Plaintiffs concede that STR's reports only provide aggregated, averaged, and anonymized data, *see, e.g., id.* ¶¶ 70, 76, 83, 183, and even if the reports could theoretically be "deanonymized" by partnering with another hotel, Plaintiffs do not allege that the "actual price" that any hotel has charged or intends to charge for any room could be extrapolated from any STR report.

The FAC also alleges that hotels can use STR's reports to monitor their competitors

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

because a hotel subscribing to STR receives a list of other subscribing hotels in its geographic area so that it can select hotels to include in its comp set. *See* FAC ¶¶ 1, 107-110. But merely knowing that other hotels are STR subscribers does not make them co-conspirators or support the inference of an illicit agreement. *Cf. Gibson*, 148 F.4th at 1083 (finding that even if all the hotel defendants were "aware of their competitors' adoption and use of Cendyn's [revenue management] software products, their subsequent choices to adopt Cendyn's software products themselves, absent evidence of agreement among Hotel Defendants to do so, is insufficient to state a Section 1 claim").

### (3)    Plaintiffs' Supposed Opportunities To Collude Are Insufficient To Infer Any Agreement

The FAC alleges that STR hosts a Hotel Data Conference ("HDC") each year that is attended by industry executives who are interested in "improv[ing] the performance of their hotels" through the use of data. FAC ¶¶ 132-36. But "[a]ttendance at industry trade shows and events is presumed legitimate and is not a basis from which to infer a conspiracy, without more." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007). And here, not only do Plaintiffs not allege that any agreement was reached at any HDC, or that any sensitive information was exchanged among any hotel competitors at any HDC, Plaintiffs do not even allege that any Hotel Defendant employees attended any HDC. FAC ¶¶ 132-36. Allegations of such vague supposed "opportunities" to collude are not sufficient to infer a conspiracy. *Dai*, 2025 WL 2078835, at *4 (holding that allegations that IDeaS "hosted events and summits for its users" without any "allegations about what agreements were made, if any" did not amount to a "plus factor"); *In re Musical Instruments*, 798 F.3d at 1196 ("[M]ere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement.").

### (4)    The Structure Of The "Luxury" Hotel Industry Is Not Sufficient To Infer An Agreement

Plaintiffs' allegations regarding the structure of the "luxury" hotel industry—including supposed market concentration, significant barriers to entry, that luxury hotels are fungible, and that demand for luxury hotels is inelastic—are conclusory and contradicted by Plaintiffs' other

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1  allegations. *See infra* at IV.B.1. But regardless, allegations regarding the structure of the "luxury

2  hotel market" are insufficient to allow the Court to infer collusion without more. *See, e.g., In re*

3  *Musical Instruments*, 798 F.3d at 1189 (market structure allegations are "no more consistent with

4  an illegal agreement than with rational and competitive business strategies"); *Dai*, 2025 WL

5  2078835, at *4 (holding that allegations regarding the structure of the hotel industry are "not strong

6  enough on [their] own to nudge Plaintiffs' claims of a horizontal agreement across the line from

7  possible to plausible.").

### 3.     Plaintiffs Also Do Not Allege A Hub-And-Spoke Conspiracy

9          Plaintiffs' failure to allege parallel conduct and plus factors demonstrating an agreement

10  among the Hotel Defendants is fatal to their attempt to plead a hub-and-spoke conspiracy. *See In*

11  *re Pork Antitrust Litig.*, 781 F. Supp. 3d 758, 799 (D. Minn. 2025) ("[V]irtually all of the caselaw

12  that seems to give legitimacy to a standalone § 1 claim under a hub-and-spoke test also relies on

13  the support of allegations of parallel conduct and plus factors."); *Dai,* 2025 WL 2078835, at *2–5

14  (requiring that plaintiff allege parallel conduct and plus factors to plead a hub-and-spoke

15  conspiracy); *see also Segal v. Amadeus IT Grp., S.A.*, 2025 WL 963751, at *5 (N.D. Ill. Mar. 31,

16  2025) (holding that plaintiffs had not alleged a hub-and-spoke conspiracy because there were no

17  "allegations that the hotel defendants, the 'spokes' made agreements with one another sufficient

18  to form a 'rim.'"). But, even if parallel conduct and plus factors were not necessary (and they are),

19  Plaintiffs also have not plausibly alleged a hub-and-spoke conspiracy under any "invitation" and

20  "acceptance" theory either. *Portillo*, 2025 WL 2495053, at *3.

21          Under the Supreme Court's decision in *Interstate Circuit Inc. v. United States*, 306 U.S.

22  208 (1939), a hub-and-spoke conspiracy may, in some circumstances, be inferred through

23  "[a]cceptance by competitors, without previous agreement, of an invitation to participate in a plan,

24  the necessary consequence of which, if carried out, is restraint of interstate commerce . . . ."

25  *Portillo*, 2025 WL 2495053, at *3 (quoting *Interstate Circuit*, 306 U.S. at 227). The Court

26  previously held that Plaintiffs' attempt to plead a hub-and-spoke conspiracy "fail[ed] at a basic

27  level," and without even reaching the issue of whether an agreement among the spokes could be

28  inferred, because "plaintiffs have not shown that either the alleged hub or the alleged spokes are

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1  receiving any hotel room pricing information from, or giving any hotel room pricing information

2  to, each other."  *Portillo*, 2025 WL 2495053, at *6.

3         That deficiency remains.  Plaintiffs do not plausibly allege that STR "invites" hotels to

4  share "hotel room pricing information," or that by subscribing to STR, any hotel has "accepted"

5  the invitation to do so knowing that concerted action was contemplated, nor that the "necessary

6  consequence" of any hotel subscribing to STR is "an unlawful conspiracy to fix luxury hotel

7  prices."  *Id.* at *6; *Dai*, 2025 WL 2078835, at *2–5 (rejecting plaintiffs attempt to plead a hub-

8  and-spoke conspiracy under *Interstate Circuit*); *Cornish-Adebiyi v. Caesars Ent., Inc.*, 2024 WL

9  4356188, at *5 (D.N.J. Sept. 30, 2024) (holding that "knowing" use of same software not

10 "suggestive of culpable conspiracy").

11        Plaintiffs thus have not pled a plausible agreement to exchange competitively sensitive

12 information under any theory, and their claims should be dismissed.

13        **B.      Plaintiffs Still Do Not Allege An Unreasonable Restraint Of Trade**

14        The FAC should also be dismissed for the independent reason that Plaintiffs have not

15 plausibly alleged that any agreement to exchange information through STR has caused, or is likely

16 to cause, anticompetitive effects in any relevant market, as is required to plead an unreasonable

17 restraint of trade under the rule of reason.

18              **1.      Plaintiffs Do Not Allege Any Anticompetitive Effects**

19        Plaintiffs allege that the exchange of (aggregated, averaged, and anonymized) revenue and

20 occupancy data through STR's benchmarking reports allowed the Hotel Defendants to "raise . . .

21 or maintain" prices for "luxury" hotel rooms in fifteen metropolitan markets in the U.S. at "supra-

22 competitive" levels.  FAC ¶¶ 2, 247, 249.  Plaintiffs, however, do not plausibly allege any

23 anticompetitive effects through either direct or indirect evidence, as is required.  *Ohio v. Am.*

24 *Express Co.*, 585 U.S. 529, 542 (2018); *Intel Corp. v. Fortress Inv. Grp. LLC*, 2022 WL 16756365,

25 at *2 (9th Cir. Nov. 8, 2022).

26                    **a.      Plaintiffs Do Not Allege Direct Evidence Of
                             Anticompetitive Effects**

27

28        To plead anticompetitive effects through direct evidence, Plaintiffs must allege that the

1  supposedly "supra-competitive" prices for "luxury" hotel rooms were caused by the exchange of

2  information through STR's reports.  *See 1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 118 (2d Cir.

3  2021) ("[T]he question is whether [the plaintiff] can show an actual anticompetitive change in

4  prices after the restraint was implemented."); *see also Am. Express.*, 585 U.S. at 542  ("[d]irect

5  evidence" is evidence of "reduced output, increased prices, or decreased quality in the relevant

6  market" "caused" by the allegedly anticompetitive conduct); *Intel Corp.*, 2022 WL 16756365, at

7  *2 ("A plaintiff must allege that a price increase is traceable to a restraint on trade.").  Plaintiffs'

8  "economic analysis" does not meet this standard.

9      Plaintiffs allege that they conducted a "preliminary economic analysis" on "future listing

10 prices" (not actual hotel prices) "for over 6,000 hotels across 15 major cities" between January

11 and June 2024, and that bar graphs showing that "STR hotels charged more than their non-STR

12 counterparts on average" constitute sufficient evidence that "STR leads to higher prices."  FAC

13 ¶¶ 186-87.  Plaintiffs' "analysis" is flawed.

14      ***First***, comparing "future listing prices" for "STR hotels" and "non-STR hotels" does not

15 support the inference that receipt of STR's reports ***causes*** higher "luxury" hotel room prices.

16 Correlation does not equal causation.  The FAC alleges that "almost everybody within the hotel

17 industry in the U.S. was an STR client and received the STR reports."  FAC ¶ 49.  Thus, it is

18 entirely plausible that the small group of "non-STR hotels" serving as the comparison may

19 command lower prices because they are less well-known brands, offer fewer amenities, are not

20 associated with large loyalty programs, have fewer corporate contracts, or any number of other

21 plausible explanations for lower "future listing prices" besides their non-use of STR.   And

22 Plaintiffs' "regression analysis," which supposedly shows "the counterfactual prices that STR

23 hotels would have charged had they not participated in STR," FAC ¶ 189, is just another way of

24 displaying differences in prices between the groups, which is flawed for the same reason.

25      ***Second***, the unchanged line graphs that supposedly show "parallel pricing movements and

26 trends amongst competitors," FAC ¶ 191, continue to do nothing to support a theory of coordinated

27 or parallel pricing.  Compl. ¶ 140.  They do the opposite, by showing the varied and inconsistent

28 "future list prices" used by the eight hotel companies, or individual hotel chains within those

1   companies, that Plaintiffs cherry-picked from the more-than-thirty Hotel Defendants' brands.

2   FAC ¶ 191.  For example, the charts show prices ranging from $250 to over $650 per room for the

3   same day in the month of June, and prices ranging from around $200 to around $550 per room for

4   April for the eight hotel companies that Plaintiffs arbitrarily selected.  *Id.*  There is no clear trend

5   or coordination that can be gleaned from these charts.[5]  *See In re RealPage, Inc., Rental Software*

6   *Antitrust Litig.,* 2023 WL 9004806, at *14 (M.D. Tenn. Dec. 28, 2023) ("courts do not credit charts

7   and analyses that are 'as consistent with parallel, market-following behavior. . . as they are with

8   participation in a price-fixing scheme'" (citation omitted)).  Moreover, Plaintiffs do not allege that

9   these charts only reflect prices for "luxury" hotels—*i.e.*, the alleged product market—as opposed

10  to, for example, all Hilton, Hyatt, or Marriott hotels; nor do the charts include any prices for brands

11  of Defendants Accor or Six Continents, or any alleged co-conspirators.

12       For multiple reasons, Plaintiffs have failed to plead any direct evidence that the alleged

13  conspiracy is leading (or has led) to "supra-competitive" prices in any relevant market.

14                    **b.    Plaintiffs' "Indirect" Evidence Fares No Better**

15       Plaintiffs' indirect evidence also fails to plausibly allege anticompetitive effects because

16  the information provided to subscribing hotels by STR is averaged, aggregated, and anonymized,

17  and Plaintiffs do not plausibly allege that the "luxury" hotel industry is ripe for collusion.  To

18  determine whether an alleged information exchange is likely to have anticompetitive effects, courts

19  consider "the structure of the industry involved and the nature of the information exchanged."  *In*

20  *re Loc. TV Advert. Antitrust Litig.*, 2022 WL 3716202, at *3 (quoting *Todd v. Exxon Corp.*, 275

21  F.3d 191, 199 (2d Cir. 2001)).  The focus of the analysis is whether an alleged information

22  exchange "may be used to police a secret or tacit conspiracy to stabilize prices."  *Id*. (citing *Todd*,

23  275 F.3d at 212); *see also United States v. Container Corp. of Am.*, 393 U.S. 333, 337 (1969).

24

25

26

---

27  [5] The only two hotel brands with future listed prices that seem even remotely similar are Westin
    and Marriott, FAC ¶ 191, which are commonly owned by a single Hotel Defendant—Marriott

28  International, Inc.—and thus Plaintiffs cannot show parallel conduct among multiple Hotel
    Defendants, let alone among all of them.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1

### (1)  The Aggregated Non-Price Data In STR's Reports Is Not Competitively Sensitive

2

3     "[T]here is nothing inherently anticompetitive about . . data benchmarking services. . . ."

4  *Perdue Farms, Inc. v. Nat'l Union Fire Ins. Co.*, 517 F. Supp. 3d 458, 464 (D. Md. 2021).  STR's

5  benchmarking reports provide "aggregated information" that "avoids transaction specificity," and

6  "is generally favored in the antitrust context."  *In re Loc. TV Advert. Antitrust Litig.*, 2022 WL

7  3716202, at *3 (citation omitted); *see also Container Corp.*, 393 U.S. at 334-35 (recognizing that

8  exchanging "statistical report[s] on [] average[s] . . . without identifying the parties to specific

9  transactions" is permissible under the Sherman Act).  At its most granular level, the comp set data

10  in any STR report is aggregated and anonymized across at least three other hotels (and usually

11  more) and presented as an average, and does not reveal "particular parties, transactions, and prices

12  . . . ."  *In re Loc. TV Advert. Antitrust Litig.*, 2022 WL 3716202, at *3; *see also supra* at II.C.2.

13     STR's reports also do not reflect even aggregated and averaged hotel room prices.  ADR,

14  which Plaintiffs say is an "average price," *see, e.g.*, FAC ¶ 65, is a backward-looking revenue

15  figure and not a price.  It reflects room revenue generated by a hotel for the total number of rooms

16  sold, and does not reflect any price that any hotel charged for a particular room—much less a price

17  that any hotel plans to charge in the future.  *Id.* ¶¶ 65-67.  The price charged for a hotel room can

18  vary for myriad reasons, including the time of booking, the size of the room, the bed type, and

19  positioning within the hotel, among other factors.  Reporting ADR across all rooms disguises

20  revenue (and pricing) subtleties across room types, and STR's reports further mask any hotel's

21  individual ADR by only presenting ADR as an average of at least three, but usually more than

22  five, other hotels' average ADR.  RevPar, similarly, reflects the average revenue generated across

23  all available hotel rooms and does not reflect the price that any hotel charged for any particular

24  room.  *Id.* ¶¶ 73-74.  Even if the ADR, RevPar, and occupancy rate data in STR's reports could be

25  "deanonymized," Plaintiffs do not (and cannot) allege that any "deanonymized" data would reflect

26  the price that any hotel charged or plans to charge, or otherwise reveal a hotel's future pricing

27  plans for any particular kind of room.

28     While Plaintiffs label the data in STR's reports as "current" or "forward-looking," *see, e.g.*,

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   FAC ¶ 181, it is neither.  By definition, the occupancy and revenue data that hotels provide to STR

2   for STAR Reports is historical because it reflects data regarding rooms that either were or were

3   not booked and the revenue that hotels received from those bookings.  Even the "forward-looking"

4   occupancy data that is reported in Forward STAR Reports (which no Hotel Defendants allegedly

5   receive) is not actually "forward-looking" because it measures the average, aggregated, and

6   anonymized number of rooms guests have already booked, which will change due to cancellations

7   and new bookings, and does not shed light on any hotel's future pricing plans for any particular

8   hotel room.  *See id.* ¶¶ 123-25.

9          STR's reports thus reflect aggregated, historical, non-price data that does not enable the

10   Hotel Defendants "to tacitly communicate with one another" regarding their pricing for hotel

11   rooms.  *In re Loc. TV Advert. Antitrust Litig.*, 2022 WL 3716202, at \*6; *see also Segal*, 2025 WL

12   963751, at \*6 (finding the connection between occupancy data and hotel room prices to be too

13   "attenuated" to plead anticompetitive effects).

14                        **(2)      The Structure Of The "Luxury" Hotel Industry Is
                                    Not Conducive To Anticompetitive Effects**
15

16          In assessing whether a market is susceptible to anticompetitive effects due to its structure,

17   courts consider whether there is "(1) a highly concentrated market dominated by relatively few

18   sellers; (2) a fungible product; (3) competition that is based primarily on price; and (4) inelasticity

19   of demand because buyers tend to order for their immediate short term needs."  *Five Smiths*, *Inc.*

20   *v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1052, 1053 (D. Minn. 1992) (citing

21   *Container Corp.*, 393 U.S. at 334-37).  Plaintiffs do not plausibly allege that the "luxury" hotel

22   industry has any of those characteristics.

23          ***Not Highly Concentrated.***  The FAC does not allege facts supporting the conclusion that

24   the "luxury" hotel industry is highly concentrated.  Plaintiffs nowhere identify the actual number

25   of Kayak rated "four or five star" hotels in each of the fifteen metropolitan areas at issue, or who

26   owns or manages those hotels.  *See* FAC ¶¶ 177, 214-31, 235.  Instead, Plaintiffs aggregate shares

27   of the Hotel Defendants and their thirty-plus brands and companies, plus the four alleged "Co-

28   Conspirator Hotels" and their brands, even though many of the hotels operating under those brands

DEFENDANTS' JOINT MOTION TO DISMISS                    24
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

are owned and/or operated by third parties and franchisees. *See id.* ¶¶ 177, 235 (grouping "Defendants and their co-conspirators" to aggregate market shares). Even lumping together those more-than-thirty hotel brands amounts to only half of the Kayak rated "four or five star" hotels in some areas, *see* FAC App'x A (Miami, 50% share; New York, 50% share), and Plaintiffs' manipulated "market shares" do not suggest that the "luxury" hotel industry is "highly concentrated." *Cf. U.S. Gypsum*, 438 U.S. at 426 (finding that the market for gypsum board was "highly concentrated" where the "eight largest companies accounted for some 94% of the national sales").

**"Luxury" Hotels Are Not "Fungible."** Neither common sense, nor the facts alleged, support Plaintiffs' conclusory assertion that "luxury" hotels are "fungible." FAC ¶ 178. "Fungible" refers to "goods which are identical with others of the same nature, such as grain and oil, or common shares of the same company," *In re Zhejiang Topoint Photovoltaic Co., Ltd.*, 2015 WL 2260647, at *7 (D.N.J. May 12, 2015) (quoting Black's Law Dictionary 675 (6th ed. 1990)), or the laminated "wall-board" in *U.S. Gypsum*, 438 U.S. at 426, or the "substantially identical" corrugated containers in *Container Corp.*, 393 U.S. at 336-37. But "four or five star" hotels are far from "substantially identical." *Id.* "Luxury" hotels differ in their locations and proximity to attractions, "such as city centers, beachfronts, or scenic countryside settings," FAC ¶ 210; they offer different amenities, "such as upscale spas, fine dining restaurants, fitness centers, swimming pools, luxurious bedding, and stylish furnishings," *Id.* ¶ 209; and they have different "brand reputations." *Id.* ¶ 211. The different quality ratings for Kayak "four or five star" hotels alone illustrate that "luxury" hotels are not identical, or even substantially so. The FAC even concedes that "luxury" hotels are only "relatively fungible" after "accounting" for "a few high-level characteristics," including "size, amenities, location, or the age of the building." *Id.* ¶ 178.

**There Is Significant Non-Price Competition**. The FAC also acknowledges that "luxury" hotels compete for travelers with "diverse" needs, *id.* ¶ 213, and identifies multiple non-price qualities through which hotels attempt to attract guests, including "prestigious brand reputations," *id.* ¶ 211, furnishings and bedding, *id.* ¶ 209, and amenities, such as golf, spas, parking, and restaurants. *Id.* An article incorporated by reference into the FAC discussing five-star hotels

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    summarizes this competition by noting that "the desire for unique and memorable stays is

2    prompting hotels to innovate and offer bespoke services, including personalized concierge

3    assistance and culinary delights."  Decl. Ex. 2 at 1; *see supra* n.4.  Competition based primarily on

4    price is "necessary for an information exchange to violate the rule of reason," but is absent here.

5    *Five Smiths*, 788 F. Supp. at 1053.

6            ***Consumers Do Not Exclusively Book For "Immediate, Short-Run" Needs***.  Plaintiffs

7    assert that "demand for luxury hotel rooms is relatively inelastic" because "consumers make

8    reservations for immediate, short-run needs," FAC ¶ 179 n.126, but do not allege any facts to

9    support that conclusion.  Plaintiffs allege that Forward STAR Reports show "rooms booked for

10    the days, weeks and months ahead," including "occupancy on the books for the next 90 days

11    (weekly report) and 12 months (monthly report)."  *Id.* ¶¶ 123-25.  The "segmentation summary"

12    attached to the FAC also describes hotel guests that could not be considered as purchasing "only

13    for immediate" needs, such as "group tours, domestic and international groups, convention and

14    corporate groups," who typically book months if not years in advance, as well as rooms sold "by

15    contracts including airline crews and permanent guests." FAC Ex. 1 at 7.  And even for so-called

16    "transient" guests that pay a rack rate for a hotel room, common sense and experience suggest that

17    travelers booking "four or five star" hotels engage in advance planning about their travel

18    destination and lodging, and do not simply purchase a "luxury" hotel room for "immediate, short-

19    run needs." FAC ¶ 179.  Customers' alleged willingness to pay a premium for "luxury" hotels says

20    nothing about the elasticity (or inelasticity) of demand for those accommodations.  *See Ni-Q, LLC*

21    *v. Prolacta Bioscience, Inc.*, 2021 WL 3145968, at *6 (D. Or. July 26, 2021) ("higher prices" does

22    not show "sensitivity to price changes"); *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198-

23    1199 (N.D. Cal. 2008) (the "mere existence of a price differential" does not show "*responsiveness*

24    of one product to the price of another").

25            2.    **Plaintiffs Do Not Plausibly Allege A Relevant Product Or Geographic**
                    **Market**
26

27            Plaintiffs' claim also fails because they have not plausibly alleged a relevant product or

28    geographic market.  To state a Section 1 claim under the rule of reason, a plaintiff must allege a

1  plausible relevant market.  *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018)

2  (affirming dismissal for failure to allege relevant product market).  Without a properly defined

3  market, there is no way to gauge whether the Hotel Defendants have market power and can

4  adversely affect competition through any alleged information exchange.  *See Am. Express*, 585

5  U.S. at 543 n.7.

6          Plaintiffs allege that the relevant product market is the market for "luxury" hotels, which

7  they define as hotels "identified on Kayak as having four or five star ratings," and that the relevant

8  geographic market is fifteen metropolitan areas in the U.S. FAC ¶¶ 208 n.140, 209-16.  Plaintiffs'

9  proposed markets are "facially unsustainable."  *Hicks*, 897 F.3d at 1120.

10         ***First***, Plaintiffs do not plausibly allege a product market for "luxury" hotels because they

11  do not define that market based on reasonable interchangeability or cross-elasticity of demand, or

12  ever define what constitutes a "luxury" hotel.  A relevant product market must include "the product

13  at issue as well as all economic substitutes for the product."  *Hicks*, 897 F.3d at 1120 (citation

14  omitted); *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 956 (9th Cir. 2023).  "[E]conomic

15  substitutes" are products that have a "reasonable interchangeability of use" or sufficient "cross-

16  elasticity of demand" with the relevant product.  *Brown Shoe Co. v. United States*, 370 U.S. 294,

17  325 (1962).

18         Plaintiffs allege that "luxury" hotels "typically" have certain characteristics—*e.g.*, "highly

19  skilled staff who provide high-quality service, top-notch amenities and facilities" and are "situated

20  in prime locations," FAC ¶¶ 209-10—but never explain what constitutes a Kayak "four or five"

21  star hotel.  Plaintiffs allege that the hotel industry recognizes "four and five star hotel brands" as a

22  "distinct" market, yet the article that Plaintiffs cite only discusses "five star" hotels and "market

23  segmentation" among those hotels based on "location, services, target audience, and geography,"

24  and does not say anything about Kayak's star ratings.  Decl. Ex 2 at 1.  And Plaintiffs allege that,

25  for purposes of its benchmarking reports, STR classifies hotels into seven categories—luxury,

26  upper upscale, upscale, midscale with food and beverage, midscale without food and beverage,

27  economy, and independent, FAC ¶ 127 n.85; FAC Ex. 1 at 4, but do not allege how those

28  classifications relate to Kayak's "star ratings."

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

27

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1      While Plaintiffs allege that there is a "price gap" between the average price of "luxury"

2  hotels and "midscale and economy" hotels, FAC ¶¶ 233-34, that alone is insufficient to plausibly

3  allege that travelers would not switch from a Kayak "four or five" star hotel to a differently rated

4  hotel in the face of a small but significant price increase.  *See Twin City Sportservice, Inc. v.*

5  *Charles O. Finley & Co., Inc.*, 512 F.2d 1264, 1273 (9th Cir. 1975) ("the scope of the relevant

6  market is not governed by the presence of a price differential between competing products");

7  *Gamboa v. Apple Inc.*, 2025 WL 660190, at *8 n.7 (N.D. Cal. Feb. 28, 2025) (finding that plaintiffs

8  misapplied the SSNIP test by conflating "a *price difference* with a *price increase*"); *Psystar Corp.*,

9  586 F. Supp. 2d at 1198 ("[A] mere price differential alone does not necessarily signal a distinct

10  market" or that the higher-priced product "is unconstrained by competition"); *see also Streamcast*

11  *Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 3d 1086, 1095 (C.D. Cal. 2007) (finding that

12  plaintiffs failed to plead a relevant product market where they did not allege that "users are

13  unwilling to patronize other networks" or would not switch to another provider in the face of a

14  price increase).  Without allegations explaining what constitutes a "luxury" hotel, and why other

15  types of hotels are not economic substitutes, Plaintiffs have not plausibly alleged a viable relevant

16  product market.

17      ***Second***, Plaintiffs do not plausibly allege relevant geographic markets because they plead

18  no facts supporting their claim that each of the alleged fifteen metropolitan areas constitutes a

19  relevant geographic market.  FAC ¶¶ 214-31.  Indeed, Plaintiffs provide no facts that plausibly

20  suggest that travelers would consider an entire city for their trip.  *See Morgan, Strand, Wheeler &*

21  *Biggs v. Radiology, Ltd.,* 924 F.2d 1484, 1490 (9th Cir. 1991) ("[C]onclusorily stat[ing] that the

22  relevant geographic market is Tucson . . . [gets] little weight[.]").  Instead, Plaintiffs' allegations

23  suggest that their geographic markets are facially implausible because, for example, they allege

24  that the "Los Angeles" metropolitan area "constitutes a relevant geographic market," FAC ¶ 222,

25  yet they concede that travelers looking for a hotel near the beach in Santa Monica (*e.g.*, the

26  Fairmont Miramar Hotel & Bungalows) would not consider a hotel in downtown Los Angeles

27  (*e.g.*, the JW Marriott Los Angeles L.A. Live) or Pasadena (*e.g.*, the Langham Huntington) as

28  reasonable substitutes.  *Id.*; *see also Hilton Int'l Co. v. Hilton Hotels Corp.*, 888 F. Supp. 520, 531

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    (S.D.N.Y. 1995) ("[T]he CONRAD in London is . . . in an area of the city that does not directly

2    compete with the [Hilton International] hotels in London.").

3    **C.      Plaintiffs Still Do Not Allege Any Antitrust Injury**

4        The FAC also does not cure the deficiencies in Plaintiffs' allegations regarding antitrust

5    injury, which provides another, independent basis for dismissing Plaintiffs' claim.  To plausibly

6    plead antitrust injury, Plaintiffs must allege an injury that "flows from that which makes

7    defendants' acts unlawful."  *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (citation and

8    internal quotation omitted).  When the injury alleged is "supracompetitive pricing," the "plaintiff

9    must allege that a price increase is traceable to a restraint on trade."  *Intel Corp.*, 2022 WL

10   16756365, at *2.  In other words, Plaintiffs must, but do not, allege that the higher prices that they

11   allegedly paid for "luxury" hotel rooms were caused by the Hotel Defendants' receipt of STR's

12   benchmarking reports.

13       The Court previously recognized that "[a]t most" Plaintiffs alleged "that STR reports are

14   one of many inputs fed into actual pricing algorithms that are used by the hotel industry to push

15   higher rates" and that the "connection between STR reports and final hotel room prices" was

16   "attenuated and speculative."  *Portillo*, 2025 WL 2495053, at *6.  While the Court did not reach

17   the issue of antitrust injury, it noted that the connection between STR reports and hotel room prices

18   may "be too speculative and attenuated to sufficiently allege that an antitrust injury flows from

19   plaintiffs' alleged conduct of contracting with STR."  *Id.* at *6 n.2 (citing *Somers*, 729 F.3d at 963)

20   (internal quotation omitted).

21       The FAC does not fix the issues identified by the Court; indeed, it exacerbates them.

22   Plaintiffs do not allege that higher "luxury" hotel room prices that the Hotel Defendants

23   supposedly charged "were the result of" their use of STR's benchmarking reports.  *Intel Corp.*,

24   2022 WL 16756365, at *2.  Instead, Plaintiffs continue to broadly allege that "widespread" use of

25   revenue management systems is leading to higher prices for "luxury" hotel rooms.  FAC ¶¶ 201-

26   205 ("Defendants have specifically attributed their ability to achieve higher prices . . . to their

27   leveraging of data and employment of revenue management systems.").  And Plaintiffs continue

28   to allege that STR's data is just "one of the historical data set points" that "fuel[s] these revenue

DEFENDANTS' JOINT MOTION TO DISMISS                    29
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

management systems," which are "fed" with vast amounts of "market-level data." *Id.* ¶ 206; *see also* Compl. ¶¶ 141-44, 150 (alleging that hotels are using revenue management systems to "push higher rates").[6]  Plaintiffs do not allege that the Hotel Defendants use the same revenue management systems, and in fact, allege that they use different systems, *see* FAC ¶ 202, and do not challenge "the sale, use, or operation of luxury hotel pricing algorithms," or allege any agreement related to the use of any revenue management systems or pricing algorithms. *Portillo*, 2025 WL 2495053, at *7.

Plaintiffs again, at best, allege that the Hotel Defendants subscribe to STR's reports, and supposedly set "higher prices," but do not plead facts showing any causal connection between the two.  This is particularly true in the FAC, where Plaintiffs allege that the Hotel Defendants' various revenue management systems are responsible for determining their pricing; that those revenue management systems are "fed" with vast amounts of data that supposedly drive prices for hotel rooms higher; and that STR's data might be, ***but is also prohibited from being***, one of many inputs into those revenue management systems. FAC ¶¶ 117, 206. The "hypothetical connection between STR reports and final hotel prices" in the FAC is even more "speculative and attenuated" than in Plaintiffs' original complaint, and they have not plausibly alleged any antitrust injury.  *Portillo*, 2025 WL 2495053, at *6; *see also Somers,* 729 F.3d at 964 (affirming dismissal and finding no causal antitrust injury where plaintiff failed to plausibly allege the purportedly anticompetitive conduct "affected [] prices"); *In re Online DVD Rental Antitrust Litig.*, 2009 WL 4572070, at *7-8 (N.D. Cal. Dec. 1, 2009) (holding that "plaintiffs' injury is unduly speculative" because it failed to allege any facts suggesting a "direct causal link" between artificially inflated prices purportedly paid by the plaintiffs and the alleged conspiracy).

## V.    CONCLUSION

Plaintiffs' FAC should be dismissed, this time with prejudice, because it fails to cure the deficiencies identified by the Court, and because Plaintiffs' legal theories fail and further

---

[6] The Court may consider allegations in Plaintiffs' original complaint that Plaintiffs have omitted from their amended pleading. *See, e.g., Byrd v. Bank of Am.*, 2015 WL 13919187, at *2 n.3 (C.D. Cal. Apr. 22, 2015) (considering allegations "omit[ted]" in amended complaint in granting motion to dismiss).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   amendment would be futile. *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020);

2   *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 F. App'x 380, 382 (9th Cir. 2018).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

31

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1      *I certify that this memorandum contains 11,342 words, in compliance with Court Order,*

2  *Dkt. 119, and the Local Civil Rules.*

3

4      /s/ Heidi Bradley                                      /s/ Vanessa Soriano Power
       Heidi Bradley (WSBA No. 35759)               Vanessa Soriano Power (WSBA No. 30777)
5      BRADLEY BERNSTEIN SANDS                       STOEL RIVES LLP
       2800 First Avenue, Suite 326                  600 University Street, Suite 3600
       Seattle, WA 98121                             Seattle, WA 98101
6

7      Jarrett Arp (*pro hac vice*)                  /s/ Lawrence E. Buterman
       Mari Grace (*pro hac vice*)                   Lawrence E. Buterman (*pro hac vice*)
       DAVIS POLK & WARDWELL LLP                     LATHAM & WATKINS LLP
8      1050 17th Street, NW                          1271 Avenue of the Americas
       Washington, DC 20036                          New York, NY 10020
9

10     Neal Potischman (*pro hac vice*)              Sarah M. Ray (*pro hac vice*)
       DAVIS POLK & WARDWELL LLP                     LATHAM & WATKINS LLP
11     900 Middlefield Road                          505 Montgomery Street, Suite 2000
       Redwood City, CA 94063                        San Francisco, CA 94111

12     Tina Hwa Joe (*pro hac vice*)                 Elyse M. Greenwald (*pro hac vice*)
       DAVIS POLK & WARDWELL LLP                     LATHAM & WATKINS LLP
13     450 Lexington Avenue                          10250 Constellation Blvd. Suite 1100
       New York, NY 10017                            Los Angeles, CA 90067
14

15     *Counsel for Defendant Hilton Domestic*       David L. Johnson (*pro hac vice*)
       *Operating Company*                           LATHAM & WATKINS LLP
16                                                   555 Eleventh Street NW, Suite 1000
       /s/ Michael Rosenberger                       Washington, DC 20001
17     Michael Rosenberger (WSBA No. 17730)
       GORDON TILDEN THOMAS & CORDELL LLP            *Counsel for Defendants CoStar Group, Inc. and*
18     600 University Street, Suite 2915             *STR, LLC*
       Seattle, WA 98101
19                                                   /s/ Robert Maguire
       Lindsay C. Harrison (*pro hac vice*)          Robert Maguire (WSBA No. 29909)
20     Douglas E. Litvack (*pro hac vice*)           DAVIS WRIGHT TREMAINE LLP
       JENNER & BLOCK LLP                            920 5th Avenue, Suite 3300
21     1099 New York Avenue, NW, Suite 900           Seattle, WA 98104-1610
       Washington, DC  20001-4412
22                                                   Katherine B. Forrest (*pro hac vice*)
       *Counsel for Defendant Hyatt Corporation*     PAUL, WEISS, RIFKIND, WHARTON & GARRISON
23                                                   LLP
       /s/ Paul R. Taylor                            1285 Avenue of the Americas
24     Paul R. Taylor (WSBA No. 14851)               New York, NY 10019
       BYRNES KELLER CROMWELL LLP
25     1000 Second Avenue, 38th Floor                Paul D. Brachman (*pro hac vice*)
       Seattle, Washington 98104                     PAUL, WEISS, RIFKIND, WHARTON & GARRISON
26                                                   LLP
       Jeffrey S. Cashdan (*pro hac vice*)           2001 K Street NW
27     Emily S. Newton (*pro hac vice*)              Washington, DC 20006
       Lohr A. Beck (*pro hac vice*)
28     Caroline Buyak (*pro hac vice*)               *Counsel for Defendant Loews Hotels Holding*
       KING & SPALDING LLP                           *Corporation*

DEFENDANTS' JOINT MOTION TO DISMISS                    32
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

| | |
|---|---|
| 1 | 1180 Peachtree Street, NE, Suite 1600 |
| | Atlanta, GA 30309-3521 |
| 2 | |
| | *Counsel for Defendant Six Continents Hotels,* |
| 3 | *Inc.* |
| 4 | |

/s/ Jeffrey B. Coopersmith
_____
Jeffrey B. Coopersmith (WSBA No. 30954)
Steven Fogg (WSBA No. 23528)
CORR CRONIN
1015 Second Avenue, Floor 10
Seattle, WA 98104

Kristen C. Limarzi (*pro hac vice*)
Melanie L. Katsur (*pro hac vice*)
Sarah Akhtar (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036

*Counsel for Defendant Marriott International, Inc.*

/s/ Robin Wechkin
_____
Robin Wechkin (WSBA No. 24746)
SIDLEY AUSTIN LLP
8426 316th Place SE
Issaquah, WA 98027

Carrie Mahan (*pro hac vice*)
Benjamin M. Mundel (*pro hac vice*)
S. Nicole Booth (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005

Amy P. Lally (*pro hac vice*)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

*Counsel for Defendant Accor Management US Inc.*

DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

33

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200