THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEANETTE PORTILLO, *et al.*,

               Plaintiffs,

    v.

COSTAR GROUP, INC., *et al.*,

               Defendants.

Case No. 2:24-cv-00229-RSL

**DEFENDANTS' JOINT REPLY ISO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

NOTE ON MOTION CALENDAR: January 6, 2026

**ORAL ARGUMENT REQUESTED**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................... 1

II. ARGUMENT ......................................................................................................... 3

    A. Plaintiffs Have Not Plausibly Alleged An Agreement Among The
       Hotel Defendants ........................................................................................... 3

       1. The Hotel Defendants' Contracts With STR Are Not
          "Direct Evidence" Of An Agreement Among The Hotel
          Defendants ....................................................................................... 3

       2. Plaintiffs Do Not Allege An Agreement Through Parallel
          Conduct And Plus Factors ............................................................... 8

       3. Plaintiffs Misread *Gibson* ............................................................. 8

    B. Plaintiffs Identify No Unreasonable Restraint Of Trade In Any
       Relevant Market ........................................................................................... 9

       1. Plaintiffs Fail To Plausibly Allege Anticompetitive Effects .................... 9

          a. Plaintiffs' "Economic Analysis" Is Not Direct
             Evidence Of Anticompetitive Effects ............................................. 9

          b. Plaintiffs Also Fail To Allege Anticompetitive
             Effects Indirectly.......................................................................... 10

             (1) STR's Reports Are Not Likely To Result In
                 Anticompetitive Effects ................................................. 10

             (2) Plaintiffs Do Not Allege That The Structure
                 Of The "Luxury Hotel Market" Makes It
                 Conducive To Anticompetitive Effects .......................... 12

       2. Plaintiffs Cannot Salvage Their Deficient Market
          Definitions..................................................................................... 13

    C. Plaintiffs' Theory Of Antitrust Injury Remains Speculative And
       Attenuated .................................................................................................. 14

III. CONCLUSION..................................................................................................... 15

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

i

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

5

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011)...................................................................................................3

6

*Dist. of Columbia v. RealPage, Inc.*,
   2025 WL 1161194 (D.C. Super. Ct. Apr. 7, 2025)................................................................12

7

8

*Epicor Software Corp. v. Alternative Tech. Sols., Inc.*,
   2013 WL 12130024 (C.D. Cal. Dec. 2, 2013) .....................................................................12

9

*Gibson v. Cendyn Grp., LLC*,
   148 F.4th 1069 (9th Cir. 2025) ....................................................................................1, 2, 8, 9

10

11

*Honey Bum, LLC v. Fashion Nova, Inc.*,
   63 F.4th 813 (9th Cir. 2023) ..................................................................................................4

12

13

*In re Loc. TV Advert. Antitrust Litig.*,
   2022 WL 3716202 (N.D. Ill. Aug. 29, 2022) ..................................................................8, 10

14

15

*In re Pork Antitrust Litig.*,
   495 F. Supp. 3d 753 (D. Minn. 2020).................................................................................4, 6

16

*In re Pork Antitrust Litig.*,
   781 F. Supp. 3d 758 (D. Minn. 2025) ............................................................................4, 6, 11

17

18

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
   709 F. Supp. 3d 478 (M.D. Tenn. 2023)...............................................................................14

19

*In re RealPage, Inc., Rental Software Antitrust Litig.*,
   2023 WL 9004806 (M.D. Tenn. Dec. 28, 2023)....................................................................10

20

21

*Maple Flooring Mfrs.' Ass'n v. United States*,
   268 U.S. 563 (1925)..............................................................................................................10

22

*Olean Wholesale Grocery Coop., Inc. v. Agri Stats, Inc.*,
   2020 WL 6134982 (N.D. Ill. Oct. 19, 2020)..........................................................................6

23

24

*Portillo v. CoStar Group, Inc.*,
   2025 WL 2495053 (W.D. Wash. Aug. 29, 2025) ..........................................................*passim*

25

26

*Qualey v. Pierce Cnty.*,
   2025 WL 306421 (W.D. Wash. Jan. 27, 2025)......................................................................8

27

28

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

ii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

*Salameh v. Tarsadia Hotel,*
    726 F.3d 1124 (9th Cir. 2013) ............................................................................15

*Segal v. Amadeus IT Grp., S.A.,*
    2025 WL 963751 (N.D. Ill. Mar. 31, 2025)........................................................7, 12

*Todd v. Exxon Corp.,*
    275 F.3d 191 (2d Cir. 2001)...................................................................4, 6, 7, 11

*U.S. Care, Inc. v. Pioneer Life Ins. Co. of Ill.,*
    244 F. Supp. 2d 1057 (C.D. Cal. 2002) .............................................................15

*United States v. Container Corp. of Am.,*
    393 U.S. 333 (1969).............................................................................................4, 7

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

iii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1  **I.      INTRODUCTION**

2          Plaintiffs' Opposition confirms that they cannot cure the deficiencies the Court identified

3  when it dismissed Plaintiffs' original complaint.  Plaintiffs claim this case is about the exchange

4  of "pricing data" that allows the Hotel Defendants to sell "luxury" hotel rooms at "anticompetitive

5  prices."  Opp. 1.[1]  But after two tries, Plaintiffs still have not alleged that the Hotel Defendants

6  agreed to exchange such data, or even that any Hotel Defendant receives any other hotel's "pricing

7  data"—or any other Hotel Defendant's competitively-sensitive information—through STR's

8  reports.  Because Plaintiffs still do not allege an agreement, any anticompetitive effects, or antitrust

9  injury sufficient to state a Section 1 claim, their FAC should be dismissed with prejudice.

10          ***No agreement***.  Plaintiffs argue that the Hotel Defendants' individual contracts with STR

11  are "direct evidence" of an agreement among the Hotel Defendants to share competitively-

12  sensitive information.  Opp. 4.  But the Court already considered and rejected that argument,

13  explaining that the Hotel Defendants' independent decisions to use STR's benchmarking services

14  are not "direct evidence of an explicit agreement among STR and [Hotel Defendants] that violates

15  Section 1." *Portillo v. CoStar Group, Inc.*, 2025 WL 2495053, at *5 (W.D. Wash. Aug. 29, 2025).

16  Plaintiffs' reliance on the actual terms of the Hotel Defendants' contracts with STR adds nothing

17  new.  Those contracts require only that each Hotel Defendant share with STR—not any other

18  hotel—aggregated historical revenue and occupancy (*i.e.*, non-price) data in order to receive STR's

19  benchmarking reports.  Those reports in turn only provide historical revenue and occupancy data

20  that is aggregated and anonymized across hundreds of hotels, if not more, and at its most granular,

21  across at least three other hotels.  The contracts between STR and each Hotel Defendant are not

22  "direct evidence" of a horizontal agreement among the Hotel Defendants, nor are they even vertical

23  agreements within the alleged "luxury hotel market" because STR does not sell hotel rooms.  *See*

24  *Gibson v. Cendyn Grp., LLC*, 148 F.4th 1069, 1081-82 (9th Cir. 2025).  STR's contracts with the

25  Hotel Defendants are "ordinary sales contract[s]" for benchmarking services that do "not restrain

26

27  [1] "Opp." refers to Pls.' Opp. to Defs.' Mot. to Dismiss, ECF No. 128.  "Mot." refers to Defs.' Joint
   Mot. to Dismiss, ECF No. 125.  "FAC" refers to Plaintiffs' First Amended Complaint, ECF No.
28  121.  Ex. __ refers to exhibits to the FAC.

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1  trade and without [which], trade would be impossible." *Id.* (citation omitted).  Moreover, STR's

2  contracts with the Hotel Defendants are not proof that the Hotel Defendants agreed to share any

3  information because they explicitly require that STR keep a hotel's individual data confidential

4  and include numerous precautions to prevent any hotel's data from being identified through STR's

5  reports.  Plaintiffs dismiss all of that as irrelevant, arguing it is enough they allege the Hotel

6  Defendants provide data to STR and receive STR's reports, knowing that other Hotel Defendants

7  do the same.  Opp. 15.  But Plaintiffs cite no case that supports their position, and the antitrust

8  laws do not "require businesses to decline to take advantage of a service because its competitors

9  already use that service."  *Gibson*, 148 F.4th at 1084.  Were it otherwise, the use of all

10  benchmarking services, across a multitude of industries, would amount to antitrust conspiracies.

11  That is not the law.

12      ***No anticompetitive effects***.  The FAC does not cure Plaintiffs' deficient relevant product

13  and geographic market allegations, which are fatal to pleading an unreasonable restraint.  Even if

14  Plaintiffs' market definitions were facially plausible, Plaintiffs admit that STR's benchmarking

15  reports do not contain any "actual hotel prices."  Opp. 1.  Instead, Plaintiffs resort to the incredible

16  argument that the *aggregated* and *anonymized revenue* and *occupancy* data in STR's reports is

17  even "*more dangerous*" than specific, identifiable pricing information.  *Id.* 27 (emphasis added).

18  Plaintiffs' argument turns decades of precedent on its head.  It also (again) relies on linguistic

19  stretches to try to transform ADR and RevPar data into "standardized" or "realized" "prices."  *Id.*

20  Neither ADR nor RevPar "encode" the price that any hotel charged or intends to charge for any

21  hotel room, so it is implausible that any hotel could monitor or coordinate pricing with any other

22  competing hotel based on those data.  Plaintiffs identify no case that has found anticompetitive

23  effects based on the exchange of aggregated, averaged, and anonymous backward-looking revenue

24  and occupancy data, and Defendants respectfully submit that this Court should decline Plaintiffs'

25  invitation to be the first.

26      ***No antitrust injury***.  Plaintiffs continue to allege that the use of pricing algorithms in the

27  hotel industry is "widespread"; that STR's reports might be (but are also prohibited from being)

28  one of many inputs into the Hotel Defendants' pricing algorithms; and that those platforms, which

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

are not at issue in this litigation, are supposedly driving "luxury" hotel room prices higher.  The link between STR's reports and the supposedly "supracompetitive" prices that Plaintiffs paid for "luxury" hotel rooms thus remains too speculative and attenuated to plead antitrust injury.

## II.    ARGUMENT

### A.    Plaintiffs Have Not Plausibly Alleged An Agreement Among The Hotel Defendants

The FAC should be dismissed because Plaintiffs do not plausibly allege that the Hotel Defendants agreed to exchange any information with each other.  Plaintiffs allege only individual contracts between STR and each Hotel Defendant but fail to allege any horizontal agreement among the Hotel Defendants.  Plaintiffs argue that information sharing claims under Section 1 are "analytic[ally] distinct," Opp. 14, but provide no authority holding that they can plead a Section 1 claim without alleging an agreement among the Hotel Defendants.  *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 223 (3d Cir. 2011) ("the exchange of price information still requires showing that the defendants had an agreement").  To the contrary, Plaintiffs admit that they must allege that the Hotel Defendants "agreed to participate in a system that regularly shares sensitive information," and that allows "participants to monitor and adjust to one another's pricing behavior." Opp. 4.  The FAC should be dismissed because Plaintiffs allege no such agreement.

#### 1.    The Hotel Defendants' Contracts With STR Are Not "Direct Evidence" Of An Agreement Among The Hotel Defendants

Plaintiffs' primary theory of agreement is that the Hotel Defendants' independent decisions to provide data to STR and receive STR's benchmarking reports, and the contracts reflecting those commitments, are "direct evidence" of an agreement among the Hotel Defendants to exchange "pricing data."  Opp. 4, 13-22.  But STR's individual contracts with each Hotel Defendant are evidence to the contrary because they do not reflect an agreement by any Hotel Defendant to share competitively-sensitive information, including "pricing data," with any other Hotel Defendant.  Nor do Plaintiffs plausibly allege that subscribing hotels can use STR's reports to "monitor and adjust" their "pricing behavior."

Plaintiffs argue that the alleged data exchange is "direct evidence" of an agreement.  Opp.

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

13-15.  But direct evidence requires no inferences—it is the proverbial "smoking-gun."  *Honey Bum*, *LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir. 2023).  Accordingly, cases in which courts have found an information exchange to be "direct" evidence of an agreement typically involve a direct, give-get arrangement among competitors, often with no middleman.  *See United States v. Container Corp. of Am.*, 393 U.S. 333, 335 (1969) (each defendant directly "request[ed]" from its competitors "information as to the most recent price [its competitor] charged" and the competitor "usually furnished the data with the expectation that it would be furnished reciprocal information when[ever] it wanted" the same data); *Todd v. Exxon Corp.*, 275 F.3d 191, 213 (2d Cir. 2001) (defendants regularly met to discuss "'company-specific' information").[2]

Plaintiffs here allege something entirely different:  that the Hotel Defendants provide STR with certain revenue and occupancy data from across their hotels (*i.e.*, total rooms available, total rooms sold, and total revenue) for a given time period, in order to receive a benchmarking report that allows them to compare their performance against the broader industry or a smaller "competitive set."  FAC ¶¶ 85-104, Exs. 1, 4-7.  STR's benchmarking reports include ADR, RevPar, and occupancy rate data that is aggregated, averaged, and anonymized across at least three other hotels, but typically more.  FAC ¶¶ 63-84, 183, Exs. 1, 4-7, 8; Mot. 8.  STR's contracts confirm, and Plaintiffs do not dispute, that STR is obligated to keep each hotel's individual data confidential and may only share it in an aggregated and non-identifiable format, and that STR takes precautions to keep hotels' individual data confidential.  Exs. 1-2, 4-6, 8; *see also* Mot. 8-9, 13.

Plaintiffs argue that STR has "eliminate[d] anonymity" because hotels self-select the other hotels included in their competitive set and are aware of which hotels contribute data to STR.  Opp. 18.  They further contend that STR grades competitive sets, and that STR's reports allow hotels to

---

[2] Plaintiffs also cite *In re Pork Antitrust Litigation*, 781 F. Supp. 3d 758 (D. Minn. 2025) (*Pork II*), which is distinguishable on other grounds, as explained below.  Most notably, though defendants allegedly exchanged data through an intermediary, they were able to disaggregate "which data belonged to which Defendant, thereby allowing them to monitor one another's pork production."  *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 766-67 (D. Minn. 2020) (*Pork I*); *see also Pork II*, 781 F. Supp. 3d at 828, 870.  In other words, the defendants were able to simulate a give-get arrangement in which Company A received what was readily identifiable as Company B's data and vice versa.

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

"infer precisely how their closest competitors are performing." *Id.* 17-18. Plaintiffs' arguments are not supported by their allegations. Plaintiffs do not allege that STR requires competitive sets to be reciprocal, nor that any Hotel Defendant has coordinated its competitive set with its competitors. Nor do Plaintiffs allege that subscribing hotels know which other hotels have included their hotel in their comp set. Plaintiffs thus lack any allegations that amount to "direct evidence" of an agreement. Moreover, Plaintiffs do not plausibly allege that any hotel's individual data can be deciphered from the aggregated and anonymized data in STR's reports. Plaintiffs do not allege *any* instance where *any* hotel has attempted to "de-anonymize" the data in any STR report, let alone succeeded in doing so. And even if STR's reports could theoretically be "de-anonymized," they still would not reflect the price that any hotel charged or intends to charge for any hotel room because the ADR and RevPar data in STR's reports reflects only the average revenue generated across a hotel's entire inventory of rooms. FAC ¶¶ 70, 73–74, 83; *see also Portillo*, 2025 WL 2495053, at *5. This case therefore does not involve any give-get arrangement among the Hotel Defendants, and does not resemble any of the cases that Plaintiffs rely upon.

Recognizing these deficiencies, Plaintiffs remarkably claim that the provision of aggregated, averaged, and anonymized revenue and occupancy data is "more dangerous" and removes "competitive uncertainty" in setting prices for hotel rooms. Opp. 27. Plaintiffs' explanation is nonsensical. Plaintiffs posit that if a "hotel learns from its STAR report that its three closest competitors . . . were 94% full at an ADR of $520 while it was only 78% full at $500," it will know it is "underperforming" and that it can increase its prices without "uncertainty." *Id.* 3. But knowing that the average ADR across a hotel's competitive set was $520 for some prior time period does not tell a hotel what price any other hotel in its competitive set charged or intends to charge for any hotel room next week or next month. Moreover, if a hotel's ADR is below the average in its competitive set, it does not indicate that raising prices would necessarily be beneficial. For instance, in Plaintiffs' example, the hotel at issue is already losing in the market with a lower ADR, so there is no reason to think the hotel will better compete by raising its prices; if anything, it would be more rational for the hotel to reduce its prices to address the non-price issues affecting its performance. Plaintiffs' example only confirms the implausibility of their

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

5

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

allegations and the inability of the Hotel Defendants to coordinate their pricing decisions through STR's reports.

Plaintiffs attempt to analogize their allegations to those in *Pork II*, *Todd*, and *Container Corp.*, *see* Opp. 13-22, but each of those cases is inapposite. In *Pork I*, the district court denied the defendant pork producers' motion to dismiss plaintiffs' Section 1 claims because the plaintiffs had plausibly alleged that the defendants had supplied Agri Stats, a benchmarking company, with "competitively sensitive supply and pricing data," and the defendants could "decipher" from Agri Stats' ostensibly anonymized reports "which data belonged to which Defendant, thereby allowing them to monitor one another's pork production." 495 F. Supp. 3d at 766-67. In other words, although Agri Stats stood in the middle, the defendants effectively agreed to participate in a one-to-one exchange of competitively-sensitive information. Later, at summary judgment, the court found that there was evidence of a "high level of interfirm communications" among the pork defendants; the defendants had "attempted to deanonymize" Agri Stats' reports "with an estimated 60% success rate"; and "Agri Stats took no action to stop such conduct . . . ." *Pork II*, 781 F. Supp. 3d at 822, 870.

*Pork I* and *II* are not "analogous." Opp. 14. Plaintiffs do not allege that any Hotel Defendant provides, or any STR report includes, the price that any hotel has charged or intends to charge for any hotel room, nor do Plaintiffs allege that any Hotel Defendant has attempted to, or succeeded in, deanonymizing STR's reports such that any hotel can "decipher" which data belongs to any other participating hotel, or that STR's reports enable participating hotels to "monitor" any other hotel's pricing or supply decisions. *Pork I*, 495 F. Supp. 3d at 766-67; *see also Pork II*, 781 F. Supp. 3d at 828, 870.[3]

*Todd* also does not help Plaintiffs. Opp. 14-15. In *Todd*, the Second Circuit found that plaintiffs had plausibly alleged an information exchange claim under Section 1 where they pled

---

[3] *Olean Wholesale Grocery Coop., Inc. v. Agri Stats, Inc.*, 2020 WL 6134982, at *5-7 (N.D. Ill. Oct. 19, 2020), which Plaintiffs also cite, Opp. 22 n.48, is no different. There, the court held that plaintiffs had plausibly alleged an agreement among the turkey-producing defendants because subscribers received data from every other subscriber, the defendants could decipher the data pertaining to each producer, and the executives of the defendants had regular opportunities to meet and discuss production targets. The FAC lacks comparable allegations.

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

that 14 oil and petrochemical companies had "regularly shar[ed] detailed information regarding compensation paid to nonunion managerial, professional, and technical" employees. 275 F.3d at 195. The *Todd* plaintiffs alleged that defendants had "instituted a system whereby they periodically conducted surveys comparing past and current [] salary information" for specific types of employees, and while the information was distributed by a third-party firm in aggregated format, the defendants regularly met to discuss "'company-specific' information," which allowed them to monitor their competitors' salary budgets and coordinate employee salaries. *Id.* at 196, 213. In contrast to *Todd*, Plaintiffs here do not allege that the Hotel Defendants are exchanging the actual price charged for any hotel room, that participating hotels can identify any other hotel's specific revenue or occupancy data, or any communications among the Hotel Defendants discussing "'company-specific' information." *Id.*

Plaintiffs also have not plausibly alleged an agreement under *Container Corp*. Opp. 14, 18. In *Container Corp.*, "the essence of the [defendants'] agreement was to furnish price information whenever requested." 393 U.S. at 335. There, the Supreme Court inferred an agreement among the defendants where (1) each defendant directly "request[ed]" from its competitors "information as to the most recent price [its competitor] charged," *id.*; (2) "on receiving [such a] request," each defendant "furnished the data with the expectation that it would be furnished reciprocal information when[ever] it wanted [the same data]," *id.*; and (3) once a defendant had its competitors' pricing information, the defendant quoted the same price to customers as its competitors in the "majority of instances." *Id.* at 339 (Fortas, J. concurring). This Court previously rejected Plaintiffs' attempt to plead an agreement under *Container Corp.*, and the FAC supplies no new allegations that warrant a different outcome now. *Portillo*, 2025 WL 2495053, at *3, 4-5. Plaintiffs do not allege that any Hotel Defendant receives any "pricing data" or other competitively-sensitive information from any other Hotel Defendant, nor any other facts that warrant inferring an agreement under *Container Corp. See id.*; *see also Segal v. Amadeus IT Grp., S.A.*, 2025 WL 963751, at *6 (N.D. Ill. Mar. 31, 2025) (holding that plaintiffs did not allege an agreement among the hotel defendants under *Container Corp.*).

The cases that Plaintiffs cite, including *Pork II* and *Todd*, confirm that pleading an

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

agreement among competitors to exchange competitively-sensitive information requires more than allegations that competitors subscribed to the same benchmarking service; instead, it requires Plaintiffs to allege that competitors used the alleged "conduit" to "communicate with one another about competitively sensitive information." *In re Loc. TV Advert. Antitrust Litig.*, 2022 WL 3716202, at *7 (N.D. Ill. Aug. 29, 2022). Plaintiffs' claim fails because they do not plausibly allege that the Hotel Defendants exchange competitively-sensitive information, including "pricing data," through STR's reports, nor that the Hotel Defendants can use STR's reports to communicate with each other about pricing.

### 2. Plaintiffs Do Not Allege An Agreement Through Parallel Conduct And Plus Factors

As a fallback, Plaintiffs argue in conclusory fashion that they have pled parallel conduct and plus factors from which an agreement to exchange competitively-sensitive information can be inferred. Opp. 15-16. However, Plaintiffs do not address any of Defendants' arguments, *see* Mot. 14-19, and the Court already has rejected Plaintiffs' theory of parallel conduct. In dismissing Plaintiffs' original complaint, the Court held allegations that "the defendant hotel operators were all clients of STR within the relevant time period and received . . . STR's benchmarking reports" were not "of any significance," and insufficient to establish parallel conduct, or to infer an agreement among the Hotel Defendants. *Portillo*, 2025 WL 2495053, at *5. Plaintiffs' unchanged theory of parallel conduct fails for the same reasons.[4]

### 3. Plaintiffs Misread *Gibson*

Plaintiffs attempt to distinguish the Ninth Circuit's decision in *Gibson*, Opp. 22-23, but *Gibson* only confirms that Plaintiffs have not plausibly alleged a viable Section 1 claim. In *Gibson*, the Ninth Circuit addressed whether plaintiffs sufficiently stated a Section 1 claim when they alleged that "competing hotels *independently* purchased licenses for the same" pricing

---

[4] Plaintiffs do not respond to Defendants' argument that they have not alleged an agreement among the Hotel Defendants under a hub-and-spoke theory, Mot. 19, and therefore have waived any argument to the contrary. *See Qualey v. Pierce Cnty.*, 2025 WL 306421, at *12 (W.D. Wash. Jan. 27, 2025) ("When a party fails to respond to an argument made to dismiss a claim, the argument is waived.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1    recommendation software, when the software "did not share any licensing hotel's confidential

2    information among the competing licensees." 148 F.4th at 1076. In affirming the dismissal of the

3    plaintiffs' claims, the Ninth Circuit held that the licensing agreements between the hotel

4    defendants and the pricing recommendation software provider were "ordinary sales contract[s]"

5    that did not restrain trade in the relevant market, *i.e.*, the market for hotel room rentals on the Las

6    Vegas Strip, because they did "not affect the competitive incentives in the market for hotel-room

7    rentals . . . ." *Id.* at 1082-83.

8    Like the contracts at issue in *Gibson*, STR's contracts with the Hotel Defendants are

9    "ordinary sales contract[s]." *Id.* STR's benchmarking reports—which, unlike the pricing

10   recommendation software at issue in *Gibson*, do not include any pricing recommendations—

11   similarly do not affect the competitive incentives in the market for "luxury" hotel rooms. *Id.*

12   Instead, STR's reports are a "tool in the struggle for commercial advantage," and enhance

13   competition, rather than "take away that struggle." *Id.* at 1083. Plaintiffs attempt to distinguish

14   *Gibson* on the basis that STR allegedly provides hotels with "rivals' sensitive performance

15   information," Opp. 23, but Plaintiffs do not plausibly allege that any participating hotel receives

16   competitively-sensitive information from any other participating hotel through STR's reports. *See*

17   *supra* at II.A. *Gibson* thus confirms what Plaintiffs have alleged is only a series of ordinary sales

18   contracts that do not violate Section 1.

19
20   **B.    Plaintiffs Identify No Unreasonable Restraint Of Trade In Any Relevant Market**

21   Plaintiffs' Section 1 claim also fails for the independent reason that Plaintiffs do not

22   adequately allege that any agreement to exchange information had, or is likely to have,

23   anticompetitive effects in any relevant market. *See* Mot. 20-29.

24   **1.    Plaintiffs Fail To Plausibly Allege Anticompetitive Effects**

25   Plaintiffs do not allege anticompetitive effects through either direct or indirect evidence.

26   **a.    Plaintiffs' "Economic Analysis" Is Not Direct Evidence
27   Of Anticompetitive Effects**

28   Plaintiffs' "economic analysis" of "future listing prices" from a six-month period in 2024,

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

aggregated across 15 metropolitan markets, is not "direct evidence" that STR's benchmarking reports *cause* higher prices for "luxury" hotel rooms in any relevant market. Plaintiffs argue their regression "controls" for hotel location, star rating, and day of the week, and "STR participation" is the only explanatory variable. Opp. 33-34. But Plaintiffs' analysis admittedly does not account for any number of other factors that could explain the difference in pricing besides the use of STR, including differences in brand value, differences in amenities or loyalty programs, proximity to attractions, or hotel reputation, among other factors. Mot. 21.

As for their "parallel-pricing analysis," Plaintiffs claim their charts show "synchronized" pricing patterns, Opp. 34, but they instead show varied and inconsistent prices. Mot. 21-22. And Plaintiffs have no response to Defendants' argument that their analysis is not limited to "luxury" hotels, rendering the charts meaningless. *Id.* The Court need not, and should not, accept Plaintiffs' "unwarranted inferences" and labels. *In re RealPage, Inc., Rental Software Antitrust Litig.*, 2023 WL 9004806, at *14 (M.D. Tenn. Dec. 28, 2023).

### b. Plaintiffs Also Fail To Allege Anticompetitive Effects Indirectly

Plaintiffs argue that the nature of the information exchanged and the structure of the "luxury hotel market" supports an inference of anticompetitive effects, Opp. 24-29, but Plaintiffs' allegations on both issues remain deficient.

### (1) STR's Reports Are Not Likely To Result In Anticompetitive Effects

The aggregated, averaged, and anonymized backward-looking non-price data in STR's reports is the type of information that is "generally favored" by the antitrust laws and recognized by courts as procompetitive. *In re Loc. TV Advert. Antitrust Litig.*, 2022 WL 3716202, at *3; *Maple Flooring Mfrs.' Ass'n v. United States*, 268 U.S. 563, 582-83 (1925). Plaintiffs attempt to avoid that conclusion by arguing that the data in STR's reports is "granular and customized," Opp. 24, but Plaintiffs do not dispute that the ADR, RevPar, and occupancy rate data in STR's reports is aggregated and averaged across at least three other hotels, and usually more. While Plaintiffs argue that STR's reports allow users to "'compare' their own realized rates and occupancy with

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

10

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   'those of . . . particular competitors,'" *id.* 24-25, as discussed above, Plaintiffs do not plausibly

2   allege that any participating hotel receives any other hotel's individually-identifiable information,

3   or that any hotel's individual data can be deciphered from the aggregated data in STR's reports.

4   *See supra* at II.A.  Plaintiffs rely on *Todd* to argue that aggregating and anonymizing data across

5   only three other hotels is too few, Opp. 24-25, but in *Todd*, there were allegations that the

6   defendants held "regular meetings" to discuss "'company-specific' information" regarding salaries

7   for specific types of employees, which allowed defendants to coordinate salaries.  *Todd*, 275 F.3d

8   at 197, 213.  Plaintiffs here plead no comparable allegations.

9       Plaintiffs also turn the law on its head by arguing that the aggregated and averaged data in

10  STR's reports is "more dangerous."  Opp. 27.  Whether aggregated or not, ADR, RevPar, and

11  occupancy rate data do not reveal the price that any hotel charged or intends to charge for any hotel

12  room.  *Portillo*, 2025 WL 2495053, at *6.  Nor do Plaintiffs plausibly allege that the aggregated

13  data in STR's reports can be used to "target higher prices."  Opp. 25.  Plaintiffs point to *Pork II*

14  for support, but the analogy fails.  In *Pork II*, Agri Stats' benchmarking reports packaged the data

15  to provide "as near apples-to-apples comparison to the recipient's products as possible."  *Pork II*,

16  781 F. Supp. 3d at 788.  The court held the reports could have anticompetitive effects, even though

17  they included only aggregated pricing data, because a participating company "who identifies that

18  its price for a certain product is below the price averages included in the reports . . . could be

19  motivated to raise its price to meet or exceed that average" and "if all subscribers use the reports

20  to meet or exceed the price averages included in the reports, then collectively the new average

21  price will become higher, and could continue to increase."  *Id.* at 812.

22      The revenue and occupancy data in STR's reports is not analogous to the average price

23  data in *Pork II*.  ADR reflects the total revenue that a hotel receives across all of its rooms sold

24  during a given time period, and RevPar reflects total room revenue divided by the total number of

25  rooms available.  Ex. 1 at 3.  Neither metric reflects the price that any *individual* hotel charged, or

26  intends to charge, for any *individual* type of hotel room and instead reflects only the *average*

27  *revenue* generated across *all* of a hotel's rooms regardless of type.  *Id.*  The "index" that is supplied

28  in STR's reports divides the subscribing hotel's performance (*i.e.*, its ADR, RevPar, or occupancy

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1   rate) by its competitive set's aggregated and averaged data and multiplies that number by 100. *Id.*

2   The "index" does not provide any recommendation with respect to price or supply, and simply

3   reflects whether a participating hotel's ADR, RevPar, and occupancy rate are above or below the

4   aggregated and averaged data from the hotels in its competitive set. *Id.* As discussed above, a

5   hotel's knowledge that its ADR or RevPar for some prior time period was below the aggregated

6   and averaged ADR or RevPar of the hotels in its competitive set does not mean that it would be

7   competitively-advantageous for the hotel to increase its prices in the future for any hotel room, nor

8   would it remove any "competitive uncertainty" in making pricing decisions. *See supra* at II.A.

9         Plaintiffs identify no case finding aggregated, averaged, anonymized, and historical

10  revenue and occupancy data of the kind reflected in STR's reports is likely to cause anticompetitive

11  effects on prices, and Plaintiffs supply no reason for this Court to be the first. *See Segal,* 2025 WL

12  963751, at *6 (holding that the link between occupancy data and hotel room prices was too

13  attenuated to allege anticompetitive effects); *see also Dist. of Columbia v. RealPage, Inc.,* 2025

14  WL 1161194, at *7-8 (D.C. Super. Ct. Apr. 7, 2025) (refusing to infer anticompetitive effects on

15  apartment rents based on the defendants' alleged exchange of "occupancy rates" because plaintiff

16  failed to plead facts showing how that exchange affected competition).

17                          **(2)    Plaintiffs Do Not Allege That The Structure Of
                                     The "Luxury Hotel Market" Makes It Conducive
18                                   To Anticompetitive Effects**

19        Plaintiffs also have not plausibly alleged facts supporting their conclusion that the structure

20  of the "luxury hotel market" makes it conducive to anticompetitive effects.

21        ***Market concentration.*** Plaintiffs argue that the "luxury hotel market" is highly

22  concentrated because in each of the 15 alleged metropolitan markets, the Hotel Defendants and

23  their alleged co-conspirators supposedly control "at least 50%, and on average 70%, of the

24  market." Opp. 28. Plaintiffs argue they have alleged that the Hotel Defendants "commonly

25  centralize their approaches to pricing *across* franchisees," *id.*, but the FAC nowhere alleges that

26  the Hotel Defendants control the pricing at all of the hotels operating under their brands and

27  franchises. Nor do Plaintiffs attempt to address Defendants' argument that they have improperly

28  lumped together all Hotel Defendants' and their co-conspirators' market shares across all U.S.

1   markets.  Plaintiffs thus have not demonstrated that any one of the 15 geographic markets at issue

2   is actually "highly concentrated."  Mot. 24-25; *see Epicor Software Corp. v. Alternative Tech.*

3   *Sols., Inc.*, 2013 WL 12130024, at *2 (C.D. Cal. Dec. 2, 2013) (finding plaintiffs failed to plausibly

4   allege defendant controlled third parties such that their shares could be aggregated).[5]

5          ***Fungibility***.  Plaintiffs do not address any of the commonsense reasons why "luxury" hotel

6   rooms are not fungible, including the existence of significant non-price competition.  Mot. 25-26.

7   Instead, Plaintiffs argue that there would be no reason to subscribe to STR unless "luxury" hotel

8   rooms are "fungible."  Opp. 28.  But Plaintiffs do not explain why that is so.  STR's reports do not

9   provide any information regarding specific hotel *rooms*; they provide aggregated and anonymized

10  performance data across *hotels* for hotel operators to identify trends, set long-term strategies, and

11  manage risk.

12         ***Inelastic Demand***.  Plaintiffs contend that demand for "luxury" hotel rooms is "relatively

13  inelastic" because travelers must secure lodging for specific dates and "generally cannot postpone

14  their stay in response to higher prices."  Opp. 29.  But Plaintiffs' argument defies commonsense

15  and experience as, in many cases, travelers can and will postpone a trip due to high prices, and in

16  any event, Plaintiffs' new theory is not alleged in their complaint.  *See FAC ¶ 179.*

17         **2.    Plaintiffs Cannot Salvage Their Deficient Market Definitions**

18         Plaintiffs' efforts to plead an unreasonable restraint also fail because Plaintiffs have not

19  alleged a facially plausible relevant product or geographic market.

20         ***Product Market***.  Plaintiffs have not defined their purported "luxury hotel market" based

21  on either reasonable interchangeability or cross-elasticity of demand.  Mot. 27.  Plaintiffs argue it

22  is enough that they have provided a "qualitative description" and "practical indicia" that

23  supposedly show "luxury" hotels are not "reasonably interchangeable in the eyes of users" with

24  other categories of hotels.  Opp. 30.  But Plaintiffs do not point to any definition of what constitutes

25  a "luxury" hotel, nor do they explain how it is possible to determine which hotels are in or out of

26  their alleged market.  Plaintiffs say that Kayak's four- and five-star ratings are not part of their

27

28  [5]  Contrary to Plaintiffs' assertion, Opp. 29-30, Defendants do not concede that Plaintiffs have adequately pled market power.

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

market definition, and only used as a "practical proxy." *Id.* 31.  But Plaintiffs do not allege that consumers or the industry view Kayak's in-house four- or five-star ratings as singling out "luxury" hotels, nor do Plaintiffs allege that their purported "luxury" hotel market aligns with how consumers or the industry classify hotels (including STR's classification system, which includes a narrower category of hotels as "luxury").  FAC ¶¶ 208-213; Mot. 27-28.  Plaintiffs also have not alleged a relevant market based on cross-elasticity of demand because they, admittedly, only allege a supposed price differential between "luxury" and "non-luxury" hotels, Opp. 31, which says nothing about cross-elasticity of demand.  Mot. 28-29.

***Geographic Market.***  Plaintiffs argue that their geographic market consisting of 15 "metropolitan areas" suffices because they have alleged "that consumers typically search for accommodation within a metropolitan area tied to their destination."  Opp. 32.  Once again, Plaintiffs allege no facts that support their conclusion.  Plaintiffs do not allege that travelers looking for a "luxury" "beachfront" hotel will consider a "luxury" hotel in a "city center," or near the airport, even if both are within the same metropolitan area.  FAC ¶¶ 214-31; Mot. 28-29; *see also In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 530 (M.D. Tenn. 2023) (holding that student plaintiffs' MSA markets were not "plausible" because they offered no "explanation for how large cities containing multiple universities" reflected the boundaries to which students could "practically turn" for housing).  Plaintiffs' backup argument— that STR organizes hotels by metropolitan area for its reports, Opp. 33—fares no better because it says nothing about the effective geographic area of competition for a traveler considering a "luxury" hotel, or even which other properties a given hotel perceives as its competitors.

### C.   Plaintiffs' Theory Of Antitrust Injury Remains Speculative And Attenuated

Plaintiffs still do not connect the Hotel Defendants' receipt of STR's benchmarking reports to the supposedly higher prices for "luxury" hotel rooms they allegedly paid, and thus have not alleged any non-speculative antitrust injury.  Mot. 29-30.

Plaintiffs argue they have cured the deficiencies the Court previously identified by alleging a supposedly "linear, specific chain" that shows "STR→hotel→pricing decision," Opp. 2, 34-35, but that is not what the FAC alleges.  Plaintiffs continue to allege that there is widespread use of

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1  revenue management software and pricing algorithms in the hotel industry, including among the

2  Hotel Defendants, and that such software is responsible for driving hotel room prices "higher."

3  FAC ¶¶ 201-07.  Plaintiffs also allege that STR's reports may be (but also are prohibited from

4  being) one of many different data sets that are fed into a hotel's revenue management software and

5  pricing algorithms to determine pricing.  *Id.* ¶¶ 117, 206.

6          Plaintiffs contend that they now allege the "primary mechanism of harm" is STR's reports,

7  Opp. 35, but they point to no allegations that support their theory.  At most, Plaintiffs allege that

8  the Hotel Defendants use the STR reports that they have paid for in their daily operations to

9  evaluate their performance and the performance of their employees.  FAC ¶¶ 137-47.  Missing are

10  any allegations that any Hotel Defendant relies on STR's reports to determine or set its pricing, or

11  that doing so is even possible.  Plaintiffs say it can both be true that the Hotel Defendants "receive

12  pricing recommendations from their revenue management systems and that they adjust rates based

13  on data received from STR," Opp. 35 n.110, but their argument just confirms that the link between

14  STR's reports and the supposedly higher prices that Plaintiffs paid for "luxury" hotel rooms is too

15  speculative and attenuated to plausibly allege any antitrust injury.  *See Portillo*, 2025 WL 2495053,

16  at *6 n.2.

17  **III.    CONCLUSION**

18          For the foregoing reasons, the Court should dismiss the FAC with prejudice.  Plaintiffs'

19  inability to cure the deficiencies the Court previously identified, and their bare request for leave to

20  amend, confirms that amendment would be futile.  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124,

21  1133 (9th Cir. 2013); *U.S. Care, Inc. v. Pioneer Life Ins. Co. of Ill.*, 244 F. Supp. 2d 1057, 1065

22  (C.D. Cal. 2002) (denying a "bare request" for leave to amend).

23

24

25

26

27

28

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

1       *I certify that this memorandum contains 5,685 words, in compliance with Court Order,*

2  *Dkt. 119, and the Local Civil Rules.*

3

4  /s/ Heidi Bradley
Heidi Bradley (WSBA No. 35759)
BRADLEY BERNSTEIN SANDS

5  2800 First Avenue, Suite 326
Seattle, WA 98121

6

7  Jarrett Arp (*pro hac vice*)
Mari Grace (*pro hac vice*)
DAVIS POLK & WARDWELL LLP

8  1050 17th Street, NW
Washington, DC 20036

9

10  Neal Potischman (*pro hac vice*)
DAVIS POLK & WARDWELL LLP

11  900 Middlefield Road
Redwood City, CA 94063

12

13  Tina Hwa Joe (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue

14  New York, NY 10017

15  *Counsel for Defendant Hilton Domestic Operating Company*

16  /s/ Michael Rosenberger

17  Michael Rosenberger (WSBA No. 17730)
GORDON TILDEN THOMAS & CORDELL LLP

18  600 University Street, Suite 2915
Seattle, WA 98101

19  Lindsay C. Harrison (*pro hac vice*)

20  Douglas E. Litvack (*pro hac vice*)
JENNER & BLOCK LLP

21  1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412

22  *Counsel for Defendant Hyatt Corporation*

23  /s/ Paul R. Taylor

24  Paul R. Taylor (WSBA No. 14851)
BYRNES KELLER CROMWELL LLP

25  1000 Second Avenue, 38th Floor
Seattle, Washington 98104

26  Jeffrey S. Cashdan (*pro hac vice*)

27  Emily S. Newton (*pro hac vice*)
Lohr A. Beck (*pro hac vice*)

28  Caroline Buyak (*pro hac vice*)
KING & SPALDING LLP

/s/ Vanessa Soriano Power
Vanessa Soriano Power (WSBA No. 30777)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101

/s/ Lawrence E. Buterman
Lawrence E. Buterman (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020

Sarah M. Ray (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Elyse M. Greenwald (*pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067

David L. Johnson (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20001

*Counsel for Defendants CoStar Group, Inc. and STR, LLC*

/s/ Robert Maguire
Robert Maguire (WSBA No. 29909)
DAVIS WRIGHT TREMAINE LLP
920 5th Avenue, Suite 3300
Seattle, WA 98104-1610

Katherine B. Forrest (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

Paul D. Brachman (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street NW
Washington, DC 20006

*Counsel for Defendant Loews Hotels Holding Corporation*

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

16

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200

| | |
|---|---|
| 1 | 1180 Peachtree Street, NE, Suite 1600<br>Atlanta, GA 30309-3521 |
| 2 | |
| 3 | *Counsel for Defendant Six Continents Hotels, Inc.* |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

*/s/ Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith (WSBA No. 30954)
Steven Fogg (WSBA No. 23528)
CORR CRONIN
1015 Second Avenue, Floor 10
Seattle, WA 98104

Kristen C. Limarzi (*pro hac vice*)
Melanie L. Katsur (*pro hac vice*)
Sarah Akhtar (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036

*Counsel for Defendant Marriott International, Inc.*

*/s/ Robin Wechkin*
Robin Wechkin (WSBA No. 24746)
SIDLEY AUSTIN LLP
8426 316th Place SE
Issaquah, WA 98027

Carrie Mahan (*pro hac vice*)
Benjamin M. Mundel (*pro hac vice*)
S. Nicole Booth (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005

*Counsel for Defendant Accor Management US Inc.*

DEFENDANTS' JOINT REPLY ISO MOTION
TO DISMISS PLAINTIFFS' FAC
Case No. 2:24-cv-00229-RSL

17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
+1.212.906.1200